FILED

2023 Dec-27  AM 08:12
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

|  |  |
|---|---|
| **FEDERAL INSURANCE COMPANY, PACIFIC EMPLOYERS INSURANCE COMPANY, ACE AMERICAN INSURANCE COMPANY, ACE PROPERTY AND CASUALTY INSURANCE COMPANY, INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, and WESTCHESTER FIRE INSURANCE COMPANY,** | |
| **Plaintiffs,** | **CIVIL ACTION NO.:** |
| **v.** | **1:23-cv-01367-RDP** |
| **SHAW INDUSTRIES, INC.,** | |
| **Defendant,** | |
| **And** | |
| **COMMERCE & INDUSTRY INSURANCE COMPANY; FIRST STATE INSURANCE COMPANY; EMPLOYERS INSURANCE COMPANY OF WAUSAU; GREAT AMERICAN INSURANCE COMPANY; U.S. FIRE INSURANCE COMPANY; TRAVELERS CASUALTY AND SURETY COMPANY; JOHN DOE INSURERS 1-100;** | |
| **Nominal Defendants.** | |

## FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Federal Insurance Company ("Federal"), and Pacific Employers Insurance Company, ACE American Insurance Company, ACE Property and Casualty Insurance Company Indemnity Insurance Company of North America, and Westchester Fire Insurance Company with respect to the policies novated from International Insurance Company (collectively the "Additional Plaintiff Insurers"), by and through their undersigned counsel, bring this action for declaratory relief pursuant to 28 U.S.C. § 2201 (the "Declaratory Judgment Act"), and state as follows:

## I.    INTRODUCTION

1.    This is a civil action for declaratory judgment.  Federal seeks a declaration that it has no duty to provide insurance coverage to Shaw Industries, Inc. ("Shaw"), under the liability insurance policies identified herein, in connection with underlying claims and litigation involving alleged environmental contamination arising out of Shaw's carpet manufacturing and waste discharge.

2.    The underlying suits and claims giving rise to this declaratory judgment action involve claims brought on behalf of towns, municipalities, and/or utility authorities in Alabama and Georgia seeking damages for environmental contamination allegedly caused by Shaw and others. The underlying suits are

referred to collectively herein as the "Underlying Actions." Included amongst the Underlying Actions are pending claims in *Shelby County, Alabama and Talladega County, Alabama v. 3M Company, et al.*, 61-cv-2023-900112.00 (Cir. Ct. Talladega Cty.) and *Shelby County, Alabama and Talladega County, Alabama v. 3M Company, et al.*, 1:23-cv-00609-CLM (N.D. Ala., E.D.).

3.      More specifically, the underlying claimants allege damages due to the release of toxic chemicals including perfluorinated compounds ("PFCs"), including, but not limited to perfluorooctanoic acid ("PFOA"), perfluorooctane sulfonate ("PFOS"), precursors to PFOA and PFOS, and related chemicals into local waterways.[1]

## II.    **THE PARTIES**

4.      ACE American Insurance Company is an insurance company incorporated in Pennsylvania, with its principal place of business in Pennsylvania.

5.      ACE Property and Casualty Insurance Company is an insurance company incorporated in Pennsylvania, with its principal place of business in Pennsylvania.

6.      Federal is an insurance company incorporated in Indiana, with its principal place of business in New Jersey.

---

[1] For ease of reading, the foregoing chemicals will be referred to collectively herein as "PFAS."

7. Indemnity Insurance Company of North America is an insurance company incorporated in Pennsylvania, with its principal place of business in Pennsylvania.

8. Westchester Fire Insurance Company is an insurance company incorporated in Pennsylvania, with its principal place of business in Pennsylvania. Westchester Fire Insurance Company appears in this case with respect to the policies novated from International Insurance Company.

9. Pacific Employers Insurance Company is an insurance company incorporated in Pennsylvania, with its principal place of business in Pennsylvania.

10. Upon information and belief, Shaw is a corporation incorporated under the laws of the State of Georgia with its principal place of business in Dalton, Georgia.  Shaw is authorized to do business and does business in the State of Alabama.

11. Commerce and Industry Insurance Company ("Commerce and Industry") is an insurance company incorporated in New York, with its principal place of business in New York.  Commerce and Industry issued liability insurance policies to Shaw at times relevant to the Complaint.

