# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **FEDERAL INSURANCE COMPANY, PACIFIC EMPLOYERS INSURANCE COMPANY, ACE AMERICAN INSURANCE COMPANY, ACE PROPERTY AND CASUALTY INSURANCE COMPANY, INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, and WESTCHESTER FIRE INSURANCE COMPANY,** | |
| **Plaintiffs,** | |
| **v.** | **CIVIL ACTION NO.: 1:23-cv-01367-RDP** |
| **SHAW INDUSTRIES, INC.,** | |
| **Defendant,** | |
| **and** | |
| **COMMERCE & INDUSTRY INSURANCE COMPANY; FIRST STATE INSURANCE COMPANY; EMPLOYERS INSURANCE COMPANY OF WAUSAU; GREAT AMERICAN INSURANCE COMPANY; U.S. FIRE INSURANCE COMPANY; TRAVELERS CASUALTY AND SURETY COMPANY; JOHN DOE INSURERS 1-100;** | |
| **Nominal Defendants.** | |

## OPPOSITION TO DEFENDANT SHAW INDUSTRIES, INC'S MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

### (Oral Argument Requested)

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

I.     BACKGROUND TO THE CONNECTION BETWEEN SHAW AND THE NORTHERN DISTRICT OF ALABAMA ............................................................3

II.     STANDARD.........................................................................................................5

III.     THE COURT SHOULD DENY THE MOTION TO TRANSFER BECAUSE THE NORTHERN DISTRICT IS A PROPER VENUE AND TRANSFER IS NOT WARRANTED ..................................................................6

    A.     The Northern District of Alabama Is a Proper Venue Because a Substantial Part of the Events Occurred Within This District ....................6

    B.     The Venue Factors Support the Northern District of Alabama and Plaintiffs' Chosen Forum is Entitled to Deference ......................................8

       i.     The Factors Support the Northern District of Alabama........................8

          a.     Convenience of Witnesses and Compelling Process Does Not Support Transfer ......................................................................9

          b.     The Location of Documents Is Irrelevant In Cases With Electronic Discovery....................................................................12

          c.     The Convenience and Relative Means of the Parties Matters Little Where Large Companies Are the Litigants..........................14

          d.     The Locus of Operative Facts Reside In the Northern District of Alabama..................................................................................14

          e.     Shaw Has Not Met Its Burden that Georgia Law Is Likely to Apply........................................................................................15

          f.     Litigating this Case in the Northern District of Alabama Will Be More Efficient ......................................................................16

       ii.     Plaintiffs' Chosen Forum Deserves Deference....................................17

    C.     Shaw Cannot Meet Its Burden of Showing Jurisdiction Exists in the Northern District of Georgia....................................................................18

CONCLUSION....................................................................................................... 19

# INTRODUCTION

Federal Insurance Company ("Federal") and the Additional Plaintiff Insurers[1] (collectively, Plaintiffs) filed a declaratory judgment in the Northern District of Alabama regarding insurance coverage that Shaw Industries, Inc. ("Shaw") seeks for alleged environmental contamination existing in (among other places), Cherokee, Etowah, Shelby, and Talladega Counties. Venue is clearly proper given that Shaw seeks insurance for numerous, significant claims it faces within the Northern District of Alabama.

Not only is the Northern District of Alabama one of the federal districts where several locations of the alleged environmental contamination are present, the Northern District of Alabama is also the forum where Shelby County and Talladega County are currently litigating against Shaw in one of the underlying suits (which is currently before Judge Corey L. Maze). *See Shelby County, Alabama and Talladega County, Alabama v. 3M Company, et al.*, 1:23-cv-00609-CLM (N.D. Ala., E.D.) (originally filed *Shelby County, Alabama and Talladega County, Alabama v. 3M Company, et al.*, 61-cv-2023-900112.00 (Cir. Ct. Talladega Cty.).[2] Additionally, the Northern District of Alabama is the federal district court that encompasses the counties involved with two of the previously settled suits at issue in this declaratory judgment: *The Water Works and Sewer Board of the City of Gadsden v. 3M Company, Inc., et al.*, 31-cv-2016-900676.00 (Circuit Court of Etowah County, Alabama) and *The Water Works and Sewer Board of the Town of Centre v. 3M Company, Inc., et al.*, 31-cv-2017-900049.00 (Circuit Court of Cherokee County, Alabama). Moreover, Shaw informed Plaintiffs during the recent Rule 26

---

[1] Pacific Employers Insurance Company, ACE American Insurance Company, ACE Property and Casualty Insurance Company, Indemnity Insurance Company of North America and Westchester Fire Insurance Company, with respect to the policies novated from International Insurance Company, are collectively designated the "Additional Plaintiff Insurers."

[2] This case is currently stayed due to decisions from a multi-district litigation. However, Shelby County and Talladega County have stated they intend to lift the stay. (Docs. 46 and 47).

Conference that it is aware of as few as three and as many as 12 more additional claims against Shaw which it expects to receive from additional Alabama municipalities in the near future.

