FILED

2024 Jan-12  AM 11:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit 1

ELECTRONICALLY FILED
8/13/2018 2:31 PM
31-CV-2016-900676.00
CIRCUIT COURT OF
ETOWAH COUNTY, ALABAMA
CASSANDRA JOHNSON, CLERK

## IN THE CIRCUIT COURT OF ETOWAH COUNTY, ALABAMA

| | |
|---|---|
| THE WATER WORKS AND SEWER BOARD OF THE CITY OF GADSDEN, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION NO: ) **31-CV-2016-900676.00** |
| 3M COMPANY, INC., et al., | ) ) |
| Defendants. | ) |

## ORDER ON DEFENDANTS' DISPOSITIVE MOTIONS AND MOTIONS FOR PROTECTIVE ORDER

Before the Court are motions to dismiss, motions for summary judgment, and motions for a protective order to stay discovery filed by various Defendants. The Court will address each motion separately.

## FACTS

Plaintiff, the Water Works and Sewer Board of the City of Gadsden ("Plaintiff"), provides residential and commercial customers in Etowah County with drinking water. Plaintiff utilizes the Coosa River as its raw water source, specifically drawing its source water from Lake Neely Henry in the Middle Coosa Basin. Coosa River tributaries above Plaintiff's water intake point includes the Conasauga River which is located just to the east of Dalton, Georgia. Dalton is home to over 150 carpet manufacturing plants, and more than 90% of the world's carpet is produced within a 65-mile radius of the city.

Defendants are owners and operators of, or the chemical suppliers to, manufacturing facilities in and around Dalton, Georgia. Plaintiff alleges that these manufacturing facilities apply perflourinated chemicals ("PFCs") including, but not limited to, perfluorooctanoic acid ("PFOA"), perfluorooctane sulfonate ("POSE"), and related chemicals in the manufacturing process to impart stain resistance to their carpet. Plaintiff further states that these chemicals pose certain health risks to individuals who drink water contaminated with PFCs and its related chemicals. Because of these health risks, the United States Environmental Protection Agency ("EPA") issued a new drinking water health advisory for PFOA and PFOS, stating that the combined concentration of these chemicals in drinking water pose a lifetime health risk when they reach concentration that levels of greater than 70 parts per trillion.

Plaintiff alleges the Defendant chemical suppliers and carpet manufacturers caused PFCs and their related chemicals to enter the Conasauga River that contaminated Plaintiff's water source from the Coosa River. As a result, Plaintiff claims it must expend resources to remove these chemicals from the source water to ensure it can deliver safe drinking water to its customers.

## <u>ANALYSIS</u>

The motions filed by the Defendants can mostly be placed into three different categories. First, most of the Defendants seek dismissal or summary judgment for lack of personal jurisdiction either because they claim they did not supply or use the chemicals at issue in the complaint or did not engage in any activities in the State of Alabama to warrant this court's jurisdiction. Second, some Defendants attack the sufficiency of the allegations in Plaintiff's complaint and move to dismiss for failure to state a claim upon which relief can be granted pursuant to ALA. R. CIV. P. 12(b)(6). Finally, several Defendants also moved for a protective order staying discovery pursuant to ALA. R. CIV. P. 26(c) until this Court rules on the accompanying dispositive motion seeking dismissal from the case.

For ease of review, the Court will discuss the governing law for each of these issues, then will address the Defendants' motions separately.

## I.     **Personal Jurisdiction**

Alabama courts may exercise personal jurisdiction over an out-of-state defendant as permitted by Alabama's long-arm provision, Ala. R. Civ. Pro. 4.2(b). "This rule extends the personal jurisdiction of Alabama courts to the limit of due process under the United States and Alabama Constitutions." *Ex parte City Boy's Tire*, 87 So. 3d 521, 528 (Ala. 2011). Alabama Courts do not look to statutes or rules, but instead look to the essence of due process. *Id.* Stated another way, instead of simply applying formulas, the court relies on principles of fairness and justice. *Id.* There are two types of jurisdiction a court may exercise over a defendant: general and specific.

### a.   <u>General Jurisdiction</u>

General jurisdiction exists when a defendant's "continuous …operations within a state [are] so substantial and of such a nature as to justify suit against [the defendant] on causes of actions arising from dealings entirely distinct from those activities" *Hinrichs v. General Motors of Canada, Ltd.*, 222 So. 3d 1114, 1121 (Ala. 2016) *cert. denied,* 137 S. Ct. 2291(2017) (quoting *Goodyear*, 564 U.S. at 924). It requires "continuous and systematic" contacts with the forum state so as to render the defendant essentially at home there. *Id.* (quoting *Goodyear*, 564 U.S. at 919 (2011). A corporation's home may include its state of incorporation, its principal place of business, or wherever it has "some other comparable level of intensity of contact." *Hinrichs,* 222 So. 3d at 112. Notably, "*Goodyear* did not hold that a corporation may be subject to general jurisdiction **only** in a forum where it is incorporated or has its principal place of business; it simply typed those places paradigm all-purpose forums." *Id.* (quoting *Daimler AG v. Bauman*, 134 S.Ct. 746, 760-62 (2014) (emphasis original)). The *Hinrichs* court interpreted *Daimler* to hold that the key inquiry is whether a defendant's contacts with Alabama are "so 'continuous and systematic' that it is essentially 'at home' there." *Hinrichs*, 222 So. 3d at 1125. Therefore, the court may still analyze the extent of a defendant's contacts with the forum state to determine whether it is "essentially" at home there.

### b.   <u>Specific Jurisdiction</u>

Three elements must be satisfied for Alabama courts to have specific personal jurisdiction:

> First, the defendant must have 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State.' *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The requirement that a defendant purposefully direct activity to the forum state precludes the exercise of jurisdiction over a defendant whose affiliation with the forum state is 'random,' 'fortuitous,' or 'attenuated,' or the 'unilateral activity of another party or a third person.' *Burger King v. Rudzwicz*, 471 U.S. 462, 475 (internal citation marks omitted) …
>
> Second, the action must 'arise out of or relate to' the foreign defendant's 'activities in the forum State.' *Helicopteros Nacionales de Colombia, S.A., v. Hall.*, 466 U.S. 408, 414 (1984); *Burger King*, 471 U.S. at 472…
>
> Finally, a court must examine whether the exercise of jurisdiction over a foreign defendant comports with fair play and substantial justice, taking into account various factors deemed relevant, including an evaluation of the burden on a defendant, the forum state's interest in obtaining convenient and effective relief, the interstate judicial system's interest in efficient resolution of the controversies, and furthering fundamental social policies. *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 113 (1987); *Burger King*, 471 U.S. at 476-77.

*Hinrichs*, 222 So. 3d at 1121-22.

Where the plaintiff alleges that the defendant committed an intentional tort, the effects test may be applied to determine whether the defendant has the requisite contacts with the forum state. The effects test requires a Plaintiff to show "that the defendant (1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009). Importantly, physical presence in the forum state is not necessary for jurisdiction as a physical entry into the forum state through "some other means" is a relevant contact. *Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773-74 (1984)).

These cases establish that a defendant must direct some act towards a particular state to warrant personal jurisdiction and being hauled into court there. However, this reasoning, and the cases that established the current jurisdictional analysis, are factually distinguishable from the matter before this Court and other environmental contamination cases involving a continuous tort that occurs over time and migrates from one state into another. Indeed, the United States Supreme Court has recognized that "even the simplest sort of interstate pollution case [is] an awkward vehicle to manage." *Ohio v. Wyandotte Chemicals Corp.*, 401 US 493, 504 (1971). Thus, any jurisdictional analysis must consider the more complex nature of interstate environmental pollution cases such as that before this Court.

In similar water pollution cases, courts have not dismissed lawsuits for lack of personal jurisdiction when a resident plaintiff sued a non-resident defendant that discharged pollution into water or released water that ultimately caused damage to the plaintiff in the forum state. *See, e.g. People of State of Illinois v. City of Milwaukee*, 599 F.2d 151 (7th Cir. 1979) (water pollution originating in Wisconsin causing injury in Illinois), *aff'd*, 451 U.S. 304 (1981); *International Paper Co. v. Ouellette,* 479 US 481 (1987) (water pollution originating in New York causing injury in Vermont; *Ohio v. Wyandotte Chemicals Corp.*, 401 US 493, 500-501 (1971) (water pollution from Canada causing damage in the U.S.); *Pakootas v. Teck Cominco Metals, Ltd.*, No. CV-04-256-AAM, 2004 WL 2578982 (E.D. Wash. Nov. 8, 2004), *aff'd* 452 F.3d 1066 (9th Cir. 2006) (water pollution from Canada causing damage in U.S.); and *Horne v. Mobile Area Water & Sewer System,* 897 So.2d 972 (Miss. 2004) (release of water in Alabama causing property damage in Mississippi). Indeed, the Supreme Court specifically rejected one defendant's argument that "all state-law suits must be brought in [the] source-state *courts.*" *Ouellette*, 479 U.S. at 499 (emphasis original). Thus, jurisdiction was deemed proper where the injury occurred.

This Court finds the *Horne* and *Pakootas* cases particularly instructive. In both cases, there was a question of whether the plaintiffs satisfied the issue of whether the out-of-state defendants had engaged in "express aiming" or "purposefully directing" activities toward the forum state. In both cases, the court held that the plaintiffs had satisfied their burdens on this issue.

