IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| FEDERAL INSURANCE COMPANY, PACIFIC EMPLOYERS INSURANCE COMPANY, ACE AMERICAN INSURANCE COMPANY, ACE PROPERTY AND CASUALTY INSURANCE COMPANY, INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, and WESTCHESTER FIRE INSURANCE COMPANY,<br><br>        Plaintiffs,<br>  v.<br><br>SHAW INDUSTRIES, INC.,<br><br>        Defendant<br><br>and<br><br>COMMERCE & INDUSTRY INSURANCE COMPANY; FIREMAN'S FUND INSURANCE COMPANY; FIRST STATE INSURANCE COMPANY; EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY; GREAT AMERICAN INSURANCE COMPANY; U.S. FIRE INSURANCE COMPANY; TRAVELERS CASUALTY AND SURETY COMPANY; WESTPORT INSURANCE CORPORATION f/k/a PURITAN INSURANCE COMPANY; JOHN DOE INSURERS 1-100;<br><br>        Nominal Defendants. | CIVIL ACTION NO. 1:23-cv-01367-RDP |

### **DEFENDANT SHAW INDUSTRIES, INC.'S REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE UNDER 28. U.S.C. § 1404(a)**

In support of its Motion to Transfer Venue under 28 U.S.C. § 1404(a) to the United States District Court for the Northern District of Georgia, Defendant Shaw Industries, Inc. ("Shaw") files the below Reply, showing the Court as follows:

**INTRODUCTION**

This is an insurance contract dispute governed by Georgia law relating to the alleged use and disposal of PFAS in Georgia. None of the parties reside in Alabama and no relevant witnesses have been identified in Alabama. Transfer under Section 1404(a) is entirely appropriate here where the key witnesses, operative facts, documents, and parties all reside outside of Alabama. For the reasons stated in Shaw's motion and this reply, this matter should be transferred to the Northern District of Georgia.

**ARGUMENT**

A. **Transfer under Section 1404(a) does not require that venue in this Court be improper.**

Plaintiffs' Opposition begins with a red herring. Plaintiffs devote several pages of their Opposition to contend that the Northern District of Alabama is a proper venue for this action. But transfer under Section 1404(a) does not require that venue in the transferring court be improper. Indeed, the opposite is true: transfer under Section 1404(a) requires that venue be proper in the transferring court. *See* 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3841 (4th ed. 2021) (explaining that under Section 1404(a), venue must be proper in ***both*** the transferor and transferee courts).

Plaintiffs are thus incorrect when they contend that Shaw's Motion implicitly claims that there is only one proper forum. Shaw has never made this claim and its request to transfer under Section 1404(a) presupposes that venue in this Court is proper. Shaw's request to transfer is instead based on the convenience of witnesses and interests of justice which strongly support a transfer to the Northern District of Georgia.

Similarly misplaced is Plaintiffs' reliance on the Circuit Court of Etowah County's jurisdictional decision in the underlying *City of Gadsden* lawsuit. Even a cursory review of that decision

2

reveals that it has no bearing here. While Plaintiffs attempt to bootstrap their argument by citing the *City of Gadsden*, that action involved different parties (with an Alabama municipal water authority as plaintiff) and different legal and factual issues (including the nature and amount of damages suffered by the plaintiff in Alabama). But more importantly, the Circuit Court of Etowah County never even considered a request to transfer. Instead, the Circuit Court's analysis was limited to whether personal jurisdiction existed over Shaw—an issue that Shaw has not contested here—and whether the action should be dismissed under Ala. Code § 6-5-430. *See* (Doc. 72-1, pp 10-11). The Circuit Court of Etowah County's application of different legal standards to different facts provides no support for Plaintiffs' arguments here.

**B.    The venue factors set forth by the Eleventh Circuit in *Manuel* support transfer.**

The parties agree that this Court's analysis is guided by the nine factors set forth by the Eleventh Circuit in *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).[1] *See* (Doc. 63, p. 3; Doc. 72, p. 6). As explained below, those factors weigh in favor of transfer.

    1.    <u>The convenience and availability of witnesses favor transfer to the Northern District of Georgia</u>.

To attack Shaw's position on the convenience of the witnesses, Plaintiffs argue that the Northern District of Georgia is only nominally closer and more convenient than the Northern District of Alabama. *See* (Doc. 72, p. 11). This argument, based on the straight-line distances between certain locations, is flawed.

