FILED
2024 Jan-24  PM 05:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **FEDERAL INSURANCE COMPANY, PACIFIC EMPLOYERS INSURANCE COMPANY, ACE AMERICAN INSURANCE COMPANY, ACE PROPERTY AND CASUALTY INSURANCE COMPANY, INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, and WESTCHESTER FIRE INSURANCE COMPANY,** | **Civil Action No: 1:23-CV-01367-RDP** |
| **Plaintiffs,** | |
| **v.** | |
| **SHAW INDUSTRIES, INC.,** | |
| **Defendant,** | |
| **and** | |
| **COMMERCE & INDUSTRY INSURANCE COMPANY; FIRST STATE INSURANCE COMPANY; EMPLOYERS INSURANCE COMPANY OF WAUSAU; GREAT AMERICAN INSURANCE COMPANY; U.S. FIRE INSURANCE COMPANY; TRAVELERS CASUALTY AND SURETY COMPANY; JOHN DOE INSURERS 1-100** | |
| **Nominal Defendants.** | |

<u>**DEFENDANT FIRST STATE INSURANCE COMPANY'S
ANSWER AND AFFIRMATIVE DEFENSES TO
PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**</u>

Defendant, First State Insurance Company ("First State"), by its attorneys, Maynard Nexsen and Karbal, Cohen, Economou, Silk & Dunne, LLC, and for its Answer and Affirmative Defenses to the First Amended Complaint for Declaratory Judgment of Plaintiffs ("Complaint"),

Federal Insurance Company ("Federal"), and Pacific Employers Insurance Company, ACE American Insurance Company, ACE Property and Casualty Insurance Company Indemnity Insurance Company of North America, and Westchester Fire Insurance Company with respect to the policies novated from International Insurance Company (collectively the "Additional Plaintiff Insurers"), hereby states as follows:

## I.   INTRODUCTION[1]

1.       This is a civil action for declaratory judgment. Federal seeks a declaration that it has no duty to provide insurance coverage to Shaw Industries, Inc. ("Shaw"), under the liability insurance policies identified herein, in connection with underlying claims and litigation involving alleged environmental contamination arising out of Shaw's carpet manufacturing and waste discharge.

**ANSWER:**   Paragraph 1 is a statement of the Plaintiffs' claim for relief, and therefore, no answer is required, and none is made.  To the extent that an answer is required, First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 1 and therefore, denies same and demands strict proof thereof.

2.       The underlying suits and claims giving rise to this declaratory judgment action involve claims brought on behalf of towns, municipalities, and/or utility authorities in Alabama and Georgia seeking damages for environmental contamination allegedly caused by Shaw and others. The underlying suits are referred to collectively herein as the "Underlying Actions." Included amongst the Underlying Actions are pending claims in *Shelby County, Alabama and Talladega County, Alabama v. 3M Company, et al.*, 61-cv-2023-900112.00 (Cir. Ct. Talladega Cty.) and *Shelby County, Alabama and Talladega County, Alabama v. 3M Company, et al.*, 1:23-cv-00609-CLM (N.D. Ala., E.D.).

**ANSWER:**   First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 2 and therefore, denies same and demands strict proof thereof.

---

[1] For ease of reference, First State is incorporating the headings and allegations used by Plaintiffs in their Complaint.  References to these headings and allegations are not an admission of their truth by First State. To the extent these headings are deemed to contain allegations to which responses are required, First State denies them.

3.     More specifically, the underlying claimants allege damages due to the release of toxic chemicals including perfluorinated compounds ("PFCs"), including, but not limited to perfluorooctanoic acid ("PFOA"), perfluorooctane sulfonate ("PFOS"), precursors to PFOA and PFOS, and related chemicals into local waterways.[2]

**ANSWER:**     First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 3 and therefore, denies same and demands strict proof thereof.

## II.     THE PARTIES

4.     ACE American Insurance Company is an insurance company incorporated in Pennsylvania, with its principal place of business in Pennsylvania.

**ANSWER:**     The allegations of Paragraph 4 are not directed at First State, and therefore, no answer is required, and none is made. To the extent that an answer is required, First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 4 and, therefore, denies same and demands strict proof thereof.

5.     ACE Property and Casualty Insurance Company is an insurance company incorporated in Pennsylvania, with its principal place of business in Pennsylvania.

**ANSWER:**     The allegations of Paragraph 5 are not directed at First State, and therefore, no answer is required, and none is made. To the extent that an answer is required, First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 5 and, therefore, denies same and demands strict proof thereof.

6.     Federal is an insurance company incorporated in Indiana, with its principal place of business in New Jersey.

**ANSWER:**     The allegations of Paragraph 6 are not directed at First State, and therefore, no answer is required, and none is made. To the extent that an answer is required, First State is

---

[2] For ease of reading, the foregoing chemicals will be referred to collectively herein as "PFAS."

without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 6 and, therefore, denies same and demands strict proof thereof.

7.      Indemnity Insurance Company of North America is an insurance company incorporated in Pennsylvania, with its principal place of business in Pennsylvania.

**ANSWER:**     The allegations of Paragraph 7 are not directed at First State, and therefore, no answer is required, and none is made. To the extent that an answer is required, First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 7 and, therefore, denies same and demands strict proof thereof.

8.      Westchester Fire Insurance Company is an insurance company incorporated in Pennsylvania, with its principal place of business in Pennsylvania. Westchester Fire Insurance Company appears in this case with respect to the policies novated from International Insurance Company.

**ANSWER:**     The allegations of Paragraph 8 are not directed at First State, and therefore, no answer is required, and none is made. To the extent that an answer is required, First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 8 and, therefore, denies same and demands strict proof thereof.

9.      Pacific Employers Insurance Company is an insurance company incorporated in Pennsylvania, with its principal place of business in Pennsylvania.

**ANSWER:**     The allegations of Paragraph 9 are not directed at First State, and therefore, no answer is required, and none is made. To the extent that an answer is required, First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 9 and, therefore, denies same and demands strict proof thereof.

10.     Upon information and belief, Shaw is a corporation incorporated under the laws of the State of Georgia with its principal place of business in Dalton, Georgia. Shaw is authorized to do business and does business in the State of Alabama.

**ANSWER:**     The allegations of Paragraph 10 are not directed at First State, and therefore, no answer is required, and none is made. To the extent that an answer is required, First State is

without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 10 and, therefore, denies same and demands strict proof thereof.

11.     Commerce and Industry Insurance Company ("Commerce and Industry") is an insurance company incorporated in New York, with its principal place of business in New York. Commerce and Industry issued liability insurance policies to Shaw at times relevant to the Complaint.

**ANSWER:**     The allegations of Paragraph 11 are not directed at First State, and therefore, no answer is required, and none is made. To the extent that an answer is required, First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 11 and, therefore, denies same and demands strict proof thereof.

12.     [Intentionally left blank due to the dismissal without prejudice of Fireman's Fund Insurance Company as a party]

**ANSWER:**     Paragraph 12 contain no allegations, and therefore, no answer is required.

13.     First State Insurance Company ("First State") is an insurance company incorporated in Connecticut, with its principal place of business in Massachusetts. First State issued liability insurance policies to Shaw at times relevant to the Complaint.