12. [Intentionally left blank due to the dismissal without prejudice of Fireman's Fund Insurance Company as a party]

13.     First State Insurance Company ("First State") is an insurance company incorporated in Connecticut, with its principal place of business in Massachusetts. First State issued liability insurance policies to Shaw at times relevant to the Complaint.

14.     Employers Insurance Company of Wausau ("Wausau") is an insurance company incorporated in Wisconsin, with its principal place of business in Massachusetts.  Wausau issued liability insurance policies to Shaw at times relevant to the Complaint.

15.     Great American Insurance Company ("Great American") is an insurance company incorporated in Ohio, with its principal place of business in Ohio.  Great American issued liability insurance policies to Shaw at times relevant to the Complaint.

16.     [Intentionally left blank due to the dismissal without prejudice of Westport Insurance Corporation as a party]

17.     Travelers Casualty and Surety Company ("Travelers") is an insurance company incorporated in Connecticut, with its principal place of business in Connecticut.  Travelers issued liability insurance policies to Shaw at times relevant to the Complaint.

18.     U.S. Fire Insurance Company ("U.S. Fire") is an insurance company incorporated in Delaware, with its principal place of business in New Jersey.  U.S. Fire issued liability insurance policies to Shaw at times relevant to the Complaint.

19.     John Doe Insurers are insurers who may exist that Shaw sought coverage from, but whose identities are currently unknown to Federal and Additional Plaintiff Insurers.

## III.   JURISDICTION & VENUE

20.     This Court has original jurisdiction over this declaratory judgment action based on 28 U.S.C. § 1332(a) and 28 U.S.C. § 2201, et seq.  This action involves a controversy between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

21.     There is complete diversity of citizenship between the Plaintiffs and the Defendants as required under 28 U.S.C. § 1332(a).

22.     This Court also has jurisdiction over this matter pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), because this matter presents a case of actual controversy and seeks an order declaring the rights and other legal relations of the parties to this action.

23.     This Court has personal jurisdiction over Shaw as Shaw conducts business and maintains operations within the State of Alabama.  Certain of the Underlying Actions also include allegations that Shaw knowingly directed its

contaminated wastewater to Alabama waterways. An Underlying Action against Shaw, alleging contamination arising out of Shaw's operations, captioned *Shelby County, Alabama and Talladega County, Alabama v. 3M Company, et al.*, 1:23-cv-00609-CLM (N.D. Ala., E.D.), is currently pending before the Eastern District.

24.　A case of actual controversy is presented here because Shaw seeks insurance coverage from Federal for indemnity costs it has or will incur in connection with the Underlying Actions and Federal disputes its obligations to Shaw with respect to insurance coverage for the Underlying Actions.

25.　Venue is proper in the Northern District of Alabama under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of property that is the subject of the action is situated in Talladega County.

## IV.　FACTS AND BACKGROUND[2]

### A.　SHAW CARPETING

26.　Shaw is a producer of carpet, resilient flooring, hardwood, tile and stone, synthetic turf and other specialty flooring products.

27.　 Shaw is the world's largest carpet manufacturer with approximately $5 billion in annual revenue.

---

[2] The allegations of fact are stated upon information and belief.

28.     As of the filing of the Complaint, Shaw operates facilities in Alabama and Georgia.

**B.     SHAW'S PFAS USE**

29.     In the 1950s or 1960s, 3M Company ("3M") introduced a Scotchgard stain blocker and soil-resistant product that could be used to treat carpets.

30.     Shaw may have used these Scotchgard products in the 1950s or 1960s in its carpet manufacturing operations.

31.     Starting in or around 1972, 3M began marketing a stain blocker and soil-resistant product called Scotchguard to carpet companies, including Shaw.

32.     In the 1970s, E.I. DuPont de Nemours ("DuPont") also introduced a stain blocker and soil-resistant product called Teflon to carpet companies.

33.     In the early to mid-1970s, Shaw purchased Scotchguard products from 3M for use in Shaw's carpet manufacturing operations.

34.     In the early to mid-1970s, Shaw may have purchased stain resistant products from other companies.

35.     In or around October 1986, DuPont introduced a stain blocker and soil-resistant product called Stainmaster and began marketing Stainmaster to carpeting companies such as Shaw.