Despite these substantial connections (and more connections discussed *supra*), Shaw moves this Court to transfer the case to the Northern District of Georgia under 28 U.S.C. § 1404(a). Shaw's basis is largely that Shaw is headquartered within the Northern District of Georgia and some of its employees likely live there. The Court should reject Shaw's motion for the following reasons:

First, venue and jurisdiction are proper in the Northern District of Alabama where a substantial part of the events occurred. Among other reasons, there are underlying suits and property damage within this forum that Shaw alleges are covered by the insurance policies. In fact, the Circuit Court of Etowah County already decisively and exhaustively rejected similar arguments from Shaw when it contested venue and jurisdiction in that state court forum. (See Ex. 1, pp. 10-12).

Second, the traditional 28 U.S.C. § 1404(a) factors do not support transfer to the Northern District of Georgia. Under well-settled law, a plaintiff's choice of forum is entitled to significant deference when operative facts occurred in the forum and a plaintiff's choice should not be disturbed unless it is "clearly outweighed" by other factors. As discussed below, the factors do not favor transfer away from the Northern District of Alabama.

Third, Shaw cannot meet its burden to support a transfer. As part of its burden, Shaw must show that the proposed transferee court has proper subject matter jurisdiction. However, Shaw denied that the Northern District of Alabama has subject matter jurisdiction. (Doc. 36, ¶¶ 21-22, 24). The basis for subject matter jurisdiction is diversity and the declaratory judgment statute in both the Northern District of Alabama and the Northern District of Georgia. If Shaw

believes there is no subject matter jurisdiction here, then it believes there is no subject matter jurisdiction there. Given that position, the motion to transfer should be denied because a party cannot transfer a case under 28 U.S.C. § 1404(a) to a court it believes would be improper.

## I.   BACKGROUND TO THE CONNECTION BETWEEN SHAW AND THE NORTHERN DISTRICT OF ALABAMA

Plaintiffs' First Amended Complaint goes into detail as to the underlying allegations that Shaw contributed to pollution of the local water supplies. However, put concisely, municipal entities and other claimants located in the Northern District of Alabama and the Northern District of Georgia have sued Shaw, asserting that Shaw's wastewater polluted the Coosa River. The Coosa River starts in nearby Georgia, snakes through the Northern District of Alabama, and ends in Mobile.

Thus far, Shaw seeks insurance coverage from Plaintiffs for the following underlying actions located within the boundaries of the Northern District of Alabama:

- *Shelby County, Alabama and Talladega County, Alabama v. 3M Company, Inc., et al.*, 1:23-cv-00609-CLM in the United States District Court for the Northern District of Alabama – Eastern Division (the "Shelby" matter).

- *Shelby County, Alabama and Talladega County, Alabama v. 3M Company, et al.*, 61-cv-2023-900112.00 in the Circuit Court of Talladega County, Alabama.

- *The Water Works and Sewer Board of the City of Gadsden v. 3M Company, Inc., et al.*, 31-cv-2016-900676.00 in the Circuit Court of Etowah County, Alabama (the "Gadsden" matter).

- *The Water Works and Sewer Board of the Town of Centre v. 3M Company, Inc., et al.*, 31-cv-2017-900049.00 in the Circuit Court of Cherokee County, Alabama (the "Centre" matter).

Notably, in the *Gadsden* matter, Shaw argued, among other things, that venue was improper and that its hometown of Dalton, Georgia was the more appropriate venue. The Circuit Court of Etowah County unequivocally rejected that position and made the following factual determinations in deciding venue and jurisdiction were proper against Shaw in Alabama. (Ex. 1, p. 10-12).

- Shaw is the world's largest carpet manufacturer with more than $4 billion in revenue and approximately 25,000 employees worldwide.

- Shaw has manufacturing and distribution facilities in 29 states and other manufacturing facilities in Australia, Belgium, Brazil, Canada, Chile, China, India, Mexico, Singapore, the United Arab Emirates, and the United Kingdom.

- Shaw operates 31 distribution centers and 27 redistribution centers across the United States.

- Shaw's contacts with Alabama are extensive.

- Shaw has had a manufacturing facility in Andalusia, Alabama since 1992 and announced in April that it would spend an additional $184 million on new machinery. Until July 2017, Shaw also operated a plant in Valley Head, Alabama which opened in 1971.

- In addition to its manufacturing operations, Shaw also specifically marketed to Alabama customers. It advertises its Alabama dealers on its website and, in turn, its dealers advertise Shaw products in Alabama.

- Shaw's presence in Alabama is further bolstered by the 11 "network" retailers here, an additional 29 retailers outside the network, and the three full time sales

representatives that market to all types of customers throughout the state. (Ex. 1, p. 10).

The Supreme Court of Alabama affirmed the ruling. *Ex parte Aladdin Mfg. Corp.*, 305 So. 3d 214 (Ala. 2019).

As part of its venue position, Shaw submitted an affidavit similar to the Whitmire Declaration submitted here as Doc. 63-1. The Circuit Court of Etowah County rejected that prior affidavit as valueless because the affidavit was not a denial that Shaw "engaged in the activity giving rise to this suit in Alabama but, instead, merely seeks to downplay its connections to Alabama by stating its presence in Georgia." (Ex. 1, p. 11). This Court should give Mr. Whitmire's Declaration the same treatment.