In *Horne*, property owners in Mississippi sued various defendants, including the Water and Sewer System of Mobile, Alabama, ("The System") in state court in Mississippi. The System had, in Alabama, released a significant amount of water in anticipation of an oncoming hurricane. The water that was released damaged and/or destroyed real and personal property downstream in Mississippi. The Supreme Court of Mississippi held that "[t]here is no question that [the defendants] knew the water would flow into Mississippi…" *Horne* 897 So.2d at 979. This act and this knowledge was sufficient for the court to determine that the System in Alabama had "minimum contacts" with Mississippi such that the exercise of personal jurisdiction was appropriate.

In *Pakootas*, the plaintiffs were citizens of the State of Washington that filed suit under the federal Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) against a Canadian corporation that operated a smelter ten miles north of the U.S. – Canada border. The plaintiffs alleged that the defendants discharged harmful substances into the waters that flowed downstream to the plaintiffs' location and caused damage. The court found personal jurisdiction existed under these facts.

Thus, a defendant who engaged in conduct that foreseeably impacted a plaintiff in another state was sufficient to confer personal jurisdiction in the state where the plaintiff was injured. This finding comports with the due process requirement that it be fair to force a defendant to litigate in the selected forum. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This ultimately turns on foreseeability and whether a defendant's conduct could have predictably caused an injury in the forum state. *See Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981). If so, then the defendant could reasonably anticipate being hauled into court there.

4

## II.      Failure to State a Claim

Under ALA. R. CIV. P. 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  This pleading standard does not require that a plaintiff show that it will "ultimately prevail, but only whether the plaintiff may possibly prevail." *Liberty Nat'l Life Ins. Co. v. University of Alabama Heath Servs. Found., P.C.* 881 So.2d 1013, 1017 (Ala. 2003).  Dismissal under ALA. R. CIV. P. 12(b)(6) is only proper if "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Id.*

Pleadings are construed liberally in favor of the plaintiff. *Adkison v. Thompson*, 650 So. 2d 859, 862 (Ala. 1994). A well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "Generally, the pleadings, in and of themselves, are considered relatively unimportant because cases are to be decided on the merits." *Johnson v. City of Mobile*, 475 So.2d 517, 519 (Ala. 1985).  "The purpose of the Alabama Rules of Civil Procedure is to effect justice upon the merits of the claim and to renounce the technicality of procedure." *Crawford v. Crawford*, 349 So. 2d 65, 66 (Ala. Civ. App. 1977).  Further, the court must accept all allegations of the plaintiff's complaint as true unless they are controverted by the defendant's affidavit. *Corporate Waste Alternatives, Inc. v. McLane Cumberland, Inc.*, 896 So. 2d 410, 413 (Ala. 2004).

Plaintiff asserts the following claims against all defendants: negligence, nuisance, trespass, wantonness/punitive damages, and injunctive relief.  A handful of Defendants argue these claims are not sufficiently plead under ALA. R. CIV. P. 12(b)(6) and, as a result, seek dismissal.

## III.      Standard Governing Granting a Protective Order

Several Defendants seek a halt of discovery until this Court determines whether it has jurisdiction over them.  There is no law or mandate to stay discovery while a dispositive motion is pending before a court.  Instead, this Court retains discretion to grant a stay only if the moving party establishes "good cause" to protect a party "from annoyance, embarrassment, oppression, or undue burden or expense." Ala. R. Civ. P. 26(c).  Courts have imposed various limitations when determining whether there is good cause to grant a protective order staying discovery.  The Alabama Supreme Court recognized that limiting discovery should occur "sparingly and with real discretion rather than as an absolute rule." *Ex parte Windom*, 776 So. 2d 799, 803 (Ala. 2000) (quoting 8 Wright & Miller, *Federal Practice and Procedure*, § 2040 (1994)).  "[T]he movant must meet this burden with a 'particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *Smith v. Life Ins. Co. of North America*, 33 F.Supp.3d 1324, 1326 (N.D. Ala. July 30, 2014) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978)).[1]  Thus, mere conclusory statements about discovery creating an undue burden or expense are insufficient.

---

[1] Federal courts' analyses of the analogous Federal Rule of Civil Procedure 26 are "authority for construction of the Alabama Rules." *Ex parte Scott*, 414 So.2d 939, 941 (Ala. 1982); *see also Baldwin v. Baldwin*, 160 So. 3d 34, 40 (Ala. Civ. App. 2014) (citing *Ex parte Novartis Pharms. Corp.*, 975 So. 2d 297, 300 n.2 (Ala. 2007)) ("the opinions of federal courts construing the federal rule are persuasive authority as to the proper construction of" Rule 26(c)).

Rule 26(c) also requires the moving attorney to submit a statement along with the motion for protective order confirming that attorney met and conferred with opposing counsel to attempt to resolve the dispute:

> "A motion for a protective order **shall** be accompanied by a statement of the attorney for the moving party stating that the attorney, **before filing the motion**, has endeavored to resolve the subject of the discovery motion through correspondence or discussion with opposing counsel…" (emphases added).

The supplied emphases clearly establish this meet and confer requirement is mandatory prior to counsel moving this Court for a protective order. Indeed, the committee comments elaborating on this requirement confirm its desire that parties resolve a discovery dispute before involving the Court. Failure to submit the meet and conferral statement is a ground for denying a motion for protective order. *See Smith v. Savage*, 655 So.2d 1022, 1025 (Ala. Civ. App. 1995) (stating that the trial court should reconsider the granting of a protective order when the moving party failed to file the conferral statement).

## APPLICATION

The Court will now analyze each Defendant's motion.

## I.   Defendant MFG Chemical, Inc.

### a.   Motion to Dismiss for Lack of Personal Jurisdiction

MFG Chemical, Inc. ("MFG") argues this Court lacks sufficient contacts with Alabama to warrant this Court exercising specific jurisdiction. In support, it relies upon the affidavit of Chairman and CEO Charles E. Gavin, III who states that MFG is incorporated in Georgia, maintains no manufacturing or office locations in Alabama, and does not discharge anything directly into the Conasauga River but, instead, discharges its wastewater to the wastewater treatment facility owned and operated by Dalton Utilities. Doc. 218, Ex. A. MFG also points out that, even if its discharges had contained PFCs, it did not pollute Plaintiff's waters because it transferred its discharges to Dalton Utilities for treatment and Dalton Utilities' alleged failure to decontaminate is an intervening act directed at Alabama which breaks the chain of causation.

Plaintiff responds that Mr. Gavin's affidavit does not sufficiently controvert its allegations that MFG manufactured and discharged wastewater containing PFCs to Dalton Utilities. Plaintiff also highlights that Mr. Gavin's affidavit fails to state that MFG "never" manufactured or discharged PFCs, inferring that MFG could have manufactured and sold PFCs in previous years which is pertinent because these chemicals persist in the environment for years and can bioaccumulate in humans, causing a variety of illnesses. Doc. 498, pgs. 9-11. Plaintiff also emphasizes that MFG's discharge of pollutants to Dalton Utilities is not an intervening act breaking the chain of causation because MFG was aware of the PFC contamination issues involving Dalton Utilities and the Conasauga River for several years yet continued to contribute to the pollution with its manufacture and discharge of PFCs. In support, Plaintiff cited to

publicly available studies which examined the toxicity of PFCs dating back to 1999 and one report released by the EPA in 2008 revealing high levels of PFCs in the Conasauga River downstream of Dalton, Georgia. *Id.* at pgs. 7-9.

Considering the facts in the light most favorable to the Plaintiff and in construing all reasonable inferences in favor of the Plaintiff where the Complaint and the MFG's evidentiary submissions conflict, the Court finds that the Plaintiff has demonstrated that the Defendants have conducted activity directed at Alabama and that that activity is not "random," "fortuitous," or "attenuated," or the "unilateral activity of another party or a third person."

As shown in the *Horne* and *Pakootas* cases, the actions of an entity that result in harmful substances being placed into a water source can result in harm downstream in a foreign jurisdiction and it is reasonable for the entity causing those substances to be placed into the water to expect that their downstream harm could cause them to be brought into court in that foreign jurisdiction. Thus, an entity causing chemicals to enter the Conasauga River should expect that since that river is a tributary of the Coosa River, then the chemicals can enter the Coosa River. That entity should further expect that those chemicals will flow downstream and reach Alabama once the Coosa River crosses the Georgia/Alabama state line. Therefore, the act of causing the chemicals to enter the Conasauga River is an act directed at Alabama.

MFG argues that Dalton Utilities' treatment, or alleged failure thereof, is an intervening cause which breaks the chain of causation and, consequently, any claim that MFG purposefully directed activities at Alabama cannot stand. This does not occur, however, if the intervening cause was foreseeable. Foreseeability is the cornerstone of proximate cause. *Alabama Power Company v. Taylor,* 306 So.2d 236 (Ala. 1975). A defendant is held legally responsible for all consequences which a prudent and experienced person, fully acquainted with all the circumstances, at the time of his negligent act, would have thought reasonably possible to follow that act. *Prescott v. Martin,* 331 So.2d 240 (Ala. 1976). This includes the negligence of others. *Williams v. Woodman*, 424 So.2d 611 (Ala. 1982).