---

[1] The nine factors to be balanced are: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Id.*

To begin, Plaintiffs confuse where the action within the Northern District of Georgia would be held. Shaw is in Whitfield County, which lies in the Rome Division.[2] From Dalton, Georgia, the courthouse in Rome, Georgia is less than 40 miles. Whether or not judges in the Northern District of Georgia mainly sit at the Atlanta Division, all court proceedings would occur at the Rome Division's federal courthouse. Further, traveling from Dalton to Anniston would require the witnesses to travel directly past the Rome courthouse. There is no question that it would be both inconvenient and inefficient to require witnesses to travel more than double the distance and drive past a clearly more convenient venue just to meet the venue of Plaintiffs' fancy.

In any event, the crux of the analysis is not straight-line distances, but the convenience of the key witnesses. *See Chambers v. Merrill Lynch & Co.,* 2010 WL 11565361, at *4 (N.D. Ala. Sep. 3, 2010) ("[I]n determining convenience, the question is who are the 'key witnesses'"); (Doc. 63, pp. 4-5). Georgia is more convenient because the key witnesses are located there. As discussed in Shaw's Motion, the operative facts in this declaratory judgment action relate to the insurance policies delivered in Georgia and the alleged use and disposal of PFAS in an and around Dalton, Georgia. *See* (Doc. 61-4., ¶¶ 29-45). The witnesses to these actions—including the non-party witnesses employed by Dalton Utilities and other waste authorities—are in Georgia. Shaw's alleged use of PFAS and the disposal of wastewater and other waste likewise occurred within the Northern District of Georgia. Though the alleged contamination may have flowed into Alabama, no operative decisions were made there. *See* (Doc. 63-1, Whitmire Decl., ¶¶ 6-8).

Plaintiffs contend that there may also be Alabama witnesses, but do not explain how their testimony may be relevant to this insurance coverage action. *See* (Doc. 72, pp. 11-14). In any

---

[2] *See* [https://www.gand.uscourts.gov/court-info#:~:text=The%20Northern%20District%20of%20Georgia,%2C%20Gainesville%2C%20Newnan%20and%20Rome](https://www.gand.uscourts.gov/court-info#:~:text=The%20Northern%20District%20of%20Georgia,%2C%20Gainesville%2C%20Newnan%20and%20Rome).

4

event, it is the key witnesses that matter. *Chambers*, 2010 WL 11565361, at *4. The critical issues here relate to the interpretation of the Georgia insurance policies and Shaw's use and disposal of PFAS, not the downstream damage. While the alleged damage caused downstream may have been important in the underlying actions, it has little bearing on the issues of insurance coverage.[3] The key witnesses on those issues are those that took part in the placement of the insurance policies or the use and disposal of PFAS. Plaintiffs do not dispute that all such witnesses reside in Georgia. And while Plaintiffs downplay the distance between Dalton, Georgia and Anniston, the absolute distances are less important than the relative convenience of the transferee court. *See Hutchens v. Bill Heard Chevrolet Co.,* 928 F. Supp. 1089, 1091 (M.D. Ala. 1996) (finding transfer from the Middle District of Alabama to the Middle District of Georgia proper even though the federal courthouse in Opelika was less than 30 miles from the transferee courthouse in Columbus, Georgia).

On the ability to compel attendance factor, Georgia again outweighs Alabama. Plaintiff mistakes the sliding scale that the transfer of venue analysis sits on to a black and white analysis by arguing that as long as the Northern District of Alabama court can compel attendance of witnesses then this factor weighs against transfer. Plaintiffs' position ignores the convenience of the witnesses and also fails to recognize that Federal Rule of Civil Procedure 45(c) makes it easier to compel attendance when the court sits in the same state where the witness resides. Hauling key witnesses across state lines for no reason other than Plaintiffs' choice of venue is both inconvenient and unnecessary.

---

[3] It should also be noted that downstream damage is also alleged by underlying plaintiffs in Georgia. One of the two pending underlying lawsuits is filed in the Northern District of Georgia (*see* Doc. 65, ¶ 69) and one of the three settled underlying lawsuits was filed in Superior Court of Floyd County, Georgia (*see* Doc. 65, ¶ 51).

5

2. <u>The physical documents and sources of proof are in Georgia</u>.