**ANSWER:**     First State admits that it is an insurance company incorporated in Connecticut, with its principal place of business in Connecticut. First State further admits that it issued liability insurance policies to Shaw.  First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph No. 13 and, therefore, denies same and demands strict proof thereof.

14.     Employers Mutual Liability Insurance Company ("Employers Mutual") is an insurance company incorporated in Wisconsin, with its principal place of business in Wisconsin. Employers Mutual issued liability insurance policies to Shaw at times relevant to the Complaint.

**ANSWER:**     The allegations of Paragraph 14 are not directed at First State, and therefore, no answer is required, and none is made. To the extent that an answer is required,  First State is

without knowledge or information sufficient to form a belief as to the truth or falsity of the

allegations of Paragraph No. 14 and, therefore, denies same and demands strict proof thereof.

15.     Great American Insurance Company ("Great American") is an insurance company incorporated in Ohio, with its principal place of business in Ohio. Great American issued liability insurance policies to Shaw at times relevant to the Complaint.

**ANSWER:**     The allegations of Paragraph 15 are not directed at First State, and therefore,

no answer is required, and none is made. To the extent that an answer is required,  First State is

without knowledge or information sufficient to form a belief as to the truth or falsity of the

allegations of Paragraph No. 15 and, therefore, denies same and demands strict proof thereof.

16.     [Intentional left blank die to the dismissal without prejudice of Westport Insurance Corporation as a party].

**ANSWER:**     Paragraph 16 contain no allegations, and therefore, no answer is required.

17.     Travelers Casualty and Surety Company ("Travelers Casualty and Surety") is an insurance company incorporated in Connecticut, with its principal place of business in Connecticut. Travelers Casualty and Surety issued liability insurance policies to Shaw at times relevant to the Complaint.

**ANSWER:**     The allegations of Paragraph 17 are not directed at First State, and therefore,

no answer is required, and none is made. To the extent that an answer is required, First State is

without knowledge or information sufficient to form a belief as to the truth or falsity of the

allegations of Paragraph No. 17 and, therefore, denies same and demands strict proof thereof.

18.     U.S. Fire Insurance Company ("U.S. Fire") is an insurance company incorporated in Delaware, with its principal place of business in New Jersey. U.S. Fire issued liability insurance policies to Shaw at times relevant to the Complaint.

**ANSWER:**     The allegations of Paragraph 18 are not directed at First State, and therefore,

no answer is required. To the extent that an answer is required, First State is without knowledge

or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph

No. 18 and, therefore, denies same and demands strict proof thereof.

19.     John Doe Insurers are insurers who may exist that Shaw sought coverage from, but whose identities are currently unknown to Federal and Additional Plaintiff Insurers.

**ANSWER:**     The allegations of Paragraph 19 are not directed at First State, and therefore, no answer is required, and none is made. To the extent that an answer is required, First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 19 and, therefore, denies same and demands strict proof thereof.

## III.     JURISDICTION & VENUE

20.     This Court has original jurisdiction over this declaratory judgment action based on 28 U.S.C. § 1332(a) and 28 U.S.C. § 2201, et seq. This action involves a controversy between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

**ANSWER:**     To the extent that Paragraph 20 contains conclusions of law, no response is required and none is made.  To the extent that a response is deemed required, First State admits that this Court has subject matter jurisdiction over Federal's and Additional Plaintiff Insurers' Complaint.

21.     There is complete diversity of citizenship between the Plaintiff and the Defendants as required under 28 U.S.C. § 1332(a).

**ANSWER:**     To the extent that Paragraph 21 contains conclusions of law, no response is required, and none is made.  To the extent that a response is deemed required, First State admits that this Court has subject matter jurisdiction over Federal's and Additional Plaintiff Insurers' Complaint.

22.     This Court also has jurisdiction over this matter pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), because this matter presents a case of actual controversy and seeks an order declaring the rights and other legal relations of the parties to this action.

**ANSWER:**     To the extent that Paragraph 22 contains conclusions of law, no response is required, and none is made.  To the extent that a response is deemed required, First State admits that this Court has jurisdiction over Federal's and Additional Plaintiff Insurers' Complaint and that

a case and controversy is alleged to exist as between Shaw on the one hand and Federal and the

Additional Insurers, on the other hand.

23.     This Court has personal jurisdiction over Shaw as Shaw conducts business and maintains operations within the State of Alabama. Certain of the Underlying Actions also include allegations that Shaw knowingly directed its contaminated wastewater to Alabama waterways. An Underlying Action against Shaw, alleging contamination arising out of Shaw's operations, captioned *Shelby County, Alabama and Talladega County, Alabama v. 3M Company, et al.*, 1:23-cv- 00609-CLM (N.D. Ala., E.D.), is currently pending before the Eastern District.

**ANSWER:**     To the extent that Paragraph 23 contains conclusions of law, no response is

required, and none is made.  To the extent that a response is deemed required, First State admits

that this Court has personal jurisdiction over Shaw.

24.     A case of actual controversy is presented here because Shaw seeks insurance coverage from Federal for indemnity costs it has or will incur in connection with the Underlying Actions and Federal disputes its obligations to Shaw with respect to insurance coverage for the Underlying Actions.

**ANSWER:**     To the extent that Paragraph 24 contains conclusions of law, no response is

required, and none is made.  To the extent that a response is deemed required, First State admits

that a case and controversy is alleged to exist as between Shaw on the one hand and Federal and

the Additional Insurers, on the other hand.

25.     Venue is proper in the Northern District of Alabama under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of property that is the subject of the action is situated in Talladega County.

**ANSWER:**     To the extent that Paragraph 25 contains conclusions of law, no response is

required, and none is made.  To the extent that a response is deemed required, First State admits

that venue over Federal's and Additional Plaintiff Insurers' Complaint is proper in the Northern

District of Alabama.

## IV.     FACTS AND BACKGROUND[3]

---

[3] The allegations of fact are stated upon information and belief.

A.    **SHAW CARPETING**

26.    Shaw is a producer of carpet, resilient flooring, hardwood, tile and stone, synthetic turf and other specialty flooring products.

**ANSWER:**    First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 26 and, therefore, denies same and demands strict proof thereof.

27.    Shaw is the world's largest carpet manufacturer with approximately $5 billion in annual revenue.

**ANSWER:**    First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 27 and, therefore, denies same and demands strict proof thereof.

28.    As of the filing of the Complaint, Shaw operates facilities in Alabama and Georgia.

**ANSWER:**    First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 28 and, therefore, denies same and demands strict proof thereof.

B.    **SHAW'S PFAS USE**

29.    In the 1950s or 1960s, 3M Company ("3M") introduced a Scotchgard stain blocker and soil-resistant product that could be used to treat carpets.

**ANSWER:**    First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 29 and, therefore, denies same and demands strict proof thereof.

30.    Shaw may have used these Scotchgard products in the 1950s or 1960s in its carpet manufacturing operations.

**ANSWER:**   First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 30 and, therefore, denies same and demands strict proof thereof.

31.   Starting in or around 1972, 3M began marketing a stain blocker and soil-resistant product called Scotchguard to carpet companies, including Shaw.

**ANSWER:**   First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 31 and, therefore, denies same and demands strict proof thereof.