36.     In or around October 1986, Shaw began purchasing Stainmaster products from DuPont for use in Shaw's carpet manufacturing operations.

37.     The stain-resistant products marketed and sold by 3M, DuPont, and/or others contained perfluoroalkyl and polyfluoroalkyl substances commonly referred to by the acronym "PFAS."

38.     The PFAS contained in the stain-resistant products utilized by Shaw were, at all relevant times, present in the wastewater produced as a waste by-product of Shaw's manufacturing process.

**C.     THE LAND APPLICATION SYSTEM AND SHAW'S WASTE DISPOSAL PRACTICES**

39.     Shaw utilized Dalton Utilities ("Dalton") to dispose of its wastewater created by Shaw's manufacturing process.

40.     On July 17, 1984, Dalton applied for a permit to operate a Land Application System ("LAS") for its wastewater disposal needs.

41.     On August 20, 1986, Dalton received a permit to operate the LAS.

42.     The LAS is an approximately 9,600-acre system, operated by Dalton, in which wastewater is processed and dispersed onto the land surface.

43.     Beginning in or around August 20, 1986, Dalton began disposing of Shaw's wastewater at the LAS.

44.     Underlying Plaintiffs allege that PFAS from the LAS has contaminated local waterways.

45.     Shaw's wastewater and other waste may have been disposed in other ways during the relevant time periods.

### D.    THE UNDERLYING ACTIONS

#### i.  Facts Relevant to All Underlying Actions

46.    Municipal entities in Alabama have asserted the following actions against Shaw alleging environmental contamination caused by Shaw's operations:

- *Shelby County, Alabama and Talladega County, Alabama v. 3M Company, Inc., et al.*, 1:23-cv-00609-CLM in the United States District Court for the Northern District of Alabama – Eastern Division;

- *Shelby County, Alabama and Talladega County, Alabama v. 3M Company, et al.*, 61-cv-2023-900112.00 in the Circuit Court of Talladega County, Alabama;

- *The Water Works and Sewer Board of the City of Gadsden v. 3M Company, Inc., et al.*, 31-cv-2016-900676.00 in the Circuit Court of Etowah County, Alabama;

- *The Water Works and Sewer Board of the Town of Centre v. 3M Company, Inc., et al.*, 31-cv-2017-900049.00 in the Circuit Court of Cherokee County, Alabama.

47.    Municipal entities and/or individuals in Georgia have asserted the following actions against Shaw alleging environmental contamination caused by Shaw's operations:

- *The City of Rome, Georgia v. 3M Company, Inc., et al.*, 19-cv-02405-JFL-003, in the Superior Court of Floyd County, Georgia; and

- *Jarrod Johnson, individually and on behalf of a class of persons similarly situated v. 3M Company, et al.*, 4:20-cv-0008-AT, in the United States District Court for the Northern District of Georgia – Rome Division.

48.   All of the foregoing actions involve allegations that Shaw used and continues to use PFAS in the carpet and flooring manufacturing process and that the underlying plaintiff(s) suffered damages due to the negligent, willful, and wanton conduct of Shaw, as well as the nuisance and trespass caused by Shaw's past and present release of PFAS and related chemicals in and around its facilities in Dalton, Georgia.

49.   The plaintiffs in the Underlying Actions allege that Shaw had knowledge for decades that PFAS cannot be removed from the wastewater it sends to Dalton Utilities.

50.   The underlying plaintiffs allege to have suffered substantial economic and consequential damages, including, but not limited to, expenses associated with the future installation and operation of a filtration system capable of removing PFAS from the water; expenses associated with the removal or remediation of

contaminated property; expenses incurred to monitor PFAS contamination levels; and lost profits and sales.

### ii. The Settled Underlying Actions

51.     Without the prior consent of Federal, Shaw settled the following underlying actions:

- *The Water Works and Sewer Bd. Of City of Gadsden v. 3M, et al.* (action filed in Alabama) ("*The City of Gadsden*");

- *The Water Works and Sewer Bd. Of Town of Centre v. 3M, et al.* (action filed in Alabama) ("*The Town of Centre*"); and

- *The City of Rome v. 3M, et al.* (action filed in Georgia) ("*The City of Rome*").