## II.    STANDARD

Title 28 U.S.C. § 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." Section 1404(a) codifies (with some additions) the common law doctrine of *forum non conveniens*. *Coleman v. LiveOps, Inc.*, No. 6:09-CV-01648-RDP, 2009 U.S. Dist. LEXIS 145313, at *2-3 (N.D. Ala. Sep. 4, 2009).

Shaw as the moving party has the burden of establishing that the suggested forum is more convenient. *Coleman v. LiveOps, Inc.*, No. 6:09-CV-01648-RDP, 2009 U.S. Dist. LEXIS 145313, at *4-5 (N.D. Ala. Sep. 4, 2009) (citing *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989)).

It is well-settled that "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. 1981). *See also Coleman v. LiveOps, Inc.*, No. 6:09-CV-01648-RDP, 2009 U.S. Dist. LEXIS

145313, at \*5 (N.D. Ala. Sep. 4, 2009). A transfer that would merely shift any inconvenience from one party to another does not justify disturbing a plaintiff's choice of forum. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996).

The analysis under § 1404(a) is a two-part inquiry. *Folkes v. Haley*, 64 F. Supp. 2d 1152, 1154 (M.D. Ala. 1999) (relying on *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)). As a threshold matter, the movant must establish that the case "might have been brought" in the transferee court. 28 U.S.C. § 1404(a). Second, the court must ask whether the balance of factors under § 1404(a) weighs in favor of transferring this action to the transferee court. 28 U.S.C. § 1404(a).

In evaluating a request for transfer of venue on the basis of convenience, courts generally consider the following factors: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

### III. THE COURT SHOULD DENY THE MOTION TO TRANSFER BECAUSE THE NORTHERN DISTRICT IS A PROPER VENUE AND TRANSFER IS NOT WARRANTED

#### A. The Northern District of Alabama Is a Proper Venue Because a Substantial Part of the Events Occurred Within This District

The federal venue statute, 28 U.S.C. § 1391(b), states that venue is proper in any "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." The Northern District

of Alabama easily meets this standard given that Shaw seeks insurance coverage for multiple contaminated locations situated within this district and for multiple lawsuits filed within this district.

Shaw's implicit position is that there is only one proper forum - the state where the insurance policies were issued. However, that is flatly wrong and courts across the country reject that position. *See, e.g., Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 43 (1st Cir. 2001) ("Section 1391 contemplates that venue may be proper in several districts."); *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) ("[U]under the amended version of § 1391, venue for a given suit could be appropriate in multiple districts."); *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 264 (6th Cir. 1998) (*accord*).

For example, in *Admiral Ins. Co. v. Dual Trucking, Inc*, Admiral Insurance issued pollution policies to Dual Trucking in Louisiana. Dual Trucking then faced lawsuits in Montana for contamination in Montana. *Admiral Ins. Co. v. Dual Trucking, Inc.*, No. 20-383, 2020 U.S. Dist. LEXIS 86511, at *2 (E.D. La. May 18, 2020). Admiral filed suit against Dual Trucking in Louisiana federal court, asserting that Louisiana was the only proper venue because the insurance contracts were issued there. Dual Trucking moved to transfer the case to Montana federal court because the contaminated sites were there.

The court ruled that venue was  proper in Montana because "[a]lthough the insurance contract was issued in Louisiana, all the events giving rise to the insurance dispute at issue occurred  in Montana. As a result, venue would have been proper in the District of Montana." *Admiral Ins. Co. v. Dual Trucking, Inc.*, No. 20-383, 2020 U.S. Dist. LEXIS 86511, at *16 (E.D. La. May 18, 2020). *See also Endurance Am. Specialty Ins. Co. v. Dual Trucking & Transp., LLC*, No. 17-1293, 2018 U.S. Dist. LEXIS 180359, at *19-20 (E.D. La. Oct. 22, 2018) (*accord*); *Mt.*

*Hawley Ins. Co. v. Baddley Chem. Co*., No. H-06-0565, 2006 U.S. Dist. LEXIS 48460, at *6 (S.D. Tex. July 17, 2006) (venue proper in Texas where underlying suit and judgment occurred even though policy was issued in Louisiana); *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc*., 618 F.3d 1153, 1166 (10th Cir. 2010) (finding venue proper for insurance action in jurisdiction where alleged damages or losses were incurred despite objection that underlying facts were irrelevant to interpretation of the policy).

Shaw makes the same argument that was rejected by the Court in *Dual Trucking,* namely that venue is only proper where the policies were issued. This is simply untrue and must be rejected. *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 358 (2d Cir. 2005) ("[S]ubstantial events giving rise to the claim occurred in both the Southern District of New York … and the District of New Jersey, and venue was proper in either district."); *Nautilus Ins. Co. v. Outdoorsy, Inc*., No. 23-cv-01886-HSG, 2023 U.S. Dist. LEXIS 200068, at *7 (N.D. Cal. Nov. 7, 2023) (venue proper in Hawaii even though insurance policy issued in California).