A cause is considered the proximate cause of an injury if, in the natural and probable sequence of events, and without intervention of any new or independent cause, the injury flows from the act. *City of Mobile v. Havard*, 268 So.2d 805 (Ala. 1972). To be an intervening cause, a subsequent cause also must have been unforeseeable and must have been sufficient in and of itself to have been the sole "cause in fact" of the injury. *Vines v. Plantation Motor Lodge*, 336 So.2d 1338, 1339 (Ala.1976). If an intervening cause could have reasonably been foreseen at the time the tortfeasor acted, it does not break the chain of causation between his act and the injury. *Id.*

MFG's supposed lack of control over its wastewater discharge from Dalton Utilities is not the pertinent issue, and Dalton Utilities' own control over its treatment and discharge of MFG's PFC-laden wastewater does not break the causal chain. Any supposed inability of Dalton Utilities to sufficiently treat and remove PFCs from its wastewater was certainly foreseeable based on publicly available documents. As discussed above, the Dalton carpet industry and their chemical suppliers have been on notice for nearly a decade that the industrial wastewater discharged from their operations have introduced PFC contamination into the Coosa River

Watershed after passing through Dalton Utilities. MFG's argument that it could not foresee its wastewater discharge would ultimately pollute Plaintiff's drinking water source, and that its actions were not aimed at Alabama residents, is unavailing.

MFG cannot, at this stage in the litigation, avail itself of the defense that Dalton Utilities is the entity responsible and that its actions constitute the "unilateral activity of another party or a third person." As alleged by Plaintiff, and, again considering the facts in the light most favorable to the Plaintiff and resolving factual disputes in its favor, the chemicals at issue "resist degradation during the treatment process utilized by Dalton Utilities and increase in concentration as waste accumulates in the [Land Application System]." Compl. at ¶ 48. In other words, the chemicals treated by Dalton Utilities by the Defendants cannot be treated and removed from the environment by Dalton Utilities. Therefore, Plaintiff alleges the Defendants have not properly disposed of the chemicals by sending them to Dalton Utilities. Thus, the actions complained of are not the "unilateral activity of another party or a third person." Given this finding, the Court also finds that: (1) there is "a 'relationship among the defendant, the forum, and the litigation'" and (2) the exercise of personal jurisdiction would "comport with fair play and substantial justice."

Therefore, the Court finds in favor of the Plaintiff on the issue of specific personal jurisdiction and denies MFG's Motion to Dismiss.

### b. Motion for Protective Order to Stay Discovery

Because the Court denies MFG's Motion to Dismiss, its Motion for Protective Order to Stay Discovery is also denied.

## II. The Dixie Group, Inc.

### a. Motion to Dismiss for Lack of Personal Jurisdiction

Defendant The Dixie Group, Inc. ("Dixie Group") makes similar arguments regarding personal jurisdiction as asserted by MFG and, for the same reasoning as set out above, its motion is to be denied.

It is also worth noting one additional argument made by Dixie Group. Dixie Group also argues that "foreseeability alone is insufficient as a matter of law to trigger personal jurisdiction in the forum state." *Thompson v. Taracorp, Inc.*, 684 So. 2d 152, 156-57 (Ala. Civ. App. 1996). Dixie Group claims the court in *Taracorp* found that, even though the improper disposal of a battery by an Alabama company or use of those batteries in a manner harming the Alabama company was foreseeable, it declined to find personal jurisdiction. In actuality, the court held it was not foreseeable to Taracorp that its conduct would pollute the plaintiff's property and be sued in Alabama. *Id.* at 156. The *Taracorp* court dismissed the Georgia-based defendant because Taracorp's only contacts with Alabama involved two transactions with the resident defendant. The court determined that Taracorp had no knowledge of how the defendant disposed of the batteries or information concerning environmental problems caused by the batteries' disposal. *Id.* at 156.

Unlike Taracorp, Dixie Group and other Defendants here applied PFCs and PFC-related chemicals in its manufacturing process and discharged contaminated water for an unknown time. Based on publicly available information discussed below, Dixie Group was well aware of the environmental harm incurred by those downstream in Alabama due to this ongoing conduct. Dixie Group's statement that the winding and attenuated path of these chemicals down 150 river miles of waterways is unavailing for reasons discussed above in Section I(a).

Therefore, the Court finds in favor of the Plaintiff on the issue of specific personal jurisdiction and denies Dixie Groups Motion to Dismiss.

### b. Motion for Protective Order to Stay Discovery

Because the Court denies Dixie Group's Motion to Dismiss, its Motion for Protective Order to Stay Discovery is also denied.

### III.    J&J Industries, Inc.

### a. Motion to Dismiss for Lack of Personal Jurisdiction

Defendant J&J Industries, Inc. makes similar arguments regarding personal jurisdiction as asserted by Dixie Group and, for the same reasoning as set out above, its motion is denied.

### b. Motion for Protective Order to Stay Discovery

Because the Court denies J&J's Motion to Dismiss, its Motion for Protective Order to Stay Discovery is also denied.

### IV.    Dorsett Industries, Inc.

### a. Motion to Dismiss for Lack of Personal Jurisdiction

Defendant Dorsett Industries, Inc. makes similar arguments regarding personal jurisdiction as asserted by Dixie Group and, for the same reasoning as set out above, its motion is to be denied.

### b. Motion for Protective Order to Stay Discovery

Because the Court denies Dorsett's Motion to Dismiss, its Motion for Protective Order to Stay Discovery is also denied.

### V.    Shaw Industries, Inc.

### a. Motion to Dismiss for Lack of Personal Jurisdiction and, Alternatively, Under the Doctrine of Forum Non-Conveniens.

#### i. This Court has Specific and General Personal Jurisdiction over Shaw

### 1. General Jurisdiction Exists

Defendant Shaw Industries, Inc. ("Shaw") is the only defendant against which Plaintiff contends this Court has general jurisdiction. Although Shaw is incorporated in Georgia and states its principal place of business in Dalton, it can still be subject to general jurisdiction if its contacts with Alabama arise to "some other comparable level of intensity of contact" and is essentially "at home" in Alabama. *Hinrichs,* 222 So.3d at 1122, 1125.

Shaw is the world's largest carpet manufacturer with more than $4 billion in revenue and approximately 25,000 employees worldwide.[2]  It has manufacturing and distribution facilities in twenty-nine (29) states and other manufacturing facilities in Australia, Belgium, Brazil, Canada, Chile, China, India, Mexico, Singapore, the United Arab Emirates, and the United Kingdom.[3]  It operates thirty-one (31) distribution centers and twenty-seven (27) redistribution centers across the United States.[4]  According to the Department of Transportation, Shaw's transportation subsidiary has over 1,000 drivers[5] while Shaw employs 400 drivers operating out of its 29 distribution centers who make 4,200 deliveries per day.[6]  Since 2013, Shaw has hosted tradeshows throughout the southeast, including Atlanta and Dallas.[7]  Tradeshows are also scheduled in these cities for 2018.[8]

Shaw's contacts with Alabama are extensive.  Shaw has had a manufacturing facility in Andalusia, Alabama since 1992 and announced in April that it would spend an additional $184 million on new machinery.[9]  Until July 2017, Shaw also operated a plant in Valley Head, Alabama which opened in 1971.[10]  In addition to its manufacturing operations, Shaw also specifically marketed to Alabama customers.  It advertises its Alabama dealers on its website and, in turn, its dealers advertise Shaw products in Alabama.[11]  Shaw's presence in Alabama is further bolstered by the eleven (11) "network" retailers here, an additional twenty-nine (29) retailers outside the network[12], and the three full time sales representatives that market to all types of customers throughout the state.[13]  Shaw's carpet is sold by Lowe's which, as of January

---

[2] https://shawfloors.com/why-shaw/about-us/shaw-history.
[3] https://www.linkedin.com/company/shaw-industries/.
[4] http://www.shawtransport.com/Driver-Opportunities/Regional-Operations.aspx.
[5] https://safer.fmcsa.dot.gov/query.asp?query_type=queryCarrierSnapshot&query_param=USDOT&query_string=188556.
[6] http://www.shawtransport.com/Driver-Opportunities/Regional-Operations.aspx.
[7] Plaintiff's counsel used an internet archive database called the Wayback Machine which allows a user to interact with certain websites as they appeared in the past.  Defendant's website only provided upcoming tradeshows in 2018, so this tool was utilized to show past shows.
https://web.archive.org/web/20111204223851/http://www.shawshows.com:80/.
[8] http://www.shawshows.com/
[9] http://www.andalusiastarnews.com/2017/04/05/shaw-plans-184m-project/.
[10] http://www.al.com/business/index.ssf/2016/05/shaw_industries_closing_in_val.html.
[11] https://shawfloors.com/stores/storelist.
[12] https://shawfloors.com/stores.
[13] Carmen Preston, Jim Estes, and Justin Bixeman market to business engaged in the following fields: education, healthcare, hospitality, schools and government, retirement homes, and retail.

29, 2016, has thirty-seven locations throughout Alabama.[14]  Shaw provides marketing materials for Lowe's and other retailers.

These contacts are sufficiently substantial, continuous, and systematic to essentially render Shaw at home in Alabama.  Therefore, it is subject to general jurisdiction in Alabama.

### 1. Specific Jurisdiction Exists

Although the Court need not rule on the issue of specific jurisdiction because it holds Shaw is subject to general personal jurisdiction, it will nonetheless address the issue.  Shaw makes similar arguments regarding personal jurisdiction as asserted by MFG and Dixie Group and, for the same reasoning as set out above, its motion is to be denied.