Plaintiffs argue that electronic discovery renders the Eleventh Circuit's second factor meaningless. (Doc. 72, pp. 14-15). Similar arguments were put forth in the cases cited by Shaw in its Motion, and those courts still found that the second factor favored transfer. (Doc. 63, pp. 5-6). While most documents can be digitized and this factor may not weigh as heavily as the convenience of the witnesses, Plaintiffs do not dispute that the primary relevant documents to this dispute are in Georgia and likely date back many decades. The existence of such physical records in Georgia favors transfer.

In addition, both Shaw's manufacturing facilities and the non-party waste disposal facilities are in the Northern District of Georgia. *See* (Doc. 61-4, ¶¶ 39-45, 48). The ease of an on-site inspection of the facility at issue may be an important consideration in weighing a motion to transfer venue. *See Koehring Co. v. Hyde Constr. Co.*, 324 F.2d 295, 296 (5th Cir. 1963); *see also Yes Lighting, LLC v. PSG Energy Grp., LLC*, 2019 WL 13225114, at *3 (S.D. Fla. Sept. 19, 2019) (same holding).

3. <u>Plaintiffs concede they will suffer no inconvenience if this action is transferred</u>.

For the third factor, Plaintiffs argue that all the parties here are big enough to litigate anywhere. (Doc. 72, p. 16). This argument misses the point. Shaw has stated a clear case for transfer because the Northern District of Georgia would be more convenient. By arguing that they can litigate anywhere, Plaintiffs concede that litigating in the Northern District of Georgia is equally convenient for them. Because the Northern District of Georgia is more convenient for Shaw and no less convenient for any plaintiff, this factor favors transfer to the Northern District of Georgia.[4]

---

[4] Plaintiffs' contention that the Circuit Court of Etowah County rejected Shaw's arguments on the respective convenience to the parties is incorrect. The Circuit Court was never tasked with weighing the convenience of any party. Instead, it analyzed the existence of general and specific

6

4. <u>The locus of operative facts is in Georgia</u>.

Despite Plaintiffs' best efforts, there can be no serious dispute that the locus of operative facts in this insurance coverage dispute is in Georgia. As an initial matter, Plaintiffs' arguments disregard the nature of this action—an insurance dispute. As a contract action, the locus of operative facts is naturally where the contract was entered: "[i]n determining the locus of operative facts in this case, it is clear that California, the place where the Policy was applied for, purchased, and delivered, is the locus of operative facts." *Royal Ins. Co. of Am. v. Tower Recs., Inc.*, 2002 WL 31385815, at *4 (S.D.N.Y. Oct. 22, 2002). Here, the insurance policies were all delivered, received, and accepted by Shaw in Georgia. *See* Whitmire Declaration, ¶ 10.

Nor is this case like Plaintiffs' cited case of *Admiral Ins. Co. v. Dual Trucking, Inc.* in which the only relationship with Louisiana was the place of contracting. 2020 WL 2526952, at *8 (E.D. La. May 18, 2020) (finding transfer under Section 1404(a) to Montana was appropriate where that was the location of the insured's operations and alleged release of contaminants). Here, Shaw's relevant operations and alleged release of PFAS ***also*** took place in Georgia. *See* (Doc. 65, ¶ 48). As a result, all of the operative facts underlying the insurance dispute—along with the facts relating to the insurance contract itself—are in Georgia.

Plaintiffs can point only to the harm allegedly caused in Alabama as evidence for why the action should remain here. *See* (Doc. 72, p. 14). This argument ignores that the same harm is alleged to have occurred in Georgia and the underlying lawsuits—both settled and pending— also exist in Georgia. *See* (Doc. 65, ¶¶ 47, 51). More importantly, however, Plaintiffs' argument fails to recognize that the facts relevant to this insurance coverage dispute are not where the alleged

---

jurisdiction and whether dismissal was warranted on *forum non conveniens* grounds. And it certainly never had reason to consider the convenience of out-of-state insurance companies because none were parties to the underlying *City of Gadsden* lawsuit.

damage resulted, but rather Shaw's use and disposal of PFAS. *See* (Doc. 65, ¶¶ 29-45). It is undisputed that the use and disposal of PFAS all occurred in and around Shaw's facilities in Dalton, Georgia. *See* (Doc. 65, ¶ 48). The existence of coverage under the policies will be based on the actions taken in Georgia, not based on the harm allegedly caused downstream.[5]

     5.    <u>The Northern District of Georgia will be more familiar with the law governing this dispute</u>.