32.   In the 1970s, E.I. DuPont de Nemours ("DuPont") also introduced a stain blocker and soil-resistant product called Teflon to carpet companies.

**ANSWER:**   First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 32 and, therefore, denies same and demands strict proof thereof.

33.   In the early to mid-1970s, Shaw purchased Scotchguard products from 3M for use in Shaw's carpet manufacturing operations.

**ANSWER:**   First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 33 and, therefore, denies same and demands strict proof thereof.

34.   In the early to mid-1970s, Shaw may have purchased stain resistant products from other companies.

**ANSWER:**   First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 34 and, therefore, denies same and demands strict proof thereof.

35.   In or around October 1986, DuPont introduced a stain blocker and soil-resistant product called Stainmaster and began marketing Stainmaster to carpeting companies such as Shaw.

**ANSWER:**    First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 35 and, therefore, denies same and demands strict proof thereof.

36.    In or around October 1986, Shaw began purchasing Stainmaster products from DuPont for use in Shaw's carpet manufacturing operations.

**ANSWER:**    First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 36 and, therefore, denies same and demands strict proof thereof.

37.    The stain-resistant products marketed and sold by 3M, DuPont, and/or others contained perfluoroalkyl and polyfluoroalkyl substances commonly referred to by the acronym "PFAS."

**ANSWER:**    First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 37 and, therefore, denies same and demands strict proof thereof.

38.    The PFAS contained in the stain-resistant products utilized by Shaw were, at all relevant times, present in the wastewater produced as a waste by- product of Shaw's manufacturing process.

**ANSWER:**    First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 38 and, therefore, denies same and demands strict proof thereof.

### C.    THE LAND APPLICATION SYSTEM AND SHAW'S WASTE DISPOSAL PRACTICES

39.    Shaw utilized Dalton Utilities ("Dalton") to dispose of its wastewater created by Shaw's manufacturing process.

**ANSWER:**    First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 39 and, therefore, denies same and demands strict proof thereof.

40.     On July 17, 1984, Dalton applied for a permit to operate a Land Application System ("LAS") for its wastewater disposal needs.

**ANSWER:**     First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 40 and, therefore, denies same and demands strict proof thereof.

41.     On August 20, 1986, Dalton received a permit to operate the LAS.

**ANSWER:**     First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 41 and, therefore, denies same and demands strict proof thereof.

42.     The LAS is an approximately 9,600-acre system, operated by Dalton, in which wastewater is processed and dispersed onto the land surface.

**ANSWER:**     First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 42 and, therefore, denies same and demands strict proof thereof.

43.     Beginning in or around August 20, 1986, Dalton began disposing of Shaw's wastewater at the LAS.

**ANSWER:**     First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 43 and, therefore, denies same and demands strict proof thereof.

44.     Underlying Plaintiffs allege that PFAS from the LAS has contaminated local waterways.

**ANSWER:**     First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 44 and, therefore, denies same and demands strict proof thereof.

45.     Shaw's wastewater and other waste may have been disposed in other ways during the relevant time periods.

**ANSWER:**     First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 45 and, therefore, denies same and demands strict proof thereof.

D.     **THE UNDERLYING ACTIONS**

i.     **Facts Relevant To All Underlying Actions**

46.     Municipal entities in Alabama have asserted the following actions against Shaw alleging environmental contamination caused by Shaw's operations:

- *Shelby County, Alabama and Talladega County, Alabama v. 3M Company, Inc., et al.*, 1:23-cv-00609-CLM in the United States District Court for the Northern District of Alabama – Eastern Division;

- *Shelby County, Alabama and Talladega County, Alabama v. 3M Company, et al.*, 61-cv-2023-900112.00 in the Circuit Court of Talladega County, Alabama;

- *The Water Works and Sewer Board of the City of Gadsden v. 3M Company, Inc., et al.*, 31-cv-2016-900676.00 in the Circuit Court of Etowah County, Alabama;

- *The Water Works and Sewer Board of the Town of Centre v. 3M Company, Inc., et al.*, 31-cv-2017-900049.00 in the Circuit Court of Cherokee County, Alabama.

**ANSWER:**     First State admits that, upon information and belief, Municipal entities in Alabama have asserted the above-referenced actions against Shaw alleging environmental contamination caused by Shaw's operations.  First State lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 46, and on that basis, denies them and demands strict proof thereof.

47.     Municipal entities and/or individuals in Georgia have asserted the following actions against Shaw alleging environmental contamination caused by Shaw's operations:

- *The City of Rome, Georgia v. 3M Company, Inc., et al.*, 19-cv-02405- JFL-003, in the Superior Court of Floyd County, Georgia; and

- *Jarrod Johnson, individually and on behalf of a class of persons similarly situated v. 3M Company, et al.*, 4:20-cv-0008-AT, in the United States District Court for the Northern District of Georgia – Rome Division.

**ANSWER:**   First State admits that, upon information and belief, Municipal entities and/or individuals in Georgia have asserted the above-referenced actions against Shaw alleging environmental contamination caused by Shaw's operations.   First State lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 47, and on that basis, denies them and demands strict proof thereof.

48.   All of the foregoing actions involve allegations that Shaw used and continues to use PFAS in the carpet and flooring manufacturing process and that the underlying plaintiff(s) suffered damages due to the negligent, willful, and wanton conduct of Shaw, as well as the nuisance and trespass caused by Shaw's past and present release of PFAS and related chemicals in and around its facilities in Dalton, Georgia.

**ANSWER:**   First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 48 and, therefore, denies same and demands strict proof thereof.

49.   The plaintiffs in the Underlying Actions allege that Shaw had knowledge for decades that PFAS cannot be removed from the wastewater it sends to Dalton Utilities.

**ANSWER:**   First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 49 and, therefore, denies same and demands strict proof thereof.

50.   The underlying plaintiffs allege to have suffered substantial economic and consequential damages, including, but not limited to, expenses associated with the future installation and operation of a filtration system capable of removing PFAS from the water; expenses associated with the removal or remediation of contaminated property; expenses incurred to monitor PFAS contamination levels; and lost profits and sales.

**ANSWER:**   First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 50 and, therefore, denies same and demands strict proof thereof.

ii.   **The Settled Underlying Actions**

51.     Without the prior consent of Federal, Shaw settled the following underlying actions:

- *The Water Works and Sewer Bd. Of City of Gadsden v. 3M, et al.* (action filed in Alabama) ("*The City of Gadsden*");

- *The Water Works and Sewer Bd. Of Town of Centre v. 3M, et al.* (action filed in Alabama) ("*The Town of Centre*"); and

- *The City of Rome v. 3M, et al.* (action filed in Georgia) ("*The City of Rome*")*.*

**ANSWER:**     First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 51 and, therefore, denies same and demands strict proof thereof.

52.     All of the settled Underlying Actions contain generally the same allegations relating to Shaw's improper disposal of PFAS-contaminated waste and the contamination of local water supplies.

**ANSWER:**     First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 52 and, therefore, denies same and demands strict proof thereof.

53.     In *The City of Gadsden* Complaint, the City of Gadsden alleged that PFAS released by Shaw contaminated the water in the Coosa River at the City of Gadsden Water Works intake site and that the chemicals cannot be removed by the current water treatment processes utilized by the City of Gadsden's water utility providers.