52.     All of the settled Underlying Actions contain generally the same allegations relating to Shaw's improper disposal of PFAS-contaminated waste and the contamination of local water supplies.

53.     In *The City of Gadsden* Complaint, the City of Gadsden alleged that PFAS released by Shaw contaminated the water in the Coosa River at the City of Gadsden Water Works intake site and that the chemicals cannot be removed by the current water treatment processes utilized by the City of Gadsden's water utility providers.

54.     The City of Gadsden sought economic and consequential damages, including but not limited to, expenses associated with the future installation and operation of a filtration system capable of removing the chemicals at issue, as well as monitoring expenses, and lost profits and sales.

55.     On or about December 21, 2016, Shaw placed Federal on notice of the allegations at issue in *The City of Gadsden*.

56.     Via correspondence, Federal reserved its rights with respect to coverage for *The City of Gadsden*. Federal did not waive any applicable consent to settlement provisions contained within each insurer's respective policies.

57.     On or about September 9, 2022, Shaw agreed to settle the claims asserted against it in *The City of Gadsden* action without first obtaining Federal's consent.

58.     On or about June 6, 2017, Shaw placed Federal on notice of the allegations at issue in *The Town of Centre*.

59.     Via coverage correspondence, Federal reserved its rights with respect to coverage for *The Town of Centre*.

60.     Federal did not waive any applicable consent to settlement provisions contained within each insurer's respective policies.

61.     On or about March 28, 2023, Shaw agreed to settle the claims asserted against it in *The Town of Centre* action without first obtaining Federal's consent.

62.     On or about April 5, 2023, Shaw settled the claims against it by *The City of Rome* without first obtaining the Federal's consent.

63.     Via coverage correspondence, Federal reserved its rights with respect to coverage for *The City of Rome.*

64.     Federal did not waive any applicable consent to settlement provisions contained within each insurer's respective policies.

65.     On or about April 5, 2023, Shaw settled the claims against it in *The City of Rome* without Federal's consent.

### iii.  Currently Pending Underlying Actions

66.     In addition to the settled Underlying Actions, Federal has received notice of two currently pending Underlying Actions asserted against Shaw.

67.     The matter of *Shelby County, Alabama and Talladega County, Alabama v. 3M Company, Inc., et al.*, is currently pending in the United States District Court for the Northern District of Alabama and involves allegations that Shaw "expressly and directly aimed polluted wastewater from their plants not only at Dalton Utilities and the LAS in Georgia but also at Alabama through the continuing flow of the polluted wastewater from [Shaw's] plants, into the Coosa River and its tributaries, and ultimately to Shelby and Talladega Counties."

68.     Shelby and Talladega Counties allege that they have suffered economic and consequential damages, including, but not limited to, expenses

associated with the future installation and operation of a filtration system capable of removing PFAS from the Counties' water; expenses associated with the removal and/or remediation of contaminated property; expenses incurred to monitor contamination levels; and lost profits and sales.

69.    The matter of *Jarrod Johnson, et al. v. 3M, et al.* is pending in the United States District Court for the Northern District of Georgia and involves water contamination claims asserted by a class of claimants consisting of owners and occupants of property served by Rome Water and Sewer Division and the Floyd County Water Department who have allegedly been and continue to be provided with water contaminated by the release of chemicals by Shaw and others. *Johnson* Complaint at 3.

## V.    <u>THE POLICIES ISSUED BY FEDERAL</u>

70.    As discussed above, Shaw has focused its demand for insurance coverage from the Plaintiffs on the following excess liability insurance policies issued by Federal (referred to hereafter as the "1980-1985 Federal Policies"):

| Policy No. | Policy Inception | Policy End |
|---|---|---|
| 79221063 | 07/01/1980 | 07/01/1981 |
| 79221063 | 07/01/1981 | 07/01/1982 |
| 79221063 | 07/01/1982 | 07/01/1983 |
| 79221063 | 07/01/1983 | 07/01/1984 |
| 79221063 | 07/01/1984 | 07/01/1985 |

71.   The insuring agreement of the 1980-1985 Federal Policies provides in part that coverage under the policies is limited to the payment of "Loss" resulting from an occurrence insured by the terms of the underlying policies:

> In consideration of the payment of the required premium and subject to all the terms of this policy, the Company agrees to pay on behalf of the insured LOSS resulting from any occurrence Insured by the terms and provisions of the First UNDERLYING INSURANCE policy scheduled in item 6 of the Declarations (except for the Limits of Liability and defense provisions, if any). The insurance afforded by this policy shall apply only in excess of and after all UNDERLYING INSURANCE (as scheduled in item 6 of the Declarations) has been exhausted.