      **B.**    **The Venue Factors Support the Northern District of Alabama and Plaintiffs' Chosen Forum is Entitled to Deference**

            **i.  The Factors Support the Northern District of Alabama**

In evaluating a request for transfer of venue on the basis of convenience, courts generally consider the following factors: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Manuel v. Convergys Corp*., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

### a. Convenience of Witnesses and Compelling Process Does Not Support Transfer

First, the difference between the proposed courts is negligible as to the convenience of the witnesses and the availability of process to compel the attendance of unwilling witnesses. All of the locations are in the same general region and are within a 2-3 hour drive. For example, Dalton (Shaw's location) is about 78 miles from Atlanta (where most of the currently presiding Northern District of Georgia judges sit) and about 90 miles from Anniston (the seat of the Eastern Division). Similarly, the location of the settled and pending suits in Alabama are Shelby, Etowah, Cherokee, and Talladega Counties and those counties are also within a reasonable drive. Dalton is 71 miles from Centre in Cherokee County, 79 miles from Gadsden in Etowah County, and 143 miles from Columbiana in Shelby County.

To the extent the location of the witnesses does matter, there will be fact witnesses from the underlying cases in Shelby, Etowah, Cherokee, and Talladega Counties. These are the sites of the claims and suits. Assuming there are relevant witnesses in Georgia, transferring the case to the Northern District of Georgia would just be inappropriately shifting which witnesses will face any alleged burden (and if any burden exists at all, it would be small). *Catch Curve, Inc. v. Integrated Glob. Concepts, Inc*., No. 1:06-CV-2199-CC, 2007 U.S. Dist. LEXIS 104315, at *33 (N.D. Ga. Sep. 20, 2007) (denying motion to transfer venue where transfer would shift burdens from some witnesses to others).

In its motion, Shaw refers generally to former and current employees who may be in Dalton (without specifically naming them). General allusions to witnesses are insufficient to support transfer. *Mason v. Smithkline Beecham Clinical Labs*., 146 F. Supp. 2d 1355, 1362 (S.D. Fla. 2001) ("The party seeking the transfer must support its motion by clearly specifying the key witnesses to be called and particularly stating the significance of their testimony."). Regardless,

typically, attorneys travel to the witnesses for their depositions. Surely, the attorneys representing Shaw, the largest carpet company in the world, and the insurers' attorneys, can cooperate to limit the inconvenience to those witnesses.  To the extent a witness needs to travel, "the Northern District of Alabama has two airports, one in Birmingham and one in Huntsville, to which one can fly from anywhere in the country." *Coleman v. LiveOps, Inc*., No. 6:09-CV-01648-RDP, 2009 U.S. Dist. LEXIS 145313, at *9 n.3 (N.D. Ala. Sep. 4, 2009).

Additionally, the insurance policies are issue in this case were negotiated, brokered, issued, and delivered between the early 1970s to the mid-1980s (40 to 50 years ago). Although possible that Shaw's insurance manager from the 1970s and 1980s is alive and resides in Georgia, logic suggests it is unlikely (and Shaw failed to specifically identify one). Parties dealing with insurance disputes involving decades-old policies often cannot locate the original contemporaneous witnesses and end up relying on other sources and witnesses. And most insurance coverage disputes are decided on motions for summary judgment, and rarely proceed to trial.  *See Cont'l Ins. Cos. v. Wickes Cos., Inc*., No. 90 Civ. 8215 (KMW), 1991 U.S. Dist. LEXIS 12426, at *6-7 (S.D.N.Y. Sep. 5, 1991) ("Both parties have produced lists of witnesses who would be inconvenienced by having to travel to the opposite coast to testify. The court need not scrutinize these lists as closely as it might in an ordinary transfer motion, however, because most insurance coverage disputes are decided on motions for summary judgment, and rarely proceed to trial.").

Shaw also points generally to the potential non-party witnesses of Dalton Utilities as a reason why the Northern District of Georgia is more convenient. Dalton Utilities is a party to some of the underlying suits and has already submitted to depositions and produced evidence in those cases. While more evidence could be needed from Dalton Utilities, it is likely the amount

of evidence is less than with a previously uninvolved witness. At this juncture, it also seems perfectly plausible that Shaw already possesses all the relevant evidence connected to Dalton Utilities. And like any other witness in Dalton, if further evidence is needed, the insurers can travel to Dalton to review documents or take depositions and the Northern District of Alabama is a brief drive down the highway if a court appearance is required of a witness.

If Shaw is arguing that personal jurisdiction does not exist over Dalton Utilities, that position appears to be wrong. The Circuit Court of Etowah County and the Alabama Supreme Court asserted personal jurisdiction over Shaw and other Dalton-based companies because the allegations in the underlying suits indicated that the parties knew Dalton Utilities was ineffectively treating the wastewater going into the Coosa River, which would eventually pollute the river on the Alabama side. *Ex parte Aladdin Mfg. Corp*., 305 So. 3d 214, 238-239 (Ala. 2019). It is difficult to imagine a situation where there is jurisdiction over Shaw in Alabama, but no jurisdiction over Dalton Utilities.