Shaw relies upon the affidavit of its Vice President, Karen Tallon, in support of its argument it lacks sufficient contacts with Alabama because it is incorporated in Georgia and maintains its principal place of business in Dalton.  *See* Doc. 182.  Importantly, it does not refute that Defendant manufactures carpet using PFCs at its locations in Alabama, markets that carpet to customers in Alabama, ships to those Alabama, or sells its products at many retailers in Alabama.  In other words, Shaw does not deny it engaged in the activity giving rise to this suit in Alabama but, instead, merely seeks to downplay its connections with Alabama by stating its presence in Georgia.  As discussed above, this is unavailing in cases where polluting activities occurred across state lines.

Simply stated, Ms. Tallon's affidavit does not constitute convincing evidence contradicting Plaintiff's assertion that it has been, and continues to be, damaged because of Shaw's use and discharge of PFCs, including PFOA, PFOS, and their precursors. To the extent any conflict exists between Plaintiff's allegations and Shaw's proffered affidavit, such conflict must be resolved in Plaintiff's favor. *See Corporate Waste Alternatives, Inc.*, 896 So. 2d at 412. Moreover, discovery is in its infancy in this case and must be conducted before this Court agrees to dismiss Shaw.

### ii. Alabama is the Proper Forum to Adjudicate this Lawsuit

Shaw also seeks dismissal under Ala. Code. § 6-5-430 on forum non conveniens grounds and suggests that Dalton is the more appropriate venue.  The burden is on the party seeking dismissal to prove a more appropriate forum outside the state exists, based on the location of acts giving rise to the lawsuit occurred, the convenience of parties and witnesses, and the interests of justice. Ala. Code. § 6-5-430; *Malsch v. Bell Helicopter Textron, Inc.*, 916 So. 2d 600 (Ala. 2005).  All these factors must be positively found to justify dismissal.  *Donald v. Transport Life Ins. Co.*, 595 So. 2d 865 (Ala. 1992).

A court is less likely to find it inconvenient for a corporation to litigate a case in a foreign state.  *See Ex parte Integon Corp.*, 672 So.2d 497 (Ala. 1995) (holding trial court did not abuse its discretion in denying motion to dismiss based on forum non conveniens despite the corporate

---

[14]https://www.lowes.com/pl/Carpet-Carpet-carpet-tile-Flooring/4294825283?refinement=4294942474; https://www.mystore411.com/store/list_state/12/alabama/Lowes-store-locations.

defendant's principal place of business was located in North Carolina, its president was resident of North Carolina, and many acts giving rise to claims in North Carolina). This makes sense given that corporations can easily arrange for its witnesses and documents to appear in another state. In *Ex parte Integon Corp.*, the court determined that the plaintiff's principal place of business in Birmingham meant that Alabama was the appropriate forum. *Id.* Unlike the parties in that case that were states apart, Gadsden is only 90 miles from Dalton. Shaw's expenses to litigate this action in Gadsden are minimal for a $4 billion corporation such as itself. Consequently, Alabama is the most appropriate forum, and so the Court denies Shaw's request to dismiss the action under forum non conveniens grounds.

## VI.     Kaleen Rugs, Inc.

### a.   Motion to Dismiss or, in the Alternative, Motion for Summary Judgment

Defendant Kaleen Rugs, Inc. ("Kaleen") bases its dispositive motion on the statement that it did not engage in the complained of conduct. In support, it submitted two affidavits – one from Senior Vice President Blake Dennard and another from Chief Operating Officer Monty Rathi. *See* Docs. 106 and 818. Mr. Dennard's affidavit states that Kaleen does not manufacture carpet, use any of the chemicals set forth in the complaint, or discharge any chemicals into any water supply. Mr. Rathi states that Kaleen has "never ordered, requested, directed or specified" for any treatment to be applied to its carpet and has no knowledge that PFCs were used on the rugs it received or sold.

Although informative, these affidavits fail to conclusively establish that Kaleen did not previously engage in the conduct giving rise to this lawsuit. Mr. Dennard's affidavit states that Kaleen does not **presently** manufacture rugs or carpet, utilize or supply chemicals related to the carpet manufacturing process or discharge these chemicals into any water supply. Doc. 106 at ¶¶ 2, 4, 5. Importantly, the affidavit does not say that Defendant **never** engaged in these activities. As stated in Plaintiff's complaint, PFCs and related chemicals persist in the environment for years making any past application and discharge of these chemicals pertinent to this action. Compl. ¶ 50. Tellingly, Mr. Rathi's affidavit did not shore up this deficiency which Plaintiff mentioned in its Response to Kaleen's Motion to Dismiss. *See* Doc. 774, pg. 6. Consequently, at this stage in the litigation, Plaintiff's allegations against Kaleen are uncontroverted and prevent the Court from dismissing this Plaintiff. Therefore, Kaleen's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment is denied.

### b.   Motion for Protective Order to Stay Discovery

Because the Court denies Kaleen's Motion to Dismiss, its Motion for Protective Order to Stay Discovery is also denied.

## VII.    3M Company

### a.   Motion to Dismiss for Failure to State a Claim

Defendant 3M Company argues that each of Plaintiff's causes of action must be dismissed because Plaintiff failed to sufficiently allege each cause of action it asserts. Alabama, however, is a notice pleading state which merely requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." ALA. R. CIV. P. 8(a). Rule 8(a) is complied with as long as the opponent is given "fair notice of the pleader's claim and the grounds upon which it rests." *Carter v. Calhoun County Board of Education*, 345 So.2d 1351 (Ala. 1997). "The discovery process bears the burdens in the factual details." *McKelvin v. Smith*, 85 So. 3d 386, 688-89 (Ala. Civ. App. 2010). For reasons stated below, Plaintiff has met its pleading burden under Rule 8, and 3M's Motion to Dismiss is denied.

3M also argues it cannot be liable for Plaintiff's damages because, as a chemical supplier, it had no control over how its PFCs and related chemicals were used or disposed of, nor could it foresee that these products would impact Plaintiff and other entities downstream of its customers. Plaintiff's Complaint, however, alleges that 3M has known for 14 years that PFCs and related chemicals survive treatment at conventional wastewater treatment plants as evidenced by its finding of high concentrations of PFCs and related chemicals in a wastewater treatment plant a few miles downstream from one of its production facilities. Compl. at ¶ 53. Plaintiff's Response in Opposition states that 3M was aware of the contamination of public water supplies near its PFC manufacturing facility in Minnesota in the early 2000s which resulted in 3M's funding of a carbon filtration system to remove PFCs from public water systems as well as using carbon filtration to prevent further release of PFCs from its Cottage Grove, Minnesota PFC manufacturing plant through its wastewater discharge system. *See* Doc. 524, Exhibit B. Therefore, it was foreseeable to 3M that, based on its own release of PFCs through its facility's wastewater system in Oak Grove that contaminated public water systems, that other public water systems using water from areas where 3M's PFC compounds were used in large quantities could be contaminated. Not only was it foreseeable to 3M that its PFCs used in Dalton would find their way into drinking water supplies, 3M *knew* that it was likely. *See id.* Exhibit C.

### i. Plaintiff Sufficiently Pled its Negligence Claim

3M argues that Plaintiff's negligence claim fails because the complaint did not sufficiently allege that 3M owed Plaintiff a duty, that 3M's conduct was the proximate cause of Plaintiff's harm, and that no damages are recoverable. Under Alabama law, the elements of a claim for negligence are: (1) duty; (2) breach of duty; (3) proximate cause; and (4) damages. *Glass v. Birmingham Southern R.R.*, 905 So.2d 789, 794 (Ala.2004). "In determining whether a duty exists in a given situation, however, courts should consider a number of factors, including public policy, social considerations, and foreseeability. The key factor is whether the injury was foreseeable by the defendant." *Patrick v. Union State Bank*, 681 So.2d 1364, 1368 (Ala. 1996).

Foreseeability is also the cornerstone of proximate cause. *Alabama Power Company v. Taylor*, 306 So.2d 236 (1975). A defendant is held legally responsible for all consequences which a prudent and experienced person, fully acquainted with all the circumstances, at the time of his negligent act, would have thought reasonably possible to follow that act. *Prescott v. Martin,* 331 So.2d 240 (Ala.1976). This includes the negligence of others. *Williams v. Woodman*, 424 So.2d 611 (Ala.1982).

A cause is considered the proximate cause of an injury if, in the natural and probable sequence of events, and without intervention of any new or independent cause, the injury flows from the act. *City of Mobile v. Havard,* 268 So.2d 805 (Ala. 1972). To be an intervening cause, a subsequent cause also must have been unforeseeable and must have been sufficient in and of itself to have been the sole "cause in fact" of the injury. *Vines v. Plantation Motor Lodge*, 336 So.2d 1338, 1339 (Ala.1976). If an intervening cause could have reasonably been foreseen at the time the tortfeasor acted, it does not break the chain of causation between his act and the injury. *Id.*

The complaint contains numerous allegations satisfying all elements. *See* Compl. at ¶¶ 3 -5, 52, 53 and 64-66. It is clear from these complaint excerpts that Plaintiff has pled each element of a negligence claim against 3M under Alabama law. Moreover, these allegations are sufficient to notify 3M of the claim of negligence against which it must defend: manufacturing and suppling chemicals to carpet manufacturing customers located in the Dalton, Georgia to impart stain resistance to carpet that would likely result in contamination of drinking water supplies. Similarly, these allegations, if proven, leave little doubt that Plaintiff would be entitled to relief under its negligence claim. As such, it does not appear beyond a doubt that Plaintiff cannot prove any set of facts which would entitle it to relief under ALA. R. CIV. P. 12.