Plaintiffs concede that Georgia law applies to this insurance dispute. *See* (Doc. 72, p. 15). Still, Plaintiffs contend—without authority—that the seventh factor does not favor transfer because Shaw has not identified a specific conflict of law that necessitates application of Georgia's law over Alabama's. *Id.* at 17-18. Plaintiffs' argument has it backwards. It is impossible for the parties or the Court to predict every legal issue which may arise in this expansive insurance coverage litigation or where Georgia and Alabama law may conflict. Such an exercise at this stage of the litigation would be an inefficient waste of resources. Indeed, part of the reason that transfer is favored in this circumstance is so that courts are not tasked with unnecessary conflicts of laws analyses: "there is an appropriateness ... in having the trial of a diversity case in a forum that is at home with the state law that must govern the case ***rather than having a court in some other forum untangle problems in conflicts of laws*** and in law foreign to itself." *Hutchens*, 928 F. Supp. at 1091 (emphasis added), *quoting Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Because Georgia law applies, the seventh factor favors transfer.

---

[5] Plaintiffs cite *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38 (1st Cir. 2001) to support their contention that the locus of operative facts is in the Northern District of Alabama. *Uffner*, however, did not even address transfer under Section 1404(a). The *Uffner* court simply analzyed whether venue was proper in the district in which the insurance loss took place. As noted above, Shaw's request to transfer is not based on improper venue in this Court.

6. <u>Plaintiffs' choice of forum should be given little deference</u>.

At bottom, Plaintiffs' opposition to transfer rests primarily on the eighth factor: the weight accorded a plaintiff's choice of forum. But none of the Plaintiffs (or any of the defendant insurers for that matter) have any tie to Alabama and the operative facts involved in this insurance dispute all took place in Georgia. As a result, any deference accorded Plaintiffs' choice of forum should be minimal.

It is undisputed that none of the Plaintiffs are citizens of Alabama. *See* (Doc. 65, at ¶¶ 4-18). And it is well-established that a plaintiff's choice of forum is given less weight when the plaintiff itself is not a citizen of the forum. While Plaintiffs complain that this is "simply wrong" (Doc. 72, p. 17), the cases supporting this proposition are legion and include those cited by Plaintiffs themselves. *See Elam v. Ryder Auto. Operations, Inc.*, 1994 WL 705290, at *6 (W.D.N.Y. Nov. 1, 1994) (plaintiff's choice of forum "is not conclusive and is entitled to less weight when the plaintiff brings suit outside his home forum."). Decisions in this district confirm its application here. *See e.g., Swisher v. Nissan Motor Acceptance Co., LLC*, 2022 WL 17169603, at *3 (N.D. Ala. Nov. 21, 2022); *Goodson v. Cintas Corp. No. 2*, 2021 WL4844208, at *3 (N.D. Ala. Oct. 18, 2021) (venue in the Northern District of Alabama was "entitled less weight because none of the parties reside" there).

Considering that all other factors favor transfer, any deference given to Plaintiffs' choice of venue is outweighed here. "In light of the fact that most of the documents and material witnesses are located in Columbus, Georgia, and that Georgia law governs this case, the plaintiff's choice of forum is outweighed by the public interest in assuring that localized controversies are decided at home." *Hutchens*, 928 F. Supp. at 1091, *quoting Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

9

7. <u>Trial efficiency and the interest of justice favor transfer to the Northern District of Georgia</u>.

The final factor of trial efficiency and the interest of justice is generally viewed as a catch-all factor "based on the totality of the circumstances" and is "inextricably intertwined with the first through fifth and seventh factors." *Chambers*, 2010 WL11565361, at *7; *Miller v. Bank*, 2012 WL 12893856, at *2 (N.D. Ala. Jul. 25, 2012). As discussed above, the totality of the circumstances here favors transfer. Yet Plaintiffs contend—without factual support—that this factor weighs against transfer because the "litigation is likely to proceed more quickly in the Northern District of Alabama…." *See* (Doc. 72, p. 16). While the Eleventh Circuit did not identify court congestion as a factor in *Manuel*, Plaintiffs argument is unfounded even if the Court were to entertain it.