**ANSWER:**     First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 53 and, therefore, denies same and demands strict proof thereof.

54.     The City of Gadsden sought economic and consequential damages, including but not limited to, expenses associated with the future installation and operation of a filtration system capable of removing the chemicals at issue, as well as monitoring expenses, and lost profits and sales.

**ANSWER:**   First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 54 and, therefore, denies same and demands strict proof thereof.

55.    On or about December 21, 2016, Shaw placed Federal on notice of the allegations at issue in *The City of Gadsden.*

**ANSWER:**   First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 55 and, therefore, denies same and demands strict proof thereof.

56.    Via correspondence, Federal reserved its rights with respect to coverage for *The City of Gadsden.* Federal did not waive any applicable consent to settlement provisions contained within each insurer's respective policies.

**ANSWER:**   First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 56 and, therefore, denies same and demands strict proof thereof.

57.    On or about September 9, 2022, Shaw agreed to settle the claims asserted against it in *The City of Gadsden* action without first obtaining Federal's consent.

**ANSWER:**   First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 57 and, therefore, denies same and demands strict proof thereof.

58.    On or about June 6, 2017, Shaw placed Federal on notice of the allegations at issue in *The Town of Centre.*

**ANSWER:**   First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 58 and, therefore, denies same and demands strict proof thereof.

59.    Via coverage correspondence, Federal reserved its rights with respect to coverage for *The Town of Centre.*

**ANSWER:**    First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 59 and, therefore, denies same and demands strict proof thereof.

60.    Federal did not waive any applicable consent to settlement provisions contained within each insurer's respective policies.

**ANSWER:**    First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 60 and, therefore, denies same and demands strict proof thereof.

61.    On or about March 28, 2023, Shaw agreed to settle the claims asserted against it in *The Town of Centre* action without first obtaining Federal's consent.

**ANSWER:**    First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 61 and, therefore, denies same and demands strict proof thereof.

62.    On or about April 5, 2023, Shaw settled the claims against it by *The City of Rome* without first obtaining the Federal's consent.

**ANSWER:**    First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 62 and, therefore, denies same and demands strict proof thereof.

63.    Via coverage correspondence, Federal reserved its rights with respect to coverage for *The City of Rome.*

**ANSWER:**    First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 63 and, therefore, denies same and demands strict proof thereof.

64.    Federal did not waive any applicable consent to settlement provisions contained within each insurer's respective policies.

**ANSWER:**   First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 64 and, therefore, denies same and demands strict proof thereof.

65.   On or about April 5, 2023, Shaw settled the claims against it in *The City of Rome* without Federal's consent.

**ANSWER:**   First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 65 and, therefore, denies same and demands strict proof thereof.

### iii.   **Currently Pending Underlying Actions**

66.   In addition to the settled Underlying Actions, Federal has received notice of two currently pending Underlying Actions asserted against Shaw.

**ANSWER:**   First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 66 and, therefore, denies same and demands strict proof thereof.

67.   The matter of *Shelby County, Alabama and Talladega County, Alabama v. 3M Company, Inc., et al.*, is currently pending in the United States District Court for the Northern District of Alabama and involves allegations that Shaw "expressly and directly aimed polluted wastewater from their plants not only at Dalton Utilities and the LAS in Georgia but also at Alabama through the continuing flow of the polluted wastewater from [Shaw's] plants, into the Coosa River and its tributaries, and ultimately to Shelby and Talladega Counties."

**ANSWER:**   First State admits only that upon information and belief, the matter of *Shelby County, Alabama and Talladega County, Alabama v. 3M Company, Inc., et al.*, is currently pending in the United States District Court for the Northern District of Alabama and that the operative complaint in the case speaks for itself.   First State lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 67, and on that basis, denies them and demands strict proof thereof.

68.     Shelby and Talladega Counties allege that they have suffered economic and consequential damages, including, but not limited to, expenses associated with the future installation and operation of a filtration system capable of removing PFAS from the Counties' water; expenses associated with the removal and/or remediation of contaminated property; expenses incurred to monitor contamination levels; and lost profits and sales.

**ANSWER:**   First State is without knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations of Paragraph No. 68 and, therefore, denies same and

demands strict proof thereof.

69.     The matter of *Jarrod Johnson, et al. v. 3M, et al.* is pending in the United States District Court for the Northern District of Georgia and involves water contamination claims asserted by a class of claimants consisting of owners and occupants of property served by Rome Water and Sewer Division and the Floyd County Water Department who have allegedly been and continue to be provided with water contaminated by the release of chemicals by Shaw and others. *Johnson* Complaint at 3.

**ANSWER:**   First State admits only that, upon information and belief, the matter of

*Jarrod Johnson, et al. v. 3M, et al.* is pending in the United States District Court for the Northern

District of Georgia and that the operative complaint in that case speaks for itself.  First State lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations of

Paragraph 69, and on that basis, denies them and demands strict proof thereof.

## V.     THE POLICIES ISSUED BY FEDERAL

70.     As discussed above, Shaw has focused its demand for insurance coverage on the following excess liability insurance policies issued by Federal (referred to hereafter as the "1980-1985 Federal Policies"):

| Policy No. | Policy Inception | Policy End |
|---|---|---|
| 79221063 | 07/01/1980 | 07/01/1981 |
| 79221063 | 07/01/1981 | 07/01/1982 |
| 79221063 | 07/01/1982 | 07/01/1983 |
| 79221063 | 07/01/1983 | 07/01/1984 |
| 79221063 | 07/01/1984 | 07/01/1985 |

**ANSWER:**   The allegations of Paragraph No. 70 are not directed to First State and, therefore, no answer is required, and none is made.  To the extent an answer is required, the 1980-1985 Federal Policies are in writing and speak for themselves, and First State denies any allegations contained in Paragraph 70 inconsistent therewith.

71.    The insuring agreement of the 1980-1985 Federal Policies provides in part that coverage under the policies is limited to the payment of "Loss" resulting from an occurrence insured by the terms of the underlying policies:

> In consideration of the payment of the required premium and subject to all the terms of this policy, the Company agrees to pay on behalf of the insured LOSS resulting from any occurrence Insured by the terms and provisions of the First UNDERLYING INSURANCE policy scheduled in item 6 of the Declarations (except for the Limits of Liability and defense provisions, if any). The insurance afforded by this policy shall apply only in excess of and after all UNDERLYING INSURANCE (as scheduled in item 6 of the Declarations) has been exhausted.

**ANSWER:**   The allegations of Paragraph No. 71 are not directed to First State and, therefore, no answer is required, and none is made.  To the extent an answer is required, the 1980-1985 Federal Policies are in writing and speak for themselves, and First State denies any allegations contained in Paragraph 71 inconsistent therewith.

72.    The term "Loss" is defined in the policies as:

> The amount of the principal sum, award or verdict, actually paid or payable in cash in the settlement or satisfaction of claim for which the insured is liable, either by adjudication or compromise with the written consent of the Company, after making proper deduction for all recoveries and salvages.