72.   The term "Loss" is defined in the policies as:

> The amount of the principal sum, award or verdict, actually paid or payable in cash in the settlement or satisfaction of claim for which the insured is liable, either by adjudication or compromise with the written consent of the Company, after making proper deduction for all recoveries and salvages.

73.   The underlying policies to which the 1980-1985 Federal Policies follow form in part provide, subject to all other applicable terms, that coverage is provided only for liability arising from an "occurrence" which is defined in the following or substantially similar terms as:

> an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in injury, property damage pr advertising liability during the policy period. All such exposure to substantially the same general conditions

existing at or emanating from one premises location shall
be deemed one occurrence.

74.     The 1980-1985 Federal Policies also provide that Federal has no

obligation to assume charge of the investigation, settlement or defense of any claim

or suit, such as the Underlying Actions, but Federal has the right to associate in the

defense of any claim or suit:

> The Company shall not be called upon to assume charge
> of the investigation, settlement or defense of any claim
> made, or suits brought, or proceedings instituted against
> the Insured, but shall have the right to be given the
> opportunity to be associated in the defense and trial of any
> such claims, suits or proceedings relative to any
> occurrence which, in the opinion of the Company, may
> create liability on the part of the Company under the terms
> of this policy. If the Company avails itself of such right
> and opportunity the Company shall do so at its own
> expense. Court costs and interest, if incurred with the
> consent of the Company, shall be borne by the Company
> and other interested parties in the proportion that each
> party's share of LOSS bears to the total amount of Loss
> sustained by all interested parties.

75.     The 1980-1985 Federal Policies contain the following Pollution

Exclusion:

> This policy does not apply to bodily injury or property
> damage arising out of the discharge, dispersal, release or
> escape of smoke, vapors, soot, fumes, acids, alkalis, toxic
> chemicals, liquids or gases, waste materials or other
> irritants, contaminants or pollutants into or upon land, the
> atmosphere or any water course or body of water; but this
> exclusion does not apply if such discharge, dispersal,
> release or escape is sudden and accidental.

76.     The 1980-1985 Federal Policies provide that,

> The Insured agrees that the First UNDERLYING INSURANCE policy, and other UNDERLYING INSURANCE following the terms and provisions of the First UNDERLYING INSURANCE policy (except for limit of liability and defense provisions, if any), shall be maintained in full effect during the currency of this policy except for any reduction in the aggregate limit or limits contained therein solely by payment of claims in respect of occurrences happening during the period of this policy. The failure of the Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure the Company shall only be liable to the same extent as if the Insured had complied with this condition.

77.     The 1980-1985 Federal Policies include other terms, conditions, and exclusions that may limit or bar coverage for the Underlying Actions.

### i.  Other Federal Policies

78.     In addition to the 1980-1985 Federal Policies, Federal issued excess liability policies to Shaw for annual policy periods from July 1, 1985 to July 1, 2016.[3] The July 1, 1985 to July 1, 2016 Federal policies are referred to herein as the "Post-1985 Federal Policies."

79.     The Post-1985 Federal Policies contain absolute pollution exclusions.

80.     Upon information and belief, Shaw is not presently seeking coverage for the Underlying Actions under any of the Post-1985 Federal Policies.

---

[3] These policies are listed in the Plaintiffs' Policy Schedule attached hereto as Exhibit A.

81.    However, Shaw notified Federal of the actions under those policies and has not formally withdrawn its notice.

### ii.  Other Policies Issued By Additional Plaintiff Insurers

82.    In addition to the policies issued by Federal, the Additional Plaintiff Insurers issued excess liability policies to Shaw for the policy periods after 1985. These policies contain absolute pollution exclusions.