To the extent Shaw is arguing that the Northern District of Alabama cannot compel Georgia-based witnesses to appear, that is also wrong. Under Rule 45, federal courts are empowered to require a person to travel 100 miles for a deposition, hearing, or trial. That 100 miles is measured in a straight line (i.e. as the crow flies), not based on highway routes. *Weerheim v. J.R. Simplot Co*., 2007 U.S. Dist. LEXIS 53565, at *2 (D. Idaho July 23, 2007) ("[T]he modern trend is to measure the distance in a straight line so that the area in which service can be made can be indicated by a circle with the place of trial as its center and the 100 miles represented as the circle's radius. Measurement in this manner has the additional advantage of eliminating controversy as to what is the ordinary means of public travel and the usual route to the place of service.")(quoting 4B Wright and Miller, Federal Practice & Procedure, § 1127 at p. 260, n. 1

(2002)). See also P*remier Election Sols., Inc. v. SysTest Labs Inc*., Civil Action No. 09-cv-01822-WDM-KMT, 2009 U.S. Dist. LEXIS 94193, at *11 (D. Colo. Sep. 22, 2009) (accord); *McDaniel v. BSN Med., Inc*., No. 4:07CV-36-M, 2010 U.S. Dist. LEXIS 59392, at *8 (W.D. Ky. June 10, 2010) (accord); 7 Moore's Federal Practice - Civil § 32.24 (collecting cases). Thus, for example, at its shortest point, Dalton is approximately 34 miles from the border of the state of Alabama and the boundary of the Northern District of Alabama.

Here, the unidentified witnesses Shaw described would apparently be located in Dalton. Dalton is 90 miles from Anniston, the place of trial for a case filed in the Eastern Division of the Northern District of Alabama (such as this one).[3] *McClaney v. Macon Cty. Bd. of Educ*., 2011 U.S. Dist. LEXIS 259, at *2 (M.D. Ala. Jan. 3, 2011) ("Because this case arises out of the Eastern Division of the Middle District of Alabama, the trial will take place at the federal courthouse in Opelika, Alabama, the division's seat.").

### b. The Location of Documents Is Irrelevant In Cases With Electronic Discovery

In the age of electronic discovery, the location of the evidence is a factor that courts discount or totally ignore. Regardless, evidence will exist in both the Northern District of Georgia and the Northern District of Alabama. Multiple underlying suits have occurred in Alabama and Shaw has likely already produced some of the discovery needed in this case in those Alabama-centric suits.

In its brief, Shaw argues that "many of the facts at issue in this dispute go back over 70 years, predating electronic records. Transporting Shaw's documents from the Northern District of Georgia to the Northern District of Alabama would cause unnecessary burden and expense."

---

[3] Plaintiffs used the measuring tool from Google Maps to measure the straight-line distance from Dalton to the other locations.

(ECF 63, p. 6). This is a strange argument for a sophisticated entity with sophisticated lawyers to make.

In this day and age, all hard copy documents are routinely imaged for electronic production and that will no doubt happen for any older documents produced in this case. The notion that Shaw will be put to undue burden and expense by trucking large quantities of hard copy documents from Dalton to Anniston is simply not credible. *Microspherix LLC v. Biocompatibles, Inc*., No. 9:11-cv-80813-KMM, 2012 U.S. Dist. LEXIS 8359, at *10 (S.D. Fla. Jan. 24, 2012) ("In a world with fax machines, copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant. In light of the burden a party moving for transfer bears, absent a showing by the moving party to the contrary, this Court considers the location of relevant documents and the relative ease of access to sources of proof a non-factor."); *Couch v. Eli Lilly & Co*., No. 1:14-CV-2564-MHC, 2015 U.S. Dist. LEXIS 84088, at *11 (N.D. Ga. Apr. 10, 2015) (collecting cases).

Said another way, given the widespread adoption of electronic productions, the insurance-specific materials will be produced electronically in any forum. To the extent that there are somehow documents that must be reviewed in person in Georgia, Plaintiffs will willingly travel to Georgia for the review. *Elam v. Ryder Auto. Operations*, 94-CV-151A, 1994 U.S. Dist. LEXIS 20510, at *17 (W.D.N.Y. Nov. 1, 1994) ("If the plaintiff is willing to suffer inconvenience and expense by suing in a particular forum, this is the plaintiff's concern, not defendant's.").[4]

---

[4] Shaw also informed Plaintiffs during the recent Rule 26 Conference that its position is that a significant amount of the discovery needed for this case was already completed in the underlying cases. Plaintiffs and the other insurers are willing to consider that position, but will need to meet and confer on the issue with Shaw. If Shaw's position is accurate, this portion of Shaw's motion to transfer bears even less weight.

### c. The Convenience and Relative Means of the Parties Matters Little Where Large Companies Are the Litigants

While courts consider the convenience to the parties and the financial means of the parties, this case involves large national and international companies. Courts typically rule that the presence of large companies of means will not favor transfer under this factor. *Tuuci Worldwide, LLC v. S. Frankford & Sons, Inc*., No. 23-20615-CIV-ALTONAGA/Damian, 2023 U.S. Dist. LEXIS 142997, at *34 (S.D. Fla. Aug. 15, 2023) ("[B]oth parties are large businesses with considerable resources. Since both parties appear to have 'adequate means' to litigate this case in any of the proposed jurisdictions, 'the relative means of the parties does not favor transfer.'") (*citations omitted*).