Finally, the Complaint sufficiently alleges recoverable damages. *See* Compl. at ¶¶ 4, 5, 62, 66, 69, 71, 76, and 78. 3M contends that Gadsden "cannot recover under its negligence claim because Plaintiff has suffered no actual loss or damage to its property." Doc. 258 at 9. 3M, however, is incorrect. The water Plaintiff draws from the Coosa River and treats to sell to its customers unquestionably is "property" as the word is commonly understood and defined. *Merriam-Webster* defines "property" as "something owned or possessed"; "the exclusive right to possess, enjoy, and dispose of a thing"; or "something to which a person or business has a legal title". Once drawn, Plaintiff owns or possesses the water that it draws and is permitted by governmental entities to treat and distribute the treated water to its customers for a fee.

### ii.  Plaintiff Sufficiently Pled its Nuisance Claim

3M challenges the adequacy of Plaintiff's nuisance claim because the complaint failed to allege either a private or public nuisance and, in either event, believes that Plaintiff fail to sufficiently allege either claim.

### 1.  Plaintiff's Allegations Sufficiently Provided Fair Notice.

Plaintiff's nuisance allegations sufficiently stated that Plaintiff's property was damaged by the Defendant's discharge of PFCs and ultimate contamination of its water source, thereby causing it "hurt, inconvenience, and harm." Compl. at ¶¶ 67-69. The levels of these toxic chemicals in Plaintiff's water caused by 3M's conduct created a condition that threatens Plaintiff's operations, and it was foreseeable that its actions would cause, and continue to cause, substantial damages. *Id.* at ¶¶ 70-71. These allegations sufficiently state a claim for nuisance. *See*, *e.g. City of Birmingham v. City of Fairfield*, 375 So.2d 438, 441 (Ala. 1979) (holding that nuisance allegation is sufficient if it gives defendant notice of what plaintiff's claim is and the grounds upon which it is based). 3M contends that Plaintiff failed to give fair notice of its

14

nuisance claim against it, but then argues extensively why Plaintiff's nuisance count fails to state claims for both public and private nuisance. Therefore, 3M's arguments belie its contention that Plaintiff has failed to give it fair notice of the grounds for its nuisance claim and fall short of warranting dismissal of Plaintiff's nuisance claim.

**2. Plaintiff Suffered "Special Damages" Compared to the General Public.**

3M then argues that Plaintiff has not stated a claim for public nuisance because it has not suffered "special damages" different in kind and degree from the damage to the general public. *See Russell Corp. v. Sullivan*, 790 So. 2d 940, 951 (Ala. 2001); Ala. Code § 6-5-123. Plaintiff has pled damages that are different, if not unique. Plaintiff is the sole supplier of public drinking water to the citizens of the City of Gadsden. Plaintiff must treat the water that it provides to comply with water quality standards through that treatment. The presence of pollutants in Plaintiff's water source dictates the nature and extent of treatment that is required. Plaintiff has alleged that, due to the presence of 3M's PFCs, it has incurred monitoring and testing costs associated with determining contaminant levels and has lost revenues and profits as a result. Compl. ¶¶ 5, 62. These damages are not suffered by the public at large, are unique to Plaintiff, and thus establish the requisite special damages required to assert a claim for public nuisance. Similar allegations were sufficient in an analogous case. *See West Morgan-East Lawrence Water and Sewer Authority v. 3M Company*, 208 F.Supp.3d 1227, 1236 (N.D. Ala. Sept. 20, 2016). Clearly, Plaintiff's damages significantly differ in kind and degree from any damages to the public generally.

Additionally, Alabama law incorporates a much broader definition of the public for purposes of a special damages inquiry, *i.e.*, "the public", the "general public," or the "public in general." *See, e.g.,* Ala. Code § 6-5-123 (1975); *City of Birmingham*, 375 So.2d at 441; *Benefield v. Int'l Paper Co.*, 2009 WL 2601425 at *3 (M.D. Ala. 2009); *Russell*, 790 So.2d at 951. Accordingly, the *Russell* court held:

> …the use and enjoyment of a public area is a public right. <u>The alleged nuisance in this case affects anyone who would want to use and enjoy Lake Martin, not just those who live on its banks</u>.

790 So.2d at 953 (emphasis added).

Applying this analysis in this case, the public is "anyone who would want to use and enjoy" the Coosa River, whether it be for recreation, transportation, industrial, or other uses. In contrast, as alleged in the complaint, Plaintiff's "special damages" are the contamination of its drinking water source, increased monitoring and testing costs associated with determining contaminant levels, lost revenues and profits, and other remediation costs to decontaminate its water. Compl. ¶¶ 5, 62. These damages are unique and different from those who merely "use and enjoy" the Coosa River.

**3. Plaintiff Sufficiently Pled a Private Nuisance.**

3M argues that any private nuisance claim must also fail because Plaintiff does not allege that it owns the Coosa River tributaries, and the effect of 3M's contamination of the Coosa River is not limited to one or a few individuals.

Plaintiff is not required to allege that it "owns" the Coosa River tributaries. As discussed above, Plaintiff has the right to remove water from the Coosa River and the water that is removed becomes the property of Plaintiff for treatment, distribution and sell to its customers. This right is unique to Plaintiff alone and is not open for the public.  Based on the information currently before the court, it appears that the effect of 3M's nuisance on public water supplies is limited to the few water systems that draw water from the Coosa River downstream of Dalton, Georgia.  Therefore, 3M's nuisance is sufficiently limited to support a private nuisance claim by Plaintiff.

### iii.   **Plaintiff Sufficiently Pled its Trespass Claim**

3M states that Plaintiff's trespass claim is due to be dismissed because Plaintiff consented to the invasion of PFCs into its water system; there was no intentional invasion on Plaintiff's property; and the complaint fails to allege substantial damage to the *res*.

Plaintiff alleged its property, including a water treatment plant, water distribution system, and offices were invaded by 3M's PFC's discharged upstream in Dalton. Compl. at ¶¶ 73-74. However, Plaintiff clearly states that it **did not** consent to this foreseeable invasion from 3M's chemicals which affected its interest in the exclusive possession of its property. *Id.* at ¶¶ 74-75. As a result, 3M should have known that the discharges upstream from Plaintiff would damage and impair Plaintiff's use of its property, including the operation of its water treatment system, until the trespass is abated. *Id.* at ¶¶ 76-78.  These allegations are sufficient to notify 3M that Plaintiff seeks damages caused by PFCs in and on its property, including the finished water provided to the public and its water processing and distribution system.

Alabama has long recognized that the discharge of pollutants at one location that then migrate onto the property of another can constitute actionable trespass. *See Borland v. Sanders Lead Co.*, 369 So.2d 523, 530 (Ala.1979) (recognizing that pollutants discharged onto a plaintiff's land causing damages constituted a trespass); *Rushing v. Hooper-McDonald, Inc.*, 300 So.2d 94, 97-98 (Ala. 1974) (upholding trespass claim when defendant dumped asphalt on own land but eventually slid downhill onto plaintiff's land killing fish in his pond).  It is not necessary that 3M intended that its pollutants be placed on and in Plaintiff's property despite 3M's intimation to the contrary.  3M is intentionally providing PFC-containing products which it knew would likely contaminate area waters which is sufficient to sustain Plaintiff's claims for nuisance and trespass claims under *Borland* and *Rushing*.  This is distinguishable from the case cited by 3M, *Antoine v. Oxmoor Preservation/One, LLC*, 130 So. 3d 1204 (Ala. Civ. App. 2012), because the defendant in *Antoine* committed no act that contributed to the alleged trespass asserted by plaintiff.

3M argues that Plaintiff consented to its causing the deposit of PFCs on and in Plaintiff's property which defeats its trespass claim and cites *Evans v. Walter Industries, Inc.,* 579 F. Supp. 2d 1349, 1370 (N.D. Ala. 2008) in support of this contention.  3M's argument is untenable

considering Plaintiff's specific allegation that it "did not consent" to the trespass (Compl. at ¶¶ 74, 75) and the fact that the plaintiffs in *Evans* failed to allege that they had not consented to defendant's trespass. Plaintiff never agreed to allow 3M to place anything on or in its property, much less harmful contaminates. This fact also distinguishes this case from *Evans* wherein it was undisputed that the plaintiffs agreed to allow the defendant to place the offending materials on plaintiffs' property. Plaintiff has never consented to 3M's trespasses as it has plainly stated in its complaint.

Finally, 3M contends that Plaintiff's trespass claims should be dismissed because Plaintiff failed to allege that "3M caused substantial damage to its property." Doc 258 at 18. Plaintiff's alleged damages include the contamination of its entire public water system with chemicals known to cause a wide range of serious human disease, including cancers. *See* Compl. at ¶¶ 51-58. Plaintiff states the extent of the contamination will require the installation and operation of an expensive filtration system to remove Defendant's chemicals. *Id.* at ¶5. Viewing these allegations in a light most favorable to the Plaintiff, the claimed damages constitute substantial damage to Plaintiff's property.