Plaintiffs conclude that the Northern District of Georgia is more congested based on the higher total number of cases filed in that district and a higher judge-to-case ratio. But Plaintiffs' argument oversimplifies the complex task of docket management and ignores the types of cases each district routinely handles, the time spent on these cases, or how cases are separated between divisions. In short, there is no basis to conclude that a higher number of cases in the Northern District of Georgia would lead to a longer disposition. In fact, the statistics attached to Plaintiffs' Opposition confirm that the median time from filing to trial in civil actions is 20% ***faster*** in the Northern District of Georgia than this district. *See* (Doc. 72-2, p. 12). So no matter how the Court views the final factor, it favors transfer.

C. **Shaw's general denial of Plaintiffs' assertion of subject matter jurisdiction does not prevent transfer.**

Finally, Plaintiffs make the novel argument that transfer is not authorized because there may not be federal subject matter jurisdiction over their own lawsuit. Without citing any authority, Plaintiffs contend that Shaw's general denial of the allegations of diversity jurisdiction in its

Answer to Plaintiffs' Amended Complaint precludes transfer. Ultimately, if there is a lack of subject matter jurisdiction, this action must be dismissed. But there is no need for the Court to make that determination before transferring this action to a more appropriate venue.

While Shaw has not conceded subject matter jurisdiction, it has not contested it at this stage either because it remains unclear whether the interests of Plaintiffs and Nominal Defendants are sufficiently aligned. Shaw denied Plaintiffs' allegations of diversity jurisdiction because Plaintiffs' Amended Complaint identifies both Plaintiff Federal Insurance Company and Nominal Defendant U.S. Fire Insurance Company as citizens of New Jersey. *See* (Doc. 65, ¶¶ 6, 18). Although nominal parties are not considered in the diversity of citizenship analysis, the label provided by the plaintiff is not dispositive. *See Monroe v. Cont'l Tire the Americas, LLC*, 807 F. Supp. 2d 1129, 1133 (M.D. Fla. 2011) ("But merely labeling [a defendant] as a nominal party . . . does not render it *ipso facto* nominal under a diversity analysis without analyzing the particular facts at issue."). Shaw recognizes that Plaintiffs here have announced an intention to realign the parties and that the Eleventh Circuit generally considers "the normal alignment of parties in a suit seeking a declaratory judgment of non-coverage [to be] Insurer versus Insured and Injured Party," *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1312 (11th Cir. 2012). But whether the insurers have the necessary alignment of interest is ultimately a factual inquiry that depends on whether they seek the same interpretation of the insurance contracts. *See Atl. Specialty Ins. Co. v. City of Coll. Park, Georgia*, 319 F. Supp. 3d 1287, 1293 (N.D. Ga. 2018). It remains uncertain whether that alignment of interest exists here.

While the proposed realignment of the parties must be considered at some point, this Court need not do so before transferring to a venue that is more familiar with the applicable law. *See In re LimitNone, LLC*, 551 F.3d 572, 576 (7th Cir. 2008) ("the district court was not required to

determine its own subject-matter jurisdiction before ordering the case transferred."); *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 431, 127 S. Ct. 1184, 1191, 167 L. Ed. 2d 15 (2007) ("there is no mandatory sequencing of jurisdictional issues.") (internal quotations omitted). As a result, it is proper for the Court to transfer this action to the Northern District of Georgia before the realignment of the parties is considered.

## CONCLUSION

In summary, Shaw's motion should be granted, and this action should be transferred to the Northern District of Georgia.

Respectfully submitted, this 19th day of January, 2024.

/s/ Brannon J. Buck
Brannon J. Buck (ASB-5848-K56B)
Christopher B. Driver (ASB-9178-G39B)
BADHAM & BUCK, LLC
2001 Park Place North, Ste. 500 Birmingham, Alabama 35203
(205) 521-0036 (Phone)
(205) 521-0037 (Facsimile)
bbuck@badhambuck.com
cdriver@badhambuck.com

Shattuck Ely (Georgia Bar No. 246944)
*Pro Hac Vice Application To Be Filed
FELLOWS LABRIOLA LLP
Suite 2400, Harris Tower
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 586-9200 (Phone)
tely@fellab.com

*Counsel for Shaw Industries, Inc.*

**CERTIFICATE OF SERVICE**

This is to certify that on this day I served the foregoing by using the Court's CM/ECF system, which will send notice of the filing to all counsel authorized to receive it.

This 19th day of January, 2024.

*/s/ Brannon J. Buck*