**ANSWER:**   The allegations of Paragraph No. 72 are not directed to First State and, therefore, no answer is required, and none is made.  To the extent an answer is required, the 1980-1985 Federal Policies are in writing and speak for themselves, and First State denies any allegations contained in Paragraph 72 inconsistent therewith.

73.     The underlying policies to which the 1980-1985 Federal Policies follow form in part provide, subject to all other applicable terms, that coverage is provided only for liability arising from an "occurrence" which is defined in the following or substantially similar terms as:

> an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in injury, property damage pr advertising liability during the policy period. All such exposure to substantially the same general conditions existing at or emanating from one premises location shall be deemed one occurrence.

**ANSWER:**     The allegations of Paragraph No. 73 are not directed to First State and, therefore, no answer is required, and none is made.  To the extent an answer is required, the 1980-1985 Federal Policies are in writing and speak for themselves, and First State denies any allegations contained in Paragraph 73 inconsistent therewith.

74.     The 1980-1985 Federal Policies also provide that Federal has no obligation to assume charge of the investigation, settlement or defense of any claim or suit, such as the Underlying Actions, but Federal has the right to associate in the defense of any claim or suit:

> The Company shall not be called upon to assume charge of the investigation, settlement or defense of any claim made, or suits brought, or proceedings instituted against the Insured, but shall have the right to be given the opportunity to be associated in the defense and trial of any such claims, suits or proceedings relative to any occurrence which, in the opinion of the Company, may create liability on the part of the Company under the terms of this policy. If the Company avails itself of such right and opportunity the Company shall do so at its own expense. Court costs and interest, if incurred with the consent of the Company, shall be borne by the Company and other interested parties in the proportion that each party's share of LOSS bears to the total amount of Loss sustained by all interested parties.

**ANSWER:**     The allegations of Paragraph No. 74 are not directed to First State and, therefore, no answer is required, and none is made.  To the extent an answer is required, the 1980-1985 Federal Policies are in writing and speak for themselves, and First State denies any allegations contained in Paragraph 74 inconsistent therewith.

75.     The 1980-1985 Federal Policies contain the following Pollution Exclusion:

> This policy does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

**ANSWER:**   The allegations of Paragraph No. 75 are not directed to First State and, therefore, no answer is required, and none is made.  To the extent an answer is required, the 1980-1985 Federal Policies are in writing and speak for themselves, and First State denies any allegations contained in Paragraph 75 inconsistent therewith.

76.   The 1980-1985 Federal Policies provide that,

> The Insured agrees that the First UNDERLYING INSURANCE policy, and other UNDERLYING INSURANCE following the terms and provisions of the First UNDERLYING INSURANCE policy (except for limit of liability and defense provisions, if any), shall be maintained in full effect during the currency of this policy except for any reduction in the aggregate limit or limits contained therein solely by payment of claims in respect of occurrences happening during the period of this policy. The failure of the Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure the Company shall only be liable to the same extent as if the Insured had complied with this condition.

**ANSWER:**   The allegations of Paragraph No. 76 are not directed to First State and, therefore, no answer is required, and none is made.  To the extent an answer is required, the 1980-1985 Federal Policies are in writing and speak for themselves, and First State denies any allegations contained in Paragraph 76 inconsistent therewith.

77.   The 1980-1985 Federal Policies include other terms, conditions, and exclusions that may limit or bar coverage for the Underlying Actions.

**ANSWER:**   The allegations of Paragraph No. 77 are not directed to First State and, therefore, no answer is required, and none is made.  To the extent an answer is required, the 1980-1985 Federal Policies speak for themselves are in writing and speak for themselves, and First State denies any allegations contained in Paragraph 77 inconsistent therewith.

i. **Other Federal Polices**

78.     In addition to the 1980-1985 Federal Policies, Federal issued excess liability policies to Shaw for annual policy periods from July 1, 1985 to July 1, 2016.[4] The July 1, 1985 to July 1, 2016 Federal policies are referred to herein as the "Post-1985 Federal Policies."

**ANSWER:**     The allegations of Paragraph No. 78 are not directed to First State and, therefore, no answer is required, and none is made.  To the extent an answer is required, the Post-1985 Federal Policies are in writing and speak for themselves, and First State denies any allegations contained in Paragraph 78 inconsistent therewith.

79.     The Post-1985 Federal Policies contain absolute pollution exclusions.

**ANSWER:**     The allegations of Paragraph No. 79 are not directed to First State and, therefore, no answer is required, and none is made.  To the extent an answer is required, the Post-1985 Federal Policies are in writing and speak for themselves, and First State denies any allegations contained in Paragraph 79 inconsistent therewith.

80.     Upon information and belief, Shaw is not presently seeking coverage for the Underlying Actions under any of the Post-1985 Federal Policies.

**ANSWER:**     The allegations of Paragraph No. 80 are not directed to First State and, therefore, no answer is required, and none is made.  To the extent an answer is required, First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 80 and, therefore, denies same and demands strict proof thereof.

81.     However, Shaw notified Federal of the actions under those policies and has not formally withdrawn its notice.

**ANSWER:**     The allegations of Paragraph No. 81 are not directed to First State and, therefore, no answer is required, and none is made.  To the extent an answer is required, First State

---

[4]  These policies are listed in the Plaintiffs' Policy Schedule attached hereto as Exhibit A.

is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 81 and, therefore, denies same and demands strict proof thereof.

### ii.      Other Policies Issued By Additional Plaintiff Insurers

82.      In addition to the policies issued by Federal, the Additional Plaintiff Insurers issued excess liability policies to Shaw for the policy periods after 1985. These policies contain absolute pollution exclusions.

**ANSWER:**     The allegations of Paragraph No. 82 are not directed to First State and, therefore, no answer is required, and none is made.  To the extent an answer is required, the Additional Plaintiff Insurer policies are in writing and speak for themselves, and First State denies any allegations contained in Paragraph 82 inconsistent therewith.  To the extent the allegations are inconsistent therewith, such allegations are denied.

83.      Upon information and belief, Shaw is not presently seeking coverage for the Underlying Actions under any of these policies.

**ANSWER:**     The allegations of Paragraph No. 83 are not directed to First State and, therefore, no answer is required, and none is made.  To the extent an answer is required, First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 83 and, therefore, denies same and demands strict proof thereof.

84.      However, Shaw notified Additional Plaintiff Insurers of the actions under those policies and has not formally withdrawn its notice.

**ANSWER:**     The allegations of Paragraph No. 84 are not directed to First State and, therefore, no answer is required, and none is made.  To the extent an answer is required, First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 84 and, therefore, denies same and demands strict proof thereof.

## VI.     POLICIES ISSUED BY DEFENDANT INSURERS

85.     Upon information and belief, the Defendant Insurers issued one or more liability insurance policies to Shaw at various times. A non-exhaustive list of currently known policies issued by the Defendant Insurers is attached hereto as Exhibit B.

**ANSWER:**     First State admits that it issued Policy No. 906411 and Policy No. 909139 to Shaw Industries, Inc. (the "First State Policies").    The First State Policies are in writing and speak for themselves, and First State denies any allegations contained in Paragraph No. 85 inconsistent therewith.  First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph No. 85, and therefore, denies same and demands strict proof thereof.