83.    Upon information and belief, Shaw is not presently seeking coverage for the Underlying Actions under any of these policies.

84.    However, Shaw notified Additional Plaintiff Insurers of the actions under those policies and has not formally withdrawn its notice.

## VI.    POLICIES ISSUED BY DEFENDANT INSURERS

85.    Upon information and belief, the Defendant Insurers issued one or more liability insurance policies to Shaw at various times.  A non-exhaustive list of currently known policies issued by the Defendant Insurers is attached hereto as Exhibit B.

86.    Upon information and belief, the policies issued to Shaw by the Defendant Insurers potentially provide coverage to Shaw for the PFAS-related losses alleged in the Underlying Actions.  A non-exhaustive list of these policies issued by the Defendant Insurers is attached hereto as Exhibit B.

87.    Shaw has notified the Defendant Insurers of the Underlying Actions and has sought coverage from them for the Underlying Actions.

88.    Upon information and belief, Shaw is also the insured on liability policies not listed on Exhibit B ("Non-Exhibit B Policies").

89.    Upon information and belief, Shaw has not given notice to insurers under Non-Exhibit B Policies for the Underlying Actions.

90.    Upon information and belief, Shaw does not seek coverage under Non-Exhibit B Policies for the Underlying Actions.

## COUNT I

### (Declaratory Judgment as to Shaw)

91.    Federal and the Additional Plaintiff Insurers incorporate each and every allegation of the preceding paragraphs as if fully set forth at length herein.

92.    Shaw has made a demand for coverage under policies issued to Shaw by Federal  for indemnity in connection with the Underlying Actions.

93.    There is an actual and justiciable controversy between Shaw and Federal with respect to potential insurance coverage for the Underlying Actions.

94.    Shaw has put Additional Plaintiff Insurers on notice under other excess policies, but not sought coverage.

95.    Shaw has not sought coverage from Additional Plaintiff Insurers, but Additional Plaintiff Insurers are included for the sake of completeness.

96.     Federal has no adequate remedy at law, and this is a proper case for the Court to exercise its jurisdiction and declare the rights and liabilities of Federal and Shaw with respect to the Underlying Actions.

97.     Insurance coverage for the Underlying Actions under any actual or alleged insurance policies issued by Federal to Shaw is barred in whole or in part, or potential coverage is otherwise limited because:

a.  the pollution exclusions in the 1980-1985 Federal Policies exclude coverage;

b.  the 1980-1985 Federal Policies only provide coverage for an occurrence and the Underlying Actions do not involve an occurrence;

c.  the 1980-1985 Federal Policies only provide coverage for third party property damage during the policy period and little to no third party property damage occurred during the policy periods of the 1980-85 Federal Policies;

d.  the 1980-1985 Federal Policies do not provide coverage for prophylactic expenses to prevent future injury or damage rather than to remediate past property damage;

e.  the attachment point of the 1980-1985 Federal Policies has not been reached;

f.   there is no duty under the 1980-1985 Federal Policies to drop down for insolvent underlying coverage;

g.   the Underlying Actions were settled without Federal's consent and consent is required under the 1980-1985 Federal Policies;

h.   to the extent the Federal is found to owe defense costs and/or indemnity costs in connection with the Underlying Actions, Federal's obligation will be limited to a pro rata allocated share determined on a "time on the risk" basis and Shaw will be responsible for all uninsured, underinsured, and self-insured periods, regardless of whether insurance coverage was available during such periods.

i.   Coverage for the Underlying Actions may be barred in whole or in part under other terms of the 1980-1985 Federal Policies and under the applicable law.

98.   Therefore, Federal requests that the Court enter a declaratory judgment declaring that there is no coverage for the Underlying Actions under the policies issued by Federal or that any coverage is limited in accordance with the terms of the policies and the applicable law.

## COUNT II

**(In the Alternative, Declaratory Judgment as to the Defendant Insurers)**

99.     Federal and the Additional Plaintiff Insurers incorporate each and every allegation of the preceding paragraphs as if fully set forth at length herein.

100.   The Defendant Insurers issued policies to Shaw that potentially provide insurance coverage for the claims against Shaw in the Underlying Actions.