Regardless, the distances between the possible locations of Dalton, Atlanta, Birmingham, and Anniston are minimal. There  appears to be very little increase to the inconvenience in this matter. And, in fact, the Circuit Court of Etowah County already rejected Shaw's same arguments on this issue. (Ex. 1, pp. 10-12).

### d. The Locus of Operative Facts Reside In the Northern District of Alabama

There is a substantial link between the Northern District of Alabama and the facts of this case. Municipal entities located in the Northern District of Alabama have sued Shaw, asserting that Shaw's waste products polluted the Coosa River, causing property damage in Etowah, Cherokee, Shelby, and Talladega Counties. Shaw seeks insurance coverage for the settlements and lawsuits. Shaw has settled or is litigating the three cases located within the boundaries of the Northern District of Alabama. *See, e.g., Uffner v. La Reunion Francaise*, S.A., 244 F.3d 38, 43 (1st Cir. 2001) (venue proper in Puerto Rico where loss occurred and not only in Virgin Islands where policy was issued).

**e. Shaw Has Not Met Its Burden that Georgia Law Is Likely to Apply**

Courts give consideration to which governing law may apply. Shaw argues that Georgia law will apply under the *lex loci contractus* choice of law test and therefore the Northern District of Georgia is better suited to adjudicate this matter. (Doc. 63, p.7). However, Shaw fails to discuss the entire choice of law test utilized in the Northern District of Alabama and does not meet its burden to show that Georgia law will apply. Therefore, this factor does not weigh in favor of transfer.

Plaintiffs agree that Alabama follows the *lex loci contractus* rule to determine which state's law applies to contract interpretation. *James River Ins. Co. v. Ultratec Special Effects, Inc.*, 449 F. Supp. 3d 1157, 1165-66 (N.D. Ala. 2020). Yet, that is the second part of the choice of law test. The first part of the test is assessing where any conflict of laws exists.

"[I]f there is no conflict between the competing bodies of law, the court need not decide which state's laws govern." *Nat'l Union Fire Ins. Co., PA v. Eagle Aviation Acad., LLC*, No. 1:10-CV-108-WKW [WO], 2010 U.S. Dist. LEXIS 124415, at *12 (M.D. Ala. Nov. 23, 2010) (citing *Lemuel v. Admiral Ins. Co.*, 414 F. Supp. 2d 1037, 1049-50 (M.D. Ala. 2006). *See also Scott v. Prudential Sec., Inc.*, 141 F.3d 1007, 1012 (11th Cir. 1998) ("We … need not resolve this choice of law problem because the relevant law in both states is essentially in harmony."); *Am. Safety Indem. Co. v. Fairfield Shopping Ctr., LLC*, 2016 U.S. Dist. LEXIS 93108, *49 (applying Alabama law because parties relied on Alabama law in their briefing and court saw no difference between Alabama and California law). In a case where no conflict exists, a federal court sitting in Alabama applies Alabama law to a dispute.

For example, in *Nat'l Union Fire Ins. Co., PA v. Eagle Aviation Acad., LLC,* the court considered whether a conflict existed between New York law and Alabama law on the issue of

when ownership of an aircraft begins. The issue mattered because the insurance policy required the policyholder to report new aircraft acquisitions within 30 days. The court concluded that this "particular question … is not answered in the case law of either state." *Nat'l Union Fire Ins. Co., PA v. Eagle Aviation Acad.*, LLC, 2010 U.S. Dist. LEXIS 124415, *13 (M.D. Ala. Nov. 23, 2010). Therefore, the court would "rely on general principles" and decided that "[b]ecause no actual conflict exists between the two states' laws, the court will apply the substantive law of Alabama, the forum state, as have the parties." *Id.*

It is Shaw's burden in this Motion to show that an actual conflict (as opposed to hypothetical conflict or an issue of unsettled law) exists between Georgia law and Alabama law such that a court is required to make a choice of law decision. Shaw puts forth no conflicts and has not met its burden to show Georgia law will apply. Although choice of law does not need to be resolved on this Motion, as of now, the initial assumption is that Alabama law will apply.

### f. Litigating this Case in the Northern District of Alabama Will Be More Efficient

Courts give consideration to trial efficiency and the interests of justice. This litigation is likely to proceed more quickly in the Northern District of Alabama than the Northern District of Georgia. According to the September 2023 statistics from the Federal Court Management Statistics, the Northern District of Georgia is 2-3 times busier than the Northern District of Alabama.

Parties filed 7,205 cases in the Northern District of Georgia, which averages out to 655 per judgeship. Parties filed 2,480 cases in Northern District of Alabama, which averages out to 310 per judgeship. (Ex. 2, p. 11). Given the less congested dockets, this case may proceed to resolution sooner in the Northern District of Alabama.