### iv. Plaintiff Sufficiently Pled its Wantonness/Punitive Damages

3M contends that Plaintiff's claim for punitive damages must also be dismissed because the complaint did not sufficiently allege that 3M consciously committed a wrongful act that caused Plaintiff's injuries. Alabama law defines wantonness as "the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007). "[I]t is not necessary that the actor know that a person is within the zone made dangerous by his conduct; it is enough that he knows that a strong possibility exists that others may rightfully come within that zone." *Id.* (quoting *Joseph v. Staggs,* 519 So.2d 952, 954 (Ala. 1988)).

Plaintiff's allegations specifically describe 3M's conscious misconduct. Compl. at ¶¶ 80-84. As a notice pleading state, this is sufficient at this stage in the litigation. Whether 3M's conduct arises to the standard to warrant punitive damages need not be decided now but is proper after discovery.

### v. Plaintiff Sufficiently Pled its Claim for Injunctive Relief

Injunctive relief is a prime remedy for claims of nuisance and trespass. *See Water Works and Sewer Bd. of the City of Birmingham v. Inland Lake Investments, LLC,* 31 So.3d 686, 691-692 (Ala. 2009). The elements required for a preliminary injunction are mostly the same as those for a permanent injunction, except the movant must only show a likelihood of success on the merits compared to actual success on the merits required for a permanent injunction. *Classroomdirect.com, LLC v. Draphix, LLC*, 992 So. 3d 692, 702 (Ala. 2008) (quoting *TFT, Inc. v. Warning Sys., Inc.*, 751 So.3d 1238, 1242 (Ala. 1999)). A preliminary injunction is warranted if a plaintiff demonstrates (1) the moving party would suffer irreparable injury without the injunction; (2) the moving party has no adequate remedy at law; (3) it has at least a reasonable chance of success on the ultimate merits of the case; and (4) the hardship imposed on the non-

movant would not unreasonably outweigh the benefit to the movant. *Holiday Isle, LLC v. Adkins*, 12 So. 3d 1173, 1176 (Ala. 2008). 3M challenges whether Plaintiff's complaint satisfies only the first three elements.

3M states the complaint does not identify the "type of irreparable injury [Plaintiff] would suffer in the absence of injunctive relief" or state facts showing that Plaintiff will likely prevail. Doc. 258 at 20. The complaint, however, states that Plaintiff seeks an injunction requiring all defendants, including 3M, to remove its chemicals from Plaintiff's water supplies and property and, if none is granted, these chemicals will pose a continuing threat to Plaintiff's property. Compl. at ¶¶ 86-87. The irreparable injury is the consistent contamination of the Coosa River posed by 3M's continual sale of PFCs to carpet manufacturers who apply and discharge contaminated wastewater that foreseeably impacts downstream users such as Plaintiff.

Also, for the reasons discussed above, Plaintiff has sufficiently pled facts supporting its claims for negligence, nuisance, trespass, and wantonness, thus demonstrating it has a reasonable chance of success on the merits of the case. As a result, Defendant's Motion to Dismiss this claim and all Plaintiff's claims is denied.

## VIII.   Lexmark Carpet Mills, Inc.

### a.   Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim.

Defendant Lexmark Carpet Mills, Inc. ("Lexmark") premises its Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim on the same arguments made by 3M. For reasons discussed above, its Motion is denied. The Court will address Lexmark's argument it lacks personal jurisdiction.

Lexmark relies upon the affidavit of its Chief Financial Officer, James Butler, to support its argument this Court lacks personal jurisdiction. *See* Doc. 247. Mr. Butler claims that he has personal knowledge that Lexmark has never used, manufactured, or discharged PFCs at its Dalton, Georgia, manufacturing facility. *See Id.*

Plaintiff countered that Lexmark's "own product warranty literature establishes that [Lexmark] manufacturers a number of different stain-resistant products… At least some of these products impart stain-resistance through the use of Scotchgard, a 3M product that contained PFOS as a key ingredient until June 2003 when it was reformulated." Doc. 504 at 9-10. Plaintiff also claims Mr. Butler's affidavit only addresses "two of many PFCs (PFOA and PFOS), and as such fails to address whether [Lexmark] used, manufactured, or discharged chemicals that could degrade or decay into PFC-type chemicals such as PFOA or PFOS." *Id.* at 10. Plaintiff emphasizes that its allegations are not limited to PFOA and PFOS but also includes "related chemicals." Compl. ¶ 1.

At this stage in the litigation and viewing the allegations in a light most favorable to Plaintiff, Mr. Butler's affidavit does not conclusively establish that Lexmark did not engage in

the alleged conduct that harmed Plaintiff. Discovery is necessary to determine this issue. Consequently, its Motion to Dismiss is denied.

### a. Motion for Protective Order to Stay Discovery

Because the Court denies Lexmark's Motion to Dismiss, its Motion for Protective Order to Stay Discovery is also denied.

## IX. Harcros Chemical, Inc.

### a. Motion to Dismiss for Failure to State a Claim or, in the Alternative, Motion for a More Definite Statement

Defendant Harcros Chemical, Inc. ("Harcros") incorporates 3M and Lexmark Carpet Mills Inc.'s Motion to Dismiss for Failure to State a Claim. For the same reasons discussed above, Harcros' Motion is denied.

Harcros is the only Defendant to move the court to order Plaintiff to provide a more definite statement of the claims against Harcros pursuant to ALA. R. CIV. P. 12(e). Rule 12(e) provides that a party may move for a more definite statement if a pleading requiring a response "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." "The motion shall point out the defects complained of and the details asserted." *Id.*

Plaintiff's complaint satisfies the low notice pleading standard of Rule 8. It alleges that Harcros is an "owner and operator of, or the chemical supplier to, manufacturing facilities in Dalton, Georgia which utilize various PFCs and their precursors in the manufacturing process." Compl. at ¶ 49. These facilities are upstream of Plaintiff's water intake site and foreseeably contaminated Plaintiff's water supply. *Id* at ¶ 3. Plaintiff further alleges that Harcros continued to sell PFCs and related chemicals to these carpet manufacturers despite knowing of the chemicals' toxicity and ability to resist treatment by Dalton Utilities. Contrary to Harcros' statement, the complaint identifies Defendant's wrongful conduct, specifies to whom it sold its chemicals, and states the chemicals it discharged that injured Plaintiff. These allegations are sufficient at this stage in the litigation under Alabama's notice pleadings standard, so Harcros's motion under Rule 12(e) is also denied.

## X. Indian Summer Carpet Mills, Inc.

### a. Motion to Dismiss for Lack of Personal Jurisdiction, Failure to State a Claim and Improper Venue or, in the Alternative, Motion for Summary Judgment.

Defendant Indian Summer Carpet Mills, Inc. ("ISCM") seeks dismissal on several grounds. For reasons stated above in 3M's section, its Motion to Dismiss for Failure to State a Claim is denied.

#### i. Motion to Dismiss for Lack of Personal Jurisdiction and Motion for Summary Judgment.

ISCM bases its Motion to Dismiss for Lack of Personal Jurisdiction and Motion for Summary Judgment on an affidavit submitted by its President Randall Hatch it argues proves it did not engage in any conduct causing Plaintiff's damages. Mr. Hatch states that ISCM "has never used chemicals containing PFOA or PFOS in its manufacturing process" and, since 2004, any "topical stain-resistant chemicals…were applied by mills Indian Summer hired to perform the finishing process on its carpets." Doc. 654 at ¶ 3. The specific chemicals applied are of "C6 chemistry" which allegedly "do not contain or degrade into PFOS or PFOA." *Id.* Mr. Hatch also states the "solution-dyeing" manufacturing process currently used by ISCM generates no wastewater. *Id.* at ¶ 4. Consequently, ISCM argues it is not responsible for Plaintiff's damages.

As Plaintiff points out, however, Mr. Hatch's affidavit fails to conclusively establish that ISCM did not engage in the conduct forming the basis of this lawsuit. First, the affidavit describes ISCM's current manufacturing process involves "solution dyeing" which it claims generates no wastewater. *Id.* Importantly, the affidavit does not state that ISCM has always used this manufacturing process and, as a result, never discharged any wastewater. As stated in the complaint, PFCs and related chemicals persist in the environment for years making any past application and discharge of these chemicals pertinent to this action. Compl. ¶¶ 1, 50.

Also, ISCM can be liable for the acts committed other companies (i.e. finishers) it used to apply PFCs that, although may not degrade into PFOA or PFOS, still have similar stain-resistant qualities. Mr. Hatch specifically states that, since 2004, ISCM has hired finishers to treat its carpets with topical stain-resistant chemicals consisting of "C6 chemistry." *Id.* at ¶ 3. Although Mr. Hatch states that C6 chemicals do not contain or degrade into PFOS or PFOA, Plaintiff states that C6 chemicals have similar stain-resistant qualities and fail to degrade in the environment. *See* Doc. 776, Ex. B. C6 (also known as perfluorohexane sulfonate, Phis or perfluorohexanoic acid, Phal) is one of the PFCs being studied by the National Toxicology Program, *id.* at 2, and was measured in surface waters and sediments below Dalton Utilities' land application site. *See* Doc 776, Ex. D and Ex. E. Therefore, ISCM's statement that its finishers use C6 instead of PFOS or PFOA does not necessarily rule out that it used any of the other 146 PFCs or 469 fluorochemicals that have been identified as potentially able to degrade into other PFCAs. *See* Exhibit A. Plaintiff's complaint states that its injury was caused by water contaminated with PFC, including PFOS, PFOA and **related chemicals**. Compl. at ¶¶ 1, 46, 47, 50, 51, 64, 69, 76, 80. Mr. Hatch's affidavit fails to state that ISCM was not involved, in any way, in the selection or application of PFC or related chemicals such as C6 in the finishing process or otherwise exercised control over the discharge of those chemicals.