86.     Upon information and belief, the policies issued to Shaw by the Defendant Insurers potentially provide coverage to Shaw for the PFAS-related losses alleged in the Underlying Actions. A non-exhaustive list of these policies issued by the Defendant Insurers is attached hereto as Exhibit B.

**ANSWER:**     The First State Policies are in writing and speak for themselves, and First State denies any allegations contained in Paragraph No. 86 inconsistent therewith.  First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph No. 86, and therefore, denies same and demands strict proof thereof.

87.     Shaw has notified the Defendant Insurers of the Underlying Actions and has sought coverage from them for the Underlying Actions.

**ANSWER:**     First State admits only that it was notified of the Underlying Actions.  First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph No. 87, and therefore, denies same and demands strict proof thereof.

88.     Upon information and belief, Shaw is also the insured on liability policies not listed on Exhibit B ("Non-Exhibit B Policies").

**ANSWER:**   First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 88, and therefore, denies same and demands strict proof thereof.

89.   Upon information and belief, Shaw has not given notice to insurers under Non-Exhibit B Policies for the Underlying Actions.

**ANSWER:**   First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 89, and therefore, denies same and demands strict proof thereof.

90.   Upon information and belief, Shaw does not seek coverage under Non- Exhibit B Policies for the Underlying Actions.

**ANSWER:**   First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph No. 90, and therefore, denies same and demands strict proof thereof.

## COUNT I

**(Declaratory Judgment as to Shaw)**

91.   Federal and the Additional Plaintiff Insurers incorporate each and every allegation of the preceding paragraphs as if fully set forth at length herein

**ANSWER:**   First State incorporates its answers as to each and every allegation of the preceding paragraphs as if fully set forth at length herein.

92.   Shaw has made a demand for coverage under policies issued to Shaw by Federal for indemnity in connection with the Underlying Actions.

**ANSWER:**   The allegations of Paragraph No. 92 are not directed to First State and, therefore, no answer is required, and none is made.  To the extent an answer is required, First State lacks knowledge or information sufficient to form a belief as to the truth of the of the allegations of Paragraph 92, and on that basis, denies them and demands strict proof thereof.

93.     There is an actual and justiciable controversy between Shaw and Federal with respect to potential insurance coverage for the Underlying Actions.

**ANSWER:**     The allegations of Paragraph No. 93 are not directed to First State and, therefore, no answer is required, and none is made.  To the extent an answer is required, First State lacks knowledge or information sufficient to form a belief as to the truth of the of the allegations of Paragraph 93, and on that basis, denies them and demands strict proof thereof.

94.     Shaw has put Additional Plaintiff Insurers on notice under other excess policies, but not sought coverage.

**ANSWER:**     The allegations of Paragraph No. 94 are not directed to First State and, therefore, no answer is required, and none is made.  To the extent an answer is required, First State lacks knowledge or information sufficient to form a belief as to the truth of the of the allegations of Paragraph 94, and on that basis, denies them and demands strict proof thereof.

95.     Shaw has not sought coverage from Additional Plaintiff Insurers, but Additional Plaintiff Insurers are included for the sake of completeness.

**ANSWER:**     The allegations of Paragraph No. 95 are not directed to First State and, therefore, no answer is required, and none is made.  To the extent an answer is required First State lacks knowledge or information sufficient to form a belief as to the truth of the of the allegations of Paragraph 95, and on that basis, denies them and demands strict proof thereof.

96.     Federal has no adequate remedy at law, and this is a proper case for the Court to exercise its jurisdiction and declare the rights and liabilities of Federal and Shaw with respect to the Underlying Actions.

**ANSWER:**     The allegations of Paragraph No. 96 are not directed to First State and, therefore, no answer is required, and none is made.  To the extent an answer is required First State lacks knowledge or information sufficient to form a belief as to the truth of the of the allegations of Paragraph 96, and on that basis, denies them and demands strict proof thereof.

97.     Insurance coverage for the Underlying Actions under any actual or alleged insurance policies issued by Federal to Shaw is barred in whole or in part, or potential coverage is otherwise limited because:

a.      the pollution exclusions in the 1980-1985 Federal Policies exclude coverage;

b.      the 1980-1985 Federal Policies only provide coverage for an occurrence and the Underlying Actions do not involve an occurrence;

c.      the 1980-1985 Federal Policies only provide coverage for third party property damage during the policy period and little to no third party property damage occurred during the policy periods of the 1980-85 Federal Policies;

d.      the 1980-1985 Federal Policies do not provide coverage for prophylactic expenses to prevent future injury or damage rather than to remediate past property damage;

e.      the attachment point of the 1980-1985 Federal Policies has not been reached;

f.      there is no duty under the 1980-1985 Federal Policies to drop down for insolvent underlying coverage;

g.      the Underlying Actions were settled without Federal's consent and consent is required under the 1980-1985 Federal Policies;

h.      to the extent the Federal is found to owe defense costs and/or indemnity costs in connection with the Underlying Actions, Federal's obligation will be limited to a pro rata allocated share determined on a "time on the risk" basis and Shaw will be responsible for all uninsured, underinsured, and self-insured periods, regardless of whether insurance coverage was available during such periods.

i.      Coverage for the Underlying Actions may be barred in whole or in part under other terms of the 1980-1985 Federal Policies and under the applicable law.

**ANSWER:**    To the extent that Paragraph 97 contains conclusions of law, no response is required and none is made.  Further, the allegations of Paragraph No. 97 are not directed to First State and, therefore, no answer is required, and none is made.

98.     Therefore, Federal requests that the Court enter a declaratory judgment declaring that there is no coverage for the Underlying Actions under the policies issued by Federal or that any coverage is limited in accordance with the terms of the policies and the applicable law.

**ANSWER:**    Paragraph 98 is a statement of the Plaintiffs' claim for relief, and therefore, no answer is required, and none is made.  Further, the allegations of Paragraph No. 98 are not directed to First State and, therefore, no answer is required, and none is made.

## COUNT II

### (In the Alternative, Declaratory Judgment as to the Defendant Insurers)

99.    Federal and the Additional Plaintiff Insurers incorporate each and every allegation of the preceding paragraphs as if fully set forth at length herein

**ANSWER:**    First State incorporates its answers as to each and every allegation of the preceding paragraphs as if fully set forth at length herein.

100.    The Defendant Insurers issued policies to Shaw that potentially provide insurance coverage for the claims against Shaw in the Underlying Actions.

**ANSWER:**    The First State Policies are in writing and speak for themselves, and First State denies any allegations contained in Paragraph No. 100 inconsistent therewith. First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph No. 100, and therefore, denies same and demands strict proof thereof.

101.    Upon information and belief, Shaw has tendered to or otherwise notified the Defendant Insurers of the Underlying Actions and has sought coverage for those actions from the Defendant Insurers.

**ANSWER:**    First State admits only that it was notified of the Underlying Actions. First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph No. 101, and therefore, denies same and demands strict proof thereof.

102.    If the Court determines that Federal or the Additional Plaintiff Insurers have an obligation in whole or in part to provide coverage to Shaw for one or more of the Underlying Actions, then Federal and the Additional Plaintiff Insurers request that the Court declare the rights

and obligations of all parties, including the Defendant Insurers with respect to insurance coverage for the Underlying Actions.