101.   Upon information and belief, Shaw has tendered to or otherwise notified the Defendant Insurers of the Underlying Actions and has sought coverage for those actions from the Defendant Insurers.

102.   If the Court determines that Federal or the Additional Plaintiff Insurers have an obligation in whole or in part to provide coverage to Shaw for one or more of the Underlying Actions, then Federal and the Additional Plaintiff Insurers request that the Court declare the rights and obligations of all parties, including the Defendant Insurers with respect to insurance coverage for the Underlying Actions.

**WHEREFORE**, Federal and the Additional Plaintiff Insurers respectfully demand that judgment be entered as follows:

(1)     Entering judgment against Shaw and/or the Defendant Insurers declaring that there is no coverage for the Underlying Actions under the policies issued by Federal or the Additional Plaintiff Insurers or that

any coverage is limited in accordance with the terms of the policies and the applicable law.

(2)     Awarding Federal and the Additional Plaintiff Insurers their attorneys' fees and costs against Shaw and/or the Defendant Insurers; and

(3)     Awarding Federal and the Additional Plaintiff Insurers all other relief to which they may appear to be entitled.

Respectfully submitted this 27th day of December, 2023.

/s/ John W Johnson, II
**CHRISTIAN & SMALL LLP**
John W Johnson, II
505 North 20th Street
Suite 1800
Birmingham, Alabama 35203-2696
Telephone:  (205) 795-6588
Facsimile:  (205) 328-7234
jwjohnson@csattorneys.com

Christopher Hemphill
*(Adm. PHV)*
Michael Baughman
*(Adm. PHV)*
**COHN BAUGHMAN**
525 W. Monroe St.
Suite 1500
Chicago, IL 60661
Mobile: 708.602.5118  (preferred)
Office: 312.753.6616
christopher.hemphill@mclolaw.com
michael.baughman@mclolaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I do hereby certify that on December 27, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to the following counsel of record:

Brannon J. Buck
Christopher B. Driver
BADHAM & BUCK, LLC
2001 Park Place North, Suite 500
Birmingham, AL 35203
bbuck@badhambuck.com
cdriver@badhambuck.com

Shattuck Ely
Jacob Weiss
FELLOWS LABRIOLA LLP
233 Peachtree Street NE
Suite 2400
Atlanta, GA 30303
tely@fellab.com
jweiss@fellab.com

Frederick Lane Finch, Jr.
Brandon J. Clapp
SWIFT, CURRIE, MCGHEE & HEIRS, L.L.P.
1901 Sixth Avenue North, Suite 1100
Birmingham, AL 35203
Lane.finch@swiftcurrie.com
Brandon.clapp@swiftcurrie.com

Joel S. Isenberg
Robert E. Norton
ELY & ISENBERG, LLC
3500 Blue Lake Drive, Suite 345
Birmingham, AL 35243
jisenberg@elylawllc.com
rnorton@elylawllc.com

Edward M. Holt

Zachery L. Gillespie
MAYNARD NEXSEN PC
1901 Sixth Avenue North, Suite 1700
Birmingham, AL 35203
tholt@maynardnexsen.com
zgillespie@maynardnexsen.com

Scott M. Salter
STARNES DAVIS FLORIE LLP
100 Brookwood Place, 7th Floor
Birmingham, AL 35209
ssalter@starneslaw.com

Edward B. Parks, II
Annette P. Rolain
RUGGERI PARKS WEINBERG LLP
1875 K Street NW, Suite 600
Washington, DC 20006
eparks@ruggerilaw.com
arolain@ruggerilaw.com

Michael A. Valerio
ALSTON & BIRD LLP
950 F Street NW
Washington, DC 20004-1404
Michael.valerio@alston.com

Hirschel M. Hall
Tejas Patel
ALSTON BIRD LLP
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Hirshel.hall@alston.com
Tejas.patel@alston.com

Adam J. Kaiser
Alexander S. Lorenzo
ALSTON & BIRD LLP
90 Park Avenue, 15th Floor
New York, NY 10016

Adam.kaiser@alston.com
Alexander.lorenzo@alston.com

The following parties will be served via private process server:

Employers' Insurance Company of Wausau
175 Berkeley Street
Boston, MA 02166

/s/ *John W Johnson, II*
OF COUNSEL