### ii. Plaintiffs' Chosen Forum Deserves Deference

The decision of whether a case should be transferred under § 1404(a) is "an individualized case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)). However, "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. 1981). *See also Am. Capitol Ins. Co. v. Prime Acquisition Grp.*, No. CV-04-VEH-2381-S, 2005 U.S. Dist. LEXIS 57951, at *5 (N.D. Ala. Feb. 18, 2005).

Shaw argues that Plaintiffs are not entitled to deference because "the operative facts underlying the cause of action did not occur with the forum chosen by the plaintiff" and because Plaintiffs do not reside in Alabama. (Doc. 63, p. 9). These positions are simply wrong.

For example, in *Hall v. Buschle*, 2023 U.S. Dist. LEXIS 91406 (N.D. Ga. May 25, 2023), the Northern District of Georgia denied a motion to transfer in which neither party resided in Georgia. *Id.* at *9. In that case, the court specifically rejected the argument that a defendant who resides outside the district is entitled to no deference. Instead, the court ruled it "accords some deference to Plaintiff's choice of forum" because "the operative facts giving rise to this action indisputably occurred in Georgia." *Id.*

Here, Plaintiffs selected a forum where the alleged property damage exists and where numerous underlying suits were filed (and will be filed). There should be little dispute that this venue is proper and that Plaintiffs should be accorded deference.

### C. Shaw Cannot Meet Its Burden of Showing Jurisdiction Exists in the Northern District of Georgia

As part of its burden, a movant must show that the proposed transferee court has proper subject matter jurisdiction. Recognizing that burden, Shaw briefly states that "the Northern District of Georgia would also have subject matter jurisdiction. If this case could have been brought in the Northern District of Alabama, it could have also been brought in the Northern District of Georgia." (Doc. 63, p. 4).

However, Shaw denied that the Northern District of Alabama has subject matter jurisdiction. (Doc. 36, ¶¶ 21-22, 24). The basis for subject matter jurisdiction will be diversity jurisdiction and the declaratory judgment statute in both the Northern District of Alabama and the Northern District of Georgia.

However, if Shaw believes there is no subject matter jurisdiction in the Northern District of Alabama, then it follows that there is no subject matter jurisdiction in the Northern District of Georgia. Plaintiffs maintain that diversity jurisdiction clearly exists in this case because the insurers and Shaw will be realigned as adverse to each other. *See Vestavia Hills v. General Fidelity Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012) ("[F]ederal courts are required to realign the parties in an action to reflect their interests in the litigation. The parties themselves cannot confer diversity jurisdiction upon the federal courts by their own designation of plaintiffs and defendants).[5]

---

[5] *See also Home Ins. Co. of Ill. v. Adco Oil Co.*, 154 F.3d 739, 741 (7th Cir. 1998) (affirming that "the normal alignment of parties in a suit seeking a declaratory judgment of non-coverage is Insurer versus Insured and Injured Party."); *Grinnell Select Ins. Co. v. Glodo*, No. 08-CV-891-JPG, 2009 WL 455126, at *2 (S.D. Ill. Feb. 23, 2009) ("[T]he normal alignment of parties in a suit seeking a declaratory judgment of non-coverage is Insurer versus Insured and Injured Party. This is so because any finding that the insurer owes a duty to indemnify an insured mutually benefits the insured party and the injured party.") (internal citation and quotations omitted); *La Shangrila, Inc. v. Hermitage Ins. Co.*, No. 8:07-cv-1133-T-24EAJ, 2007 U.S. Dist. LEXIS 59185, 2007 WL 2330912, at *2 (M.D. Fla. Aug. 13, 2007) (concluding that plaintiffs in underlying tort action should be aligned with the insured in an insurance-coverage dispute for jurisdictional purposes); *James River Ins. Co. v. Arlington Pebble Creek, LLC*, No. 1:13cv224-MW/GRJ,

Shaw has not explained why it thinks otherwise, but the main point for present purposes is that Shaw cannot have it both ways. It cannot deny in its Answer that diversity jurisdiction exists in this Court (or contest a motion for realignment) while simultaneously seeking transfer to the Northern District of Georgia on the basis that diversity jurisdiction will exist there. Given Shaw's position, the Motion to Transfer should be denied because a party cannot transfer a case to a court it believes would be improper.[6] *Elam v. Ryder Auto. Operations*, 94-CV-151A, 1994 U.S. Dist. LEXIS 20510, at *9 (W.D.N.Y. Nov. 1, 1994) (denying motion to transfer venue when, among other things, defendants denied jurisdiction existed in the transferee venue).

## **CONCLUSION**

The Court should deny Shaw's Motion. Shaw has failed to meet its burden that transfer is warranted, and Plaintiffs' choice of forum should prevail because it is not clearly outweighed by other considerations. Simply put, this case is properly venued within the Northern District of Alabama and there is no compelling reason to transfer to the Northern District of Georgia.

First, venue is clearly proper in the Northern District of Alabama where a substantial part of the events occurred giving rise to the insurance claim. Among other reasons, there are underlying suits and property damage within this forum that Shaw alleges are covered by the insurance policies.