ISCM's use of finishers to apply PFCs such as C6 does not relieve it of liability. A manufacturer's duty is not limited to only those parts of a product that the manufacturer makes itself. It has long been recognized in Alabama that a manufacturer who uses component parts in manufacturing or assembling a product for sale as a complete unit may be liable under appropriate circumstances where the defect is in a component part. *See*, *Casrell v. Altec Industries, Inc.*, 335 So.2d 128, 134 (Ala. 1976); *Atkins v. American Motors Corp.*, 335 So.2d 134 (Ala.1976). A manufacturer can also be liable for its negligence in designating the components or providing specifications to be incorporated into its products by third parties. *See*

*e.g., Hicks v. Vulcan Eng. Co.,* 749 So.2d 417 (Ala. 1999).  Like these cases, ISCM cannot escape liability even if another entity, such as a finisher, applied the PFCs.

In sum, Mr. Hatch's affidavit does not conclusively establish it did not engage in the activities resulting in Plaintiff's damages, thereby leaving a genuine issue of material fact. Therefore, ISCM's Motions to Dismiss and for Summary Judgment are denied.

### ii.  Motion to Dismiss for Forum Non Conveniens and Improper Venue.

Finally, ISCM challenges venue and, in the event this Court finds venue is proper, seeks dismissal for forum non conveniens under Ala. Code § 6-3-7(a).  Venue is proper under ALA. CODE §§ 6-3-7(a)(3) because Plaintiff's principal office is in Etowah County and, although ISMC states it does not do business by agent in Etowah County, other named Defendants in this action do which is sufficient for venue to be proper.  *See Roland Pugh Min. Co. v. Smith*, 388 So.2d 977, 978-89 (Ala. 1980) (holding venue was proper for one defendant and, as a result, was proper to the other defendants which did not do business in the challenged venue).  The Court in *Roland Pugh Min. Co.* specifically noted that "[u]nder ARCP 82(c), '(w)henever an action has been commenced in a proper county, additional claims and parties may be joined, … as ancillary thereto, **without regard to whether that county would be proper venue** for an independent action on such claims or against such parties.'" *Id* (emphasis added).  Therefore, Etowah County is the proper venue if it is proper regarding one defendant.

Based on available information, venue is, at the very least, proper to Shaw Industries, Inc. and the Mohawk Defendants (Mohawk Industries, Inc. and Mohawk Carpet, LLC).  Proof of a registered agent in a county "is not a prerequisite to a finding that the corporation is doing business in that county." *Ex parte Reliance Ins. Co.*, 484 So.2d 414, 418 (Ala. 1986).  Instead, venue is proper over a foreign corporation qualified to do business in Alabama if that corporation conducts "some of the business functions for which it was created." *Id.* at 417 (quoting *Ex parte Jim Skinner Ford, Inc.*, 435 So.2d 1235, 1237 (Ala. 1983)).  One of these business functions includes engaging in the sale of its products. *See Ex parte Cavalier Home Builders, LLC*, 920 So.2d 1105, 1109-10 (Ala. 2005).  Shaw Industries, Inc.'s website shows four different retailers sell its products within 15 miles[15] of Gadsden while the Mohawk Defendants have one retailer.[16] Therefore, venue is proper to both Shaw Industries, Inc. and the Mohawk Defendants because they do business in Etowah County which, in turn, means venue is proper as to all other Defendants, including ISCM.

The Court finds that, for reasons stated above in Section V(a)(ii), ISMC's motion to dismiss for forum non conveniens is also denied.

---

[15] See https://shawfloors.com/stores. Counsel for Plaintiff used the zip code for the Etowah County Courthouse (35901) in the search. Lowe's Home Improvement, Alley's Floor & Wall Covering, Foote Brothers Carpet One, and Knights Flooring.

[16] https://www.mohawkflooring.com/find-mohawk-retail-store?zip=35901. Alleys Carpet of Gadsden.

### b. Motion for Protective Order to Stay Discovery

Because the Court denies ISCM's dispositive motions, its Motion for Protective Order to Stay Discovery is also denied.

## XI.    ECMH, LLC d/b/a Clayton Miller and Emerald Carpets, Inc.

### a. Motion for Summary Judgment

Defendant ECMH, LLC d/b/a Clayton Miller and Emerald Carpets, Inc. (collectively, "ECMH") move for summary judgment on the basis that they did not engage in any conduct that contaminated Plaintiff's drinking water supply.  In support ECMH submitted the affidavits of Tom Boykin (Business Unit Manager for Emerald Carpets) and Hugh McCain (President of Clayton Miller) and contend the undisputed facts show that they do not manufacture carpet, have never applied PFCs or related chemicals to their carpets, and have never discharged any chemicals. *See* Docs. 171 and 172.

Plaintiff contends that ECMH does not dispute that carpet it manufactured and sold was treated with PFCs to impart stain resistance – only that *they* did not apply these chemicals. Plaintiff asserts this evidence does not establish that PFCs were not applied by other companies at ECMH's direction, with their knowledge or that they did not specify the type of chemical treatment to be used on its carpets during the finishing process. Both affidavits state that "any chemicals that are applied to carpets sold by Clayton Miller and Emerald Carpets are made and applied by other companies." (Doc. 171 at ¶ 6; Doc. 172 at ¶ 5).  In other words, ECMH utilizes other companies known as finishers that could apply PFC and other related chemicals to impart stain-resistance to their carpets.

As explained above in Section X(a)(i) regarding ISCM, this does not necessarily absolve ECMH from liability for Plaintiff's damages because it does not establish the absence of a genuine issue of material fact as to whether they are responsible for causing or allowing the discharge of PFCs into Coosa River tributaries by the entities they retained to apply these chemicals to its carpet in the Dalton, Georgia area.  Further discovery on this issue is warranted before this Court can determine no genuine issue of material fact exists.  Consequently, ECMH's Motion for Summary Judgment is denied.

## XII.   Mohawk Industries, Inc. and Mohawk Carpet, LLC (collectively, "Mohawk")

### a. Motion for Judgment on the Pleadings

Mohawk's dispositive motion argues this Court does not have personal jurisdiction and, even if it did, the complaint should be dismissed for failure to state a claim.  Notably, unlike most of the other Defendants, Mohawk did not submit an affidavit refuting the allegations in the complaint. Therefore, Plaintiff's allegations must be accepted as true.  *See Corporate Waste Alternatives, Inc.*, 896 So. 2d at 413.  Mohawk utilizes PFC-related chemicals and their precursors in its manufacturing process to impart stain-resistant qualities to their carpet.  Compl. at ¶ 47. Because of applying these chemicals, Mohawk discharges industrial wastewater

containing these chemicals to the City of Dalton's wastewater treatment system before it is land-applied to a spray field. *Id.* This spray field is bordered by a tributary of the Coosa River, which allows runoff contaminated with PFCs to pollute Plaintiff's water source upstream of its intake site. *Id.* at ¶¶ 48-49.

Plaintiff states that Mohawk's discovery responses, answered by their affiliate Aladdin Manufacturing Corporation ("AMC")[17], support its allegations in the complaint. Specifically, in response to Plaintiff's First Set of Interrogatories, Mohawk admitted to using "Raw Materials [that] may contain PFCs that may degrade into PFOA and/or PFOS and may have been used in the manufacturing processes for various carpet and flooring products at certain AMC manufacturing facilities in Whitfield County, Georgia." Doc. 762, Ex. C., p. 7. Mohawk then listed eleven different "Raw Materials" (i.e. "material that is used to produce goods or finished products") used in their manufacturing process and identified three manufacturing facilities in Dalton, Georgia that may have used these Raw Materials. *Id.* at 7-9. Mohawk stated that each of these facilities pretreated the wastewater generated at these facilities to remove particulates and adjust the pH level before discharging to the Dalton Utilities. *Id.* at 10-11. Mohawk identified two other manufacturing facilities located outside Whitfield County in Calhoun, Georgia that discharge either directly into the environment or to a wastewater treatment plant that discharges into the Coosa River. *Id.* at 11-12. Now, it is unknown whether these facilities use Raw Materials that may contain PFCs or degrade into such chemicals and discharge wastewater contaminated with these chemicals into the Conasauga or Coosa Rivers. Based on both the uncontroverted allegations in the complaint as well as Mohawk's responses to Plaintiff's discovery, Mohawk engaged in the conduct Plaintiff alleges caused its damages.

Moreover, it is fair for Mohawk to litigate in Alabama because its business activities were purposefully aimed at Alabama residents. "[P]lacement of a product into the stream of commerce 'may bolster an affiliation germane to specific jurisdiction.'" *Daimler AG v. Bauman,* 134 S. Ct. 746, 757 (2014) (quoting *Goodyear* 564 U.S. at 926). Mohawk advertises, markets, distributes, and sells their products throughout the world and Alabama. Although Mohawk considers the applicable fora for each entity are Delaware and Georgia, they have significant connections to the State of Alabama. Mohawk Carpet, LLC is a subsidiary of Mohawk Industries, Inc. Mohawk Industries, Inc. employs 37,800 and maintains manufacturing operations in 15 nations and sales distribution across more than 160 countries. *See* Doc. 762, Ex. G, pg. 6. As of December 31, 2016, it owns a manufacturing and distribution facility in Florence, Alabama and a manufacturing facility in Roanoke, Alabama. *Id.* at Mohawk Form 10-K, p. 13. Mohawk Industries, Inc.'s website currently shows job listings for 22 different positions in Alabama, with 10 positions available at a location in Bridgeport, Alabama.[18] The website also lists retailers selling its carpet and flooring products in more than 70 cities in Alabama.[19] In addition to the foreseeable conduct aimed at Alabama residents discussed above, these purposeful contacts with Alabama bolster Mohawk's affiliations with the State.