**ANSWER:**   First State denies the allegations and request for relief in Paragraph 102 to the extent that they are directed at First State.  First State is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of Paragraph No. 102, and therefore, denies same and demands strict proof thereof.

**WHEREFORE**, Federal and the Additional Plaintiff Insurers respectfully demand that judgment be entered as follows:

(1)   Entering judgment against Shaw and/or the Defendant Insurers declaring that there is no coverage for the Underlying Actions under the policies issued by Federal or the Additional Plaintiff Insurers or that any coverage is limited in accordance with the terms of the policies and the applicable law.

(2)   Awarding Federal and the Additional Plaintiff Insurers their attorneys' fees and costs against Shaw and/or the Defendant Insurers; and

(3)   Awarding Federal and the Additional Plaintiff Insurers all other relief to which they may appear to be entitled.

**ANSWER:**   First State denies the requests for relief as it pertains to First State.

## AFFIRMATIVE DEFENSES

First State asserts the following affirmative and other defenses to Federal's and Additional Plaintiff Insurers' Alternative Second cause of action asserted in the Complaint for Declaratory Judgment without assuming any burden of proof or persuasion that would otherwise remain on Federal and the Additional Plaintiff Insurers:

### *First Affirmative Defense*

Federal's and Additional Plaintiff Insurers' claim is barred to the extent that the Complaint fails to state a cause of action or a claim upon which relief may be granted against First State.

### *Second Affirmative Defense*

Federal's and Additional Plaintiff Insurers' claim is barred to the extent that Plaintiffs failed to join certain necessary and/or indispensable parties.

### *Third Affirmative Defense*

Federal's and Additional Plaintiff Insurers' claim is barred to the extent that there is no actual and justiciable controversy existing between Plaintiffs and First State.

### *Fourth Affirmative Defense*

First State has no obligations to the extent that certain liabilities and/or potential liabilities were incurred by entities that do not qualify as insured(s) under the First State Policies.

### *Fifth Affirmative Defense*

First State has no obligations to the extent that certain liabilities and/or potential liabilities were incurred by an entity acquired by the named insured after the expiration of the First State Policies.

### *Sixth Affirmative Defense*

Some or all of Federal's and Additional Plaintiff Insurers' claim against First State may be barred by the applicable statutes of limitations and/or statute of repose, and/or the equitable doctrines of laches, unclean hands, estoppel, waiver, res judicata, collateral estoppel, judicial estoppel, and/or issue preclusion, prior settlement, release, accord and satisfaction, and/or ratification.

### *Seventh Affirmative Defense*

First State has no obligation to defend or indemnify the insured or to contribute to the payment of defense or indemnity costs associated with the Underlying Actions to the extent that the Underlying Actions do not involve "property damage" or "personal injury" as those terms is defined and used in the First State Policies.

### *Eighth Affirmative Defense*

First State has no obligation to defend or indemnify or to contribute to the payment of defense or indemnity costs associated with the Underlying Actions to the extent that the alleged "property damage," which is the basis of the Underlying Actions, was not caused by or did not arise out of an "occurrence" within the meaning of the First State Policies.

### *Ninth Affirmative Defense*

There is no coverage under the First State Policies for "property damage" that was expected or intended from the standpoint of the insured or that was caused intentionally by or at the direction of an insured.

### *Tenth Affirmative Defense*

First State may have no obligation to contribute to the payment of defense or indemnity costs associated with the Underlying Actions to the extent any "property damage" or "personal injury" alleged in the Underlying Actions occurred prior to the inception date or after the expiration date of the First State Policies,

### *Eleventh Affirmative Defense*

First State's liability, if any, under the First State Policies for claims arising out of continuous or repeated exposure to substantially the same general conditions, and all damages

involving the same injurious material or act, is limited to liability for one "occurrence" as that term is defined in the First State policies.

### *Twelfth Affirmative Defense*

Federal's and Additional Plaintiff Insurers' claim is barred to the extent that the Underlying Actions for which the insured is seeking coverage do not constitute "ultimate net loss" within the meaning of the First State Policies.

### *Thirteenth Affirmative Defense*

There is no coverage under the First State Policies for equitable or injunctive relief, fines, penalties, intentional conduct or omissions, punitive damages, or any criminal or malicious acts or omissions of the insured, acting through its servants, agents or employees.

### *Fourteenth Affirmative Defense*

First State has no obligation to defend or indemnify the insured or to contribute to the payment of defense or indemnity costs associated with the Underlying Actions to the extent the underlying Actions are or may be barred by various exclusions contained in the First State Policies including, but not limited to, the pollution exclusion.

### *Fifteenth Affirmative Defense*

First State's obligations, if any, to defend or indemnify the insured or to contribute to the payment of defense and indemnity costs associated with the Underlying Actions are defined by the terms, limitations, definitions, conditions and exclusions of the First State Policies, including, without limitation, conditions precedent, per occurrence and aggregate limits, deductibles, self-insured retentions, policy periods, requirements of exhaustion or other insurance and notice requirements.

### *Sixteenth Affirmative Defense*

Some or all of Federal's and Additional Plaintiff Insurers' claim may be barred to the extent that the insured failed to notify First State of an occurrence and/or forward to First State every claim or suit or any other developments likely to affect First State's liability in a timely manner as required by the First State Policies.

### *Seventeenth Affirmative Defense*

Some or all of Federal's and Additional Plaintiff Insurers' claim may be barred by the doctrines of known risk, known loss, and non-fortuity.  To the extent the acts, conditions, events and damages alleged in the underlying actions, or which form the basis of the claims against the insured were known or not fortuitous, First State may have no obligation under its policies.

### *Eighteenth Affirmative Defense*

First State has no liability under the First State Policies to the extent that the insured thereunder has not become legally obligated to pay a judgment or settlement.

### *Nineteenth Affirmative Defense*

First State has no liability under the First State Policies to the extent that the insured made any voluntary payment and/or assumed any obligation, incurred any expense or made any payment that it was not legally obligated to pay.

### *Twentieth Affirmative Defense*

Federal's and Additional Plaintiff Insurers' claim may be barred in whole or in part by reason of any "other insurance" clause contained in the First State Policies.

### *Twenty-First Affirmative Defense*

The First State Policies do not provide coverage in place of underlying or other insurance which is or becomes invalid, uncollectible, or otherwise unavailable due to the insolvency of the underlying insurer or as a result of the acts of the insured.

### *Twenty-Second Affirmative Defense*

Federal's and Additional Plaintiff Insurers' claim may be barred to the extent that the insured failed to comply with any "cooperation clause" contained within the First State Policies.

### *Twenty-Third Affirmative Defense*

Federal's and Additional Plaintiff Insurers' claim may be barred to the extent that the insured failed to mitigate, minimize or avoid any damage that they allegedly sustained in connection with the claims for which coverage is sought.

### *Twenty-Fourth Affirmative Defense*

The First State Policies only provide coverage up to each Policy's stated per occurrence limits, aggregate limits and all other limits of liability.

### *Twenty-Fifth Affirmative Defense*

Federal's and Additional Plaintiff Insurers' claim may be barred to the extent the insured has failed to perform all of its obligations and duties and/or comply with all conditions precedent and subsequent under the First State Policies, including any obligation to maintain underlying insurance, coverage, if any, is barred.