Second, the traditional 28 U.S.C. § 1404(a) factors do not support transfer to the Northern District of Georgia. Namely, all of the relevant locations are within 2-3 hours of each other which negates any convenience issues, relevant witnesses and evidence clearly exist in

118 F. Supp. 3d 1302, 2015 U.S. Dist. LEXIS 105556, 2015 WL 4668700, at *5-6 (N.D. Fla. July 30, 2015) (accord); *Roberson v. USAA Cas. Ins. Co.*, No. 5:15-cv-454-Oc-30PRL, 2015 U.S. Dist. LEXIS 157871, at *4-5 (M.D. Fla. Nov. 23, 2015) (accord)

[6] It remains unclear why Shaw believes subject jurisdiction and personal jurisdiction are not present in the Northern District of Alabama.

both forums, the location of documents is irrelevant because those will inevitably be digitized, all parties are large national and international companies who can easily litigate in the Northern District of Alabama, the locus of operative facts includes the Northern District of Alabama which is the location of various of the property damage claims for which Shaw seeks coverage, and the courts of Northern District of Alabama are less congested than the courts in the Northern District of Atlanta. Shaw has not also met its burden to show Georgia law will apply, which means that as of now, the forum state Alabama's law should apply.

With this lack of support for transfer, well-settled law holds that a plaintiff's choice of forum is entitled to significant deference and a plaintiff's choice should not be disturbed unless it is "clearly outweighed" by other factors.

Third, Shaw cannot meet its burden to support a transfer. As part of its burden, a movant must show that the proposed transferee court has proper subject matter jurisdiction. However, Shaw denied that the Northern District of Alabama has subject matter jurisdiction. (Doc. 36, ¶¶ 21-22, 24). If Shaw believes there is no subject matter jurisdiction in the Northern District of Alabama, then it believes there is no subject matter jurisdiction in Northern District of Georgia.

Respectfully submitted this 12th day of January, 2024

/s/ *John W Johnson, II*[7]
**CHRISTIAN & SMALL LLP**
John W Johnson, II
505 North 20th Street, Suite 1800
Birmingham, Alabama 35203-2696
Telephone:  (205) 795-6588
Facsimile:  (205) 328-7234
jwjohnson@csattorneys.com

---

[7] Counsel certifies that he has affirmatively and diligently sought to submit to this Court only those documents, factual allegations, and arguments that are materials to the issues to be resolved in the motion, that careful consideration has been given to the contents of all submissions to ensure that the submissions do not include vague language or an overly broad citation of evidence or misstatements of the law, and that all submissions are non-frivolous in nature.

Christopher Hemphill
(Admitted PHV)
Michael Baughman
(Admitted PHV)
**COHN BAUGHMAN**
525 West Monroe Street, Suite 1500
Chicago, IL 60661
Mobile: 708.602.5118  (preferred)
Office: 312.753.6616
christopher.hemphill@mclolaw.com
michael.baughman@mclolaw.com

*Attorneys for Plaintiffs*

### <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on January 12, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to the following counsel of record:

Brannon J. Buck
Christopher B. Driver
BADHAM & BUCK, LLC
2001 Park Place North, Suite 500
Birmingham, AL 35203
bbuck@badhambuck.com
cdriver@badhambuck.com

Shattuck Ely
Jacob Weiss
FELLOWS LABRIOLA LLP
233 Peachtree Street NE
Suite 2400
Atlanta, GA 30303
tely@fellab.com
jweiss@fellab.com

Frederick Lane Finch, Jr.
Brandon J. Clapp
SWIFT, CURRIE, MCGHEE & HEIRS, L.L.P.
1901 Sixth Avenue North, Suite 1100
Birmingham, AL 35203
Lane.finch@swiftcurrie.com
Brandon.clapp@swiftcurrie.com

Joel S. Isenberg
Robert E. Norton
ELY & ISENBERG, LLC
3500 Blue Lake Drive, Suite 345
Birmingham, AL 35243
jisenberg@elylawllc.com
rnorton@elylawllc.com

Edward M. Holt
Zachery L. Gillespie
MAYNARD NEXSEN PC
1901 Sixth Avenue North, Suite 1700
Birmingham, AL 35203
tholt@maynardnexsen.com
zgillespie@maynardnexsen.com

Scott M. Salter
STARNES DAVIS FLORIE LLP
100 Brookwood Place, 7th Floor
Birmingham, AL 35209
ssalter@starneslaw.com

Edward B. Parks, II
Annette P. Rolain
RUGGERI PARKS WEINBERG LLP
1875 K Street NW, Suite 600
Washington, DC 20006
eparks@ruggerilaw.com
arolain@ruggerilaw.com

Michael A. Valerio
ALSTON & BIRD LLP
950 F Street NW
Washington, DC 20004-1404
Michael.valerio@alston.com

Hirschel M. Hall
Tejas Patel
ALSTON BIRD LLP
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Hirshel.hall@alston.com
Tejas.patel@alston.com

Adam J. Kaiser
Alexander S. Lorenzo
ALSTON & BIRD LLP
90 Park Avenue, 15th Floor
New York, NY 10016
Adam.kaiser@alston.com
Alexander.lorenzo@alston.com

Employers' Insurance Company of Wausau
175 Berkeley Street
Boston, MA 02166

/s/ *John W Johnson, II*
OF COUNSEL