---

[17] Plaintiff notes that Mohawk's affiliate Aladdin Manufacturing Corporation ("AMC") responded to discovery on their behalf. The Court finds that discovery against Mohawk is necessary to determine their association with AMC and their liability in this case and will construe AMC's responses as pertaining to the Mohawk Defendants.

[18] https://mohawkindustries.jobs/jobs/?location=alabama.

[19] https://www.mohawkflooring.com/flooring-carpet-stores/AL.

Therefore, for these reasons and those stated above in Section I, this Court has personal jurisdiction over Mohawk and its Motion to Dismiss is denied.  In addition, Mohawk's Judgment on the Pleadings for failure to state a claim is denied for reasons stated above in Section VII addressing similar arguments raised by 3M.

## XIII.   Oriental Weavers USA, Inc.

### a.   Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim.

Defendant Oriental Weavers USA, Inc. ("Oriental Weavers") seeks dismissal for lack of personal jurisdiction, claims Etowah County is an improper venue, and argues the complaint's allegations are insufficient to state a claim.  For reasons stated above, Oriental Weaver's Motion to Dismiss for improper venue and failure to state a claim are denied.  The court will address Oriental Weaver's argument regarding lack of personal jurisdiction.

Oriental Weaver's submitted three affidavits in support of its argument the Court lacks personal jurisdiction. *See* Doc. 162.  Its CFO, Darrel V. McCay, states that Oriental Weavers is incorporated in Georgia and maintains its principal place of business there, including its two manufacturing facilities and distribution facilities.  *Id.*, Ex. B at ¶¶ 4-5.  David Flood, who holds the position of Masterbatch Manager, states that Oriental Weavers "does not apply any stain-resistant, grease-resistant, or water-resistant chemicals to its area rugs at any point during the manufacturing process" and has not since after January 1, 2009. *Id.*, Ex. A at ¶¶ 5, 7.  Mr. Flood then attests that Defendant's chemical supplier, Phoenix Chemical, Inc. does not supply Defendant with products that contain PFCs.  *Id.* at ¶ 6.  Phoenix Chemical's Vice President, Mr. Todd Mull, also submitted an affidavit stating that the chemicals his company sells to Defendant do not contain PFCs such as PFOA and PFOS. *Id.*, Ex. C at ¶¶ 4-6.  Oriental Weavers argues these affidavits conclusively establish that it did not engage in the activities giving rise to this lawsuit and venue is improper in Etowah County.

Plaintiff claims these affidavits collectively do not specifically refute the complaint's allegations that Oriental Weavers is liable for Plaintiff's damages.  First, Mr. Flood states that Oriental Weavers does not use, and has not used, any stain-resistant, grease-resistant, or water-resistant chemicals after January 1, 2009. Ex. A at ¶ 7.  Importantly, the affidavit does not say that it "never" engaged in these activities prior to January 1, 2009.  Mr. Mull's affidavit also fails to confirm that Phoenix Chemical did not supply these chemicals prior to this date, nor can it because his affidavit, which is based on his personal knowledge alone, does not clarify how long he has been with the company. As stated in the complaint, PFCs and related chemicals persist in the environment for years making any past application and discharge of these chemicals pertinent to this action.  Compl. ¶ 50.

Plaintiff also claims that Mr. Flood's affidavit fails to definitively state whether it hired other companies to apply PFCs and related chemicals to Oriental Weaver's rugs and discharged contaminated wastewater generated from that application.  Although Mr. Flood mentions that he is familiar with all stages of the manufacturing process, *see* Ex. A. at ¶ 4, the following paragraphs pertain only to Oriental Weaver's alleged nonuse of PFCs and related chemicals.

Therefore, the affidavit fails to establish that PFCs were not applied by other companies at Oriental Weaver's direction, with its knowledge, or that it did not specify the type of chemical treatment to be used on its carpets during the finishing process. As explained above, this does not absolve Defendant from liability for Plaintiff's damages. Therefore, Oriental Weaver's Motion to Dismiss for Lack of Personal Jurisdiction is denied.

### a. Motion for Protective Order to Stay Discovery

Because the Court denies Oriental Weaver's dispositive motion, its Motion for Protective Order to Stay Discovery is also denied.

### XIV. Savannah Mills Group, LLC

### a. Motion to Dismiss for Lack of Personal Jurisdiction, Failure to State a Claim, and Summary Judgment.

Defendant Savannah Mills Group, LLC ("SMG") seeks dismissal or, alternatively, summary judgment because it did not contribute to the pollution of Plaintiff's drinking water. In support, it submitted multiple affidavits from its Managing Member B.J. Bandy, III stating that SMG has never manufactured carpets or rugs, purchases only finished products for distribution, has never utilized or supplied PFCs or related chemicals in the carpet manufacturing process, has never discharged any chemicals from the manufacturing process into any water supply, and has never ordered, requested directed, or specified that any particular treatment be applied to rugs it received and sold. *See* Docs. 205 and 738. Mr. Bandy's original affidavit also attests to SMG's lack of contacts with Alabama.

The Court finds that SMG has met its burden that it did not engage in the alleged conduct that contaminated Plaintiff's drinking water. Therefore, its Motion to Dismiss is granted, without prejudice, with each party to bear its own costs. The Court also notes that Plaintiff agreed to dismiss SMG in the companion case *The Water Works and Sewer Board of the Town of Centre v. 3M Company, Inc. et al.*, Case No. 13-CV-2017-900049.00.

### b. Motion for Protective Order to Stay Discovery

SMG's Motion for Protective Order is now moot given the Court granted its Motion to Dismiss and, Alternatively, Motion for Summary Judgment.

### XV. Tandus Centiva US, LLC

### a. Motion for Judgment on the Pleadings or, Alternatively, Motion for Summary Judgment

Defendant Tandus Centiva, US, LLC ("Tandus Centiva") seeks dismissal for lack of personal jurisdiction and failure to state a claim. Like SMG, it submitted an original and supplemental affidavit from its President Leonard F. Ferro stating that Tandus Centiva has never manufactured carpet or flooring products, has never purchased PFCs and related chemicals, has

never utilized or supplied these chemicals, has never discharge wastewater containing these chemicals, and it has never directed any other entity to use or apply these chemicals to flooring materials it markets and distributes. *See* Docs. 283 and 688.

A motion for summary judgment will be granted if the evidence shows "there is no genuine issue as to any material fact" and the movant "is entitled to a judgment as a matter of law." ALA. R. CIV. P. 56(c)(3). The Court finds that Tandus Centiva has met its burden that it did not engage in the alleged conduct that contaminated Plaintiff's drinking water. Therefore, its Motion to Dismiss is granted, without prejudice, with each party to bear its own costs.

### b. Motion for Protective Order to Stay Discovery

Tandus Centiva's Motion for Protective Order is now moot given the Court granted its Motion for Judgment on the Pleadings or, Alternatively, Motion for Summary Judgment.

## XVI. Daltonian Flooring, Inc.

### a. Motion for Summary Judgment

Like SMG and Tandus Centiva, Defendant Daltonian Flooring, Inc. ("Daltonian") moves for summary judgment on the basis that it has not engaged in the conduct alleged by Plaintiff in the complaint. This is based on the affidavits of its Chief Financial Officer and Controller, which made substantially the same statements as those made by the affiants for SMG and Tandus Centiva. *See* Docs. 239 and 725.

As a result, the Court finds that there is no genuine issue of material fact and Daltonian "is entitled to a judgment as a matter of law." ALA. R. CIV. P. 56(c)(3). Therefore, its Motion for Summary Judgment is granted with each party to bear its own costs.

## XVII. Dystar, LP

### a. Motion to Dismiss for Lack of Personal and Subject Matter Jurisdiction

Defendant Dystar, LP ("Dystar") moves to dismiss arguing that it has never manufactured or produced stain, grease, or water-resistant chemicals such as PFCs or related chemicals at its plant in Dalton and has never sold, shipped, delivered, or supplied these chemicals to any facilities in Whitfield County, Georgia. *See* Affidavits of Chief Financial Officer Steve Hennen, Docs. 388 and 662.[20]

The Court finds that Dystar has met its burden that it did not engage in the alleged conduct that contaminated Plaintiff's drinking water and its Motion to Dismiss is granted, without prejudice, with each party to bear their own costs.

---

[20] Although Mr. Hennen's Supplemental Affidavit was filed with its Reply Brief in the similar case filed in Cherokee County (*The Water Works and Sewer Board of the Town of Centre v. 3M Company, Inc. et al.*, Case No. 13-CV-2017-900049.00.) the facts stated therein are applicable to this case.

**b. Motion for Protective Order to Stay Discovery**

Dystar's Motion for Protective Order is now moot given the Court granted its Motion to Dismiss.

**DONE this the 13th day of August 2018.**


/s/ *William H. Rhea, III*
CIRCUIT JUDGE


Processed by:  Sue Hall