### *Twenty-Sixth Affirmative Defense*

First State's coverage obligations under the First State Policies, if any, are subject to any applicable self-insured retentions or deductibles or and/or the operation of any non-cumulation clauses contained therein.

### *Twenty-Seventh Affirmative Defense*

Federal's and Additional Plaintiff Insurers' claim may be barred to the extent it seeks defense or indemnity costs under the First State Policies incurred in connection with or resulting from claims for "property damage" or any "personal injury" which took place during periods in which the insured was uninsured, self-insured or not insured by First State.

### *Twenty-Eighth Affirmative Defense*

To the extent that Plaintiff negligently or intentionally failed to disclose, concealed or misrepresented facts known by it to be material to the risks underwritten by First State for the purpose of inducing First State to underwrite the First State Policies, Plaintiff is not entitled to coverage under the First State Policies.

### *Twenty-Ninth Affirmative Defense*

First State's obligations, if any, are limited to the named insured(s) as defined by the First State Policies, subject to the other terms, conditions and exclusions.  First State is not bound by the terms of any agreement entered into between the insured and any other entity with respect to retention or acceptance of liabilities.

### *Thirtieth Affirmative Defense*

Federal's and Additional Plaintiff Insurers' claim may be barred, in whole or in part, by the terms, exclusions, conditions, endorsements and limitations contained in the First State Policy.

### *Thirty-First Affirmative Defense*

Federal's and Additional Plaintiff Insurers' claim may be barred First State has no obligation under the First State Policies to indemnify the insured to the extent that First State's consent was not secured for any assignment under the First State Policies and/or to the extent there was an invalid assignment under the First State Policies.

### *Thirty-Second Affirmative Defense*

Federal's and Additional Plaintiff Insurers' claim may be barred, in whole or in part, to the extent that First State's subrogation rights under the First State Policies.

### *Thirty-Third Affirmative Defense*

Federal's and Additional Plaintiff Insurers' claim may be barred to the extent that the acts or failures to act by the insured that gave rise to alleged "property damage" or "personal injury" referred to in the Underlying Actions were in violation of law and/or public policy, the insured's purported claims are barred, in whole or in part.

### *Thirty-Fourth Affirmative Defense*

First State has no obligations under the First State Policies unless and until any and all applicable underlying limits of liability and/or any retained limits have been properly and completely exhausted.

### *Thirty-Fifth Affirmative Defense*

First State's liability is limited to coverage for "ultimate net loss" as those terms are defined in said Policies.

### *Thirty-Sixth Affirmative Defense*

Federal's and Additional Plaintiff Insurers' claim may be barred to the extent that the First State Policies exclude coverage for property owned by, rented to, occupied or used by the insured or property in the care, custody or control of the insured or as to which the insured is, for any purpose, exercising physical control.

### *Thirty-Seventh Affirmative Defense*

In the event that First State is found liable for some portion of Federal's and Associated Other Insurers' claim, all costs, expenses and amounts of any judgment should be properly

apportioned by the quantum of property damage during any given policy period and then among all applicable other insurance available to the insured, if any, as well as to uninsured and self-insured periods, if any.

### *Thirty-Eighth Affirmative Defense*

There is no coverage under the First State Policies for any "personal injury" on account of "wrongful entry," "wrongful eviction" or "invasions of rights of privacy."

### *Thirty-Ninth Affirmative Defense*

The Complaint does not describe the claims made against First State with sufficient particularity to enable First State to determine all defenses it may have to this suit.  First State, therefore, reserves its right to assert all additional defenses that may be pertinent to the Complaint once the precise nature of each claim is ascertained through discovery and investigation.

### PRAYER FOR RELIEF

WHEREFORE, First State respectfully requests that this Court enter an Order:

A.     Dismissing Federal's and Additional Plaintiff Insurers' claims against First State with prejudice;

B.     Declaring that First State has no obligation to Federal and Additional Plaintiff Insurers; and

C.     Awarding First State such other and further relief as this Court deems just and proper.

Dated: January 24, 2024

Respectfully submitted,

*/s/ Christopher C. Frost*
Christopher C. Frost
Emily C. Burke
MAYNARD NEXSEN
1901 Sixth Avenue N, Suite 1700
Birmingham, AL  35203
cfrost@maynardnexsen.com
eburke@maynardnexsen.com

- and

Wayne S. Karbal (*pro hac vice* forthcoming)
Gerald E. Ziebell (*pro hac vice* forthcoming)
KARBAL, COHEN, ECONOMOU, SILK & DUNNE, LLC
200 S. Wacker Avenue, Suite 2550
Chicago, IL 60606
Tel: (312) 431-3700
Fax: (312) 431-3670
wkarbal@karballaw.com
gziebell@karballaw.com

*Counsel for First State Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following via the CM/ECF system which will send electronic notification to counsel on January 24, 2024:

John W. Johnson, II
CHRISTIAN & SMALL, LLP
505 North 20th Street, Suite 1800
Birmingham, AL 35203
jwjohnson@csattorneys.com
*Attorney for Plaintiffs*

Christopher Hemphill
Michael Baughman
Cohn Baughman
525 W. Monroe Street, Suite 1500
Chicago, IL 60661
christoper.hemphill@mclolaw.com
michael.baughman@mclolaw.com
*Attorneys for Plaintiffs*

F. Lane Finch, Jr.
Brandon J. Clapp
Swift, Currie, McGhee & Hiers, LLP
1901 Sixth Ave. North, Suite 1100
Birmingham, AL 35203
T: (205) 314-2401
lane.finch@swiftcurrie.com
brandon.clapp@swiftcurrie.com
*Attorneys for U.S. Fire Insurance Company*

Joel S. Isenberg
Rob E. Norton
ELY & ISENBERG, LLC.
3500 Blue Lake Drive, Suite 345
Birmingham, AL 35243
Telephone: (205) 313-1200
Facsimile (205) 313-1201
JIsenberg@elylawllc.com
RNorton@elylawllc.com
*Attorneys for Travelers Casualty and Surety Company*
*f/k/a The Aetna Casualty and Surety Company*

Brannon J. Buck
Christopher B. Driver
BADHAM & BUCK LLC

2001 Park Place North, Suite 500
Birmingham, AL 35203
(205) 521-0036
Fax: (205) 521-0037
bbuck@badhambuck.com
cdriver@badhambuck.com
*Attorneys for Shaw Industries, Inc.*

Hirshel Michael Hall
ALSTON & BIRD LLP
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
(404) 881-7000
hirshel.hall@alston.com
*Attorney for Commerce & Industry Insurance Company*

Scott M Salter
STARNES DAVIS FLORIE LLP
100 Brookwood Place, 7th Floor
Birmingham, AL 35209
(205) 868-6000
Fax: (205) 868-6099
ssalter@starneslaw.com
*Attorney for Firemans Fund Insurance Company*

Edward M. Holt
Zachery L. Gillespie
1906 Sixth Avenue North, Suite 1700
Birmingham, AL 35203
Telephone: (205) 254-1075
zgillespie@maynardnexsen.com
*Attorneys for Defendant Great American Insurance Company*

*/s/ Christopher C. Frost*
**OF COUNSEL**