IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **FEDERAL INS. CO.,** *et al.* ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. 1:23-cv-01367-RDP |
| ) | |
| **SHAW INDUSTRIES, INC.** ) | |
| And **NOMINAL DEFENDANTS,** ) | |
|     **Defendants.** ) | |

**CROSS-CLAIM FOR DECLARATORY RELIEF
AGAINST SHAW INDUSTRIES, INC.**

Nominal Defendant U.S. Fire Insurance Company brings this action against Shaw Industries, Inc. ("Shaw") for declaratory relief pursuant to 28 U.S.C. § 2201 (the "Declaratory Judgment Act"), and states as follows:

**NATURE OF THE ACTION**

1.  U.S. Fire brings this Cross-Claim against Shaw to resolve certain insurance coverage disputes between the parties.

2.  Shaw seeks insurance coverage under two insurance policies issued by U.S. Fire (the "U.S. Fire Policies") for certain claims against Shaw asserting bodily injury and/or property damage caused by Shaw's carpet manufacturing and waste discharge (the "Underlying Actions," as described below). Claimants in the Underlying Actions allege damages due to the release of toxic chemicals including

1

per- and poly-fluoroalkyl substances ("PFAS") and related chemicals.

3. As set forth below, there is no defense and/or indemnity coverage due under the Policies for the Underlying Actions.

## THE PARTIES

4. U.S. Fire is an insurance company organized and existing under the laws of Delaware with its principal place of business in New Jersey.

5. Upon information and belief, Shaw is a corporation incorporated under the laws of the State of Georgia with its principal place of business in Dalton, Georgia. Upon information and belief, Shaw is authorized to do business and does business in the State of Alabama.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this Cross-Claim based on 28 U.S.C. § 1332(a). This action involves a controversy between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7. There is complete diversity of citizenship between U.S. Fire and Shaw as required under 28 U.S.C. § 1332(a).

8. A case of actual controversy is presented here because Shaw seeks insurance coverage from U.S. Fire in connection with the Underlying Actions and U.S. Fire disputes its obligations to Shaw with respect to insurance coverage for the

2

Underlying Actions.

9. Venue is proper in the Northern District of Alabama under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of property that is the subject of the action is situated in Talladega County.

## BACKGROUND ON THE POLICIES

**U.S. Fire XS Policy 5220193104**

10. The U.S. Fire XS Policy 5220193104 effective April 1, 1983 to July 1, 1984 may afford coverage in this matter if, but only if, coverage is payable under the underlying policies and only if/when the primary policies have been exhausted.

11. The Declarations page for U.S. Fire XS Policy 5220193104 shows it is an excess policy and even if the terms and conditions both of the excess policy and the underlying policies can be proven and even if there would be potential coverage, that coverage would not apply unless and until the underlying limits of coverage have been exhausted.

12. U.S. Fire's copy of its excess policy numbered 5220193104 is incomplete due to the passage of time since it was issued in 1983. Without evidence of the existence of a policy and either direct or indirect confirmation of the terms, conditions and exclusions of the policy in addition to policy limits, U.S. Fire is not obligated to provide coverage under the policy.

13. Based on the terms, conditions and exclusions of follow form underlying policies, as well as the U.S. Fire XS Policy 5220193104, U.S. Fire is unable to determine whether there is coverage under U.S. Fire XS Policy 5220193104 even if the underlying policies were exhausted.

**U.S. Fire XS Policy 5220262728**

14. The U.S. Fire XS Policy 5220262728 effective July 1, 1984 to July 1, 1985 may afford coverage in this matter if, but only if, coverage is payable under the underlying policies and only if/when the primary policies have been exhausted.

15. The Declarations page for U.S. Fire XS Policy 5220262728 shows it is an excess policy and even if the terms and conditions both of the excess policy and the underlying policies can be proven and even if there would be potential coverage, that coverage would not apply unless and until the underlying limits of coverage have been exhausted.

16. U.S. Fire's copy of its excess policy numbered 525220262728 is incomplete due to the passage of time since it was issued in 1984. Without evidence of the existence of a policy and either direct or indirect confirmation of the terms, conditions and exclusions of the policy in addition to policy limits, U.S. Fire is not obligated to provide coverage under the policy.

17. Based on the terms, conditions and exclusions of follow form underlying policies, as well as the U.S. Fire XS Policy 5220262728, U.S. Fire is

unable to determine whether there is coverage under U.S. Fire XS Policy 5220262728 even if the underlying policies were exhausted.

**U.S. Fire XS Policy 5220261414**

18. U.S. Fire XS Policy 5220261414 effective July 1, 1985 to July 1, 1986 does not afford coverage for the Underlying Actions because of the absolute pollution exclusion contained in the policy. Additional grounds for excluding or limiting coverage may exist based on the terms, conditions and exclusions of underlying policies which U.S. Fire does not presently possess.

19. The Declarations page for U.S. Fire XS Policy 5220261414 shows it is an excess policy and even if the terms and conditions both of the excess policy and the underlying policies can be proven and even if there would be potential coverage, that coverage would not apply unless and until the underlying limits of coverage have been exhausted.

20. U.S. Fire's copy of its excess policy numbered 5220261414 is incomplete due to the passage of time since it was issued in 1985. Without evidence of the existence of a policy and either direct or indirect confirmation of the terms, conditions and exclusions of the policy in addition to policy limits, U.S. Fire is not obligated to provide coverage under the policy.

21. Based on the terms, conditions and exclusions of follow form underlying policies, as well as the U.S. Fire XS Policy 5220261414, U.S. Fire is

unable to determine whether there is coverage under U.S. Fire XS Policy 5220261414 even if the underlying policies were exhausted.

**Common Policy Terms**

22. The insuring agreement in the U.S. Fire XS Policies that reads:

> **Insuring Agreement**
>
> To indemnify the insured for that amount of loss and loss expense which exceeds the amount of loss and loss expense payable by underlying policies described in the declarations, but the company's obligation hereunder shall not exceed the limit of liability stated in Declaration 6.

23. Condition A, immediately following the Insuring Agreement, provides that except for any duty to investigate or provide a defense that the underlying policies may contain, the insurance afforded by the U.S. Fire excess policy "shall apply in like manner as the underlying insurance described in the Declarations."

24. Attached to the Declaration page of U.S. Fire XS Policies 5220193104 and 5220262728 is endorsement FM 101 0 229 (10-80). These endorsements, which are identical other than for the identity of the policy numbers of the underlying insurance, read, in pertinent part:

> Schedule A to U.S. Fire excess policy 52205193104 – Schedule of Underlying Insurance
>
> $30,000,000 each occurrence, $30,000,000 in the aggregate, Personal Injury, Property Damage or Advertising Liability as provided in Federal Insurance Company's Policy No. (83) 79221063, which is excess of:
>
> $10,000,000 each occurrence, $10,000,000 in the aggregate Property Damage or Advertising Liability as provided in Mission National

6

Insurance Company's Policy No. MN018025, which is excess of primary insurance as scheduled therein or a self-insured retention of $10,000.

25. Thus, Shaw must show that the underlying policies have been properly exhausted before the U.S. Fire Policies provide coverage.

**Absolute Pollution Exclusion**

26. U.S. Fire XS Policy 5220261414 contains an "absolute pollution exclusion," quoted below, that precludes any coverage for the claims. This endorsement reads (in pertinent part):

> **POLLUTION LIABILITY EXCLUSION**
>
> It is agreed that exclusion (f) of the policy is eliminated and replaced by the following:
>
> (f) (1) to bodily injury of property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:
>
> (a) at or from premises owned, rented, or occupied by the named insured;
>
> (b) at or from any site or location used by or for the named insured or others for the handling, storage, disposal, processing, or treatment of waste;
>
> (c) which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for the named insured or any person or organization for whom the named insured may be legally responsible; or
>
> (d) at or from any site or location on which the named insured or any contractors or subcontractors working directly or indirectly on behalf of the named insured are performing operations:
>
>> (I) if the pollutants are brought on or to the site or location in connection with such operations; or

7

> (II) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.
>
> (2) to any loss, cost or expense arising out of any governmental direction or request that the named insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.
>
> Pollutants means any solid, liquid gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Endorsement FM.101.0.853.

**<u>Reservations</u>**

27. U.S. Fire reserved the right to deny a defense or indemnity, in whole or in part, based on any other terms, conditions, limits, endorsements, or exclusions contained in the U.S. Fire XS Policies, or contained in such other policies to which the U.S. Fire XS Policies follow form, which may include, but not be limited to:

   a. The Claim is barred in whole or in part because the Agreement under which the claim is being made is neither an "insured contract," a "covered contract," nor any other contractual agreement that gives rise to coverage under the terms of the U.S. Fire XS Policies.

   b. Coverage is barred to the extent that any environmental site is situate outside the coverage area as defined and/or delimited by any of the U.S. Fire XS Policies.

   c. The Claim is barred by any applicable pollution exclusion or similar exclusion.

   d. Shaw or other potentially insured entities failed to disclose all material facts at the time of application for the U.S. Fire XS Policies.

8

e.     The Claim does not constitute an occurrence as may be defined in the U.S. Fire XS Policies.

f.     The Claim arises from risks that were known or should have been known by Shaw or other potentially insured entities to have been incurred prior to the effective date of the U.S. Fire XS Policies.

g.     A fortuitous loss did not occur.

h.     The activities giving rise to the Claim may have been intentional and deliberate.

i.     The activities giving rise to the Claim may have been intended or expected.

j.     The Claim does not arise from personal injury or bodily injury or property damage as those terms are defined in the U.S. Fire XS Policies or the underlying policies.

k.     The Claim seeks recovery for damages other than bodily injury, property damage, or personal injury as defined in the U.S. Fire XS Policies or the underlying policies.

l.     Payment or reimbursement is sought for voluntary payments.

m.     Coverage under the U.S. Fire XS Policies is limited by the U.S. Fire XS Policies' applicable terms, conditions, definitions, exclusions, and endorsements.

n.     Coverage under the U.S. Fire XS Policies is limited by the applicable limits of insurance and liability set forth therein.

o.     Coverage under the U.S. Fire XS Policies may be limited by the prior payment of covered claims.

p.     Coverage under the U.S. Fire XS Policies may be limited by prior settlement agreements.

q.     Coverage under the U.S. Fire XS Policies may be limited or precluded by "other insurance" conditions or clauses contained therein or contained in the underlying policies to which they follow form.

r. Coverage under the U.S. Fire XS Policies may be limited or precluded by the extent prior insurance and non-cumulation provisions of the U.S. Fire XS Policies are applicable.

s. Coverage does not apply to costs sought or recovered that do not represent "ultimate net loss" as defined in the U.S. Fire XS Policies.

t. Coverage does not apply unless and/or until self-insured retentions, deductibles, underlying insurance, and other insurance have not been exhausted by payment.

u. Coverage under the U.S. Fire XS Policies may be limited or precluded by application of any deductible, per occurrence, per person, and/or any aggregate limits contained in the U.S. Fire XS Policies or contained in the underlying policies to which the U.S. Fire XS Policies follow form.

v. U.S. Fire reserves the right to limit or deny coverage based on the terms and conditions of underlying policies to which the U.S. Fire XS Policies follow form.

w. U.S. Fire reserves the right to limit or deny coverage for costs alleged to have been or to be incurred in connection with any Claim for equitable or injunctive relief.

x. Coverage under the U.S. Fire XS Policies may not be available for punitive damages, fines, or penalties recovered from an insured.

y. The Claim is sought for damages to property owned or leased by Shaw.

z. Shaw failed to give timely notice of the Claim.

**Federal Insurance Policies**

28. The U.S. XS Fire Policies are excess above the following excess liability insurance policies issued by Federal: Policy No. 8379221063 effective July

1, 1982 to July 1, 1983, Policy No. 8479221063 effective July 1, 1983 to July 1, 1984, Policy No. 8579221063 effective July 1, 1984 to July 1, 1985.

29.   The insuring agreement of the Federal Policies provides in part that coverage under the policies is limited to the payment of "Loss" resulting from an occurrence insured by the terms of the underlying policies:

> * * * [T]he Company agrees to pay on behalf of the insured LOSS resulting from any occurrence Insured by the terms and provisions of the First UNDERLYING INSURANCE policy scheduled in item 6 of the Declarations (except for the Limits of Liability and defense provisions, if any). The insurance afforded by this policy shall apply only in excess of and after all UNDERLYING INSURANCE (as scheduled in item 6 of the Declarations) has been exhausted.

30.   The term "Loss" is defined in the policies as:

> The amount of the principal sum, award or verdict, actually paid or payable in cash in the settlement or satisfaction of claim for which the insured is liable, either by adjudication or compromise with the written consent of the Company, after making proper deduction for all recoveries and salvages.

31.   The underlying policies to which the Federal Policies follow form in part provide, subject to all other applicable terms, that coverage is provided only for liability arising from an "occurrence" which is defined in the following or substantially similar terms as:

> an accident or a happening or event or a continuous or repeated exposure to conditions which unexpectedly and unintentionally results in injury, property damage pr advertising liability during the policy period. All such exposure to substantially the same general

11

conditions existing at or emanating from one premises location shall be deemed one occurrence.

32. The Federal Policies also provide that Federal has no obligation to assume charge of the investigation, settlement or defense of any claim or suit, such as the Underlying Actions, but Federal has the right to associate in the defense of any claim or suit.

33. The Federal Policies contain the following Pollution Exclusion:

> This policy does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

34. The Federal Policies provide that,

> The Insured agrees that the First UNDERLYING INSURANCE policy, and other UNDERLYING INSURANCE following the terms and provisions of the First UNDERLYING INSURANCE policy (except for limit of liability and defense provisions, if any), shall be maintained in full effect during the currency of this policy except for any reduction in the aggregate limit or limits contained therein solely by payment of claims in respect of occurrences happening during the period of this policy. The failure of the Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure the Company shall only be liable to the same extent as if the Insured had complied with this condition.

35. The Federal Policies include other terms, conditions, and exclusions that may limit or bar coverage for the Underlying Actions.

## BACKGROUND ON SHAW'S MANUFACTURING[1]

36.     The Underlying Actions involve allegations that Shaw used and continues to use PFAS in the carpet and flooring manufacturing process and that the underlying plaintiff(s) suffered damages due to the negligent, willful, and wanton conduct of Shaw, as well as the nuisance and trespass caused by Shaw's past and present release of PFAS and related chemicals.

37.     Shaw is a producer of carpet and other flooring products. It operates facilities in Alabama and Georgia.

38.     In the 1970's and 1980's, 3M Company, E.I. DuPont de Nemours, and others sold stain-resistant products to carpet companies, such as Shaw, for use in carpet manufacturing operations.

39.     The stain-resistant products contained perfluoroalkyl and polyfluoroalkyl substances commonly referred to by the acronym "PFAS."

40.     The PFAS contained in the stain-resistant products utilized by Shaw were, at all relevant times, present in the wastewater produced as a by-product of Shaw's manufacturing process.

41.     Shaw utilized Dalton Utilities ("Dalton") to dispose of its wastewater.

---

[1] The allegations regarding Shaw's manufacturing operations are stated on information and belief.

42. On July 17, 1984, Dalton applied for a permit to operate a Land Application System ("LAS") for its wastewater disposal needs.

43. The LAS is an approximately 9,600-acre system, operated by Dalton, in which wastewater is processed and dispersed onto the land surface.

44. On August 20, 1986, Dalton received a permit to operate the LAS and began disposing of Shaw's wastewater at the LAS. Thus, the LAS was not operational until after the last U.S. Fire XS Policy expired.

45. Underlying Plaintiffs allege that PFAS from the LAS has contaminated local waterways causing economic and, perhaps, other damages. No such damage occurred while the U.S. Fire XS Policies were in effect.

## **THE UNDERLYING ACTIONS**

46. Four municipal entities in Alabama sued Shaw alleging environmental contamination in Alabama caused by Shaw's operations:

*Shelby County, Alabama and Talladega County, Alabama* v. *3M Company, Inc., et al.*, 1:23-cv-00609-CLM in the United States District Court for the Northern District of Alabama – Eastern Division;

*Shelby County, Alabama and Talladega County, Alabama* v. *3M Company, et al.*, 61-cv-2023-900112.00 in the Circuit Court of Talladega County, Alabama;

*The Water Works and Sewer Board of the City of Gadsden* v. *3M Company, Inc., et al.*, 3l-cv-2016-900676.00 in the Circuit Court of Etowah County, Alabama;

*The Water Works and Sewer Board of the Town of Centre* v. *3M Company, Inc., et al.,* 3l-cv-2017-900049.00 in the Circuit Court of Cherokee County, Alabama.

47. One municipality and one individual (as putative class-representative) in Georgia sued Shaw alleging environmental contamination in Georgia caused by Shaw's operations:

*The City of Rome, Georgia* v. *3M Company, Inc., et al.,* 19-cv-02405-JFL-003, in the Superior Court of Floyd County, Georgia; and

*Jarrod Johnson, individually and on behalf of a class of persons similarly situated* v. *3M Company, et al.,* 4:20-cv-0008-AT, in the United States District Court for the Northern District of Georgia - Rome Division.

48. Shaw settled with two of the Alabama municipalities, leaving two pending suits by Alabama plaintiffs. It also settled with the City of Rome, Georgia, leaving the putative class action which is pending in the District Court for the Northern District of Georgia.

## COUNT I
## DECLARATORY JUDGMENT

49. U.S. Fire incorporates the allegations in Paragraphs 1 through 49 above as if fully restated herein.

50. There exists an actual controversy between U.S. Fire and Shaw concerning whether the U.S. Fire XS Policies obligate U.S. Fire to defend or indemnify Shaw for the Underlying Actions.

15

51. U.S. Fire is entitled to a declaratory judgment that it has no duty under the U.S. XS Fire Policies to defend or indemnify Shaw for the Underlying Actions to the extent that:

    a. Shaw is not an insured entitled to coverage;

    b. Shaw failed to satisfy certain conditions precedent to coverage;

    c. Shaw failed to provide timely notice of an occurrence that gave rise to the Underlying Actions;

    d. Shaw had prior knowledge of the bodily injury and/or property damage at issue in the Underlying Actions;

    e. Shaw seeks coverage for bodily injury and/or property damage that occurred outside of the U.S. Fire XS Policies' policy periods;

    f. the manufacture of products containing PFAS was not an accident and thus not an occurrence for which there is coverage under the U.S. Fire XS Policies;

    g. the exposure to or contamination from PFAS does not constitute covered bodily injury or property damage;

    h. Shaw failed to exhaust the required deductible, self-insured retention, and/or underlying limit;

    i. Shaw seeks coverage for equitable remedies at issue in the Underlying Actions;

    j. Shaw seeks coverage for punitive damages at issue in the Underlying Actions;

    k. Shaw has other valid and collectible insurance;

    l. the U.S. Fire XS Policies' aggregate limits have already been or will be exhausted;

    m. the U.S. Fire XS Policies prohibit the stacking of aggregate limits;

    n.    the U.S. Fire XS Policies exclude coverage for certain products manufactured by the insured;

    o.    the U.S. Fire XS Policies exclude coverage for property damage to impaired property or property that has not been physically injured;

    p.    the U.S. Fire XS Policies exclude coverage for expected or intended bodily injury or property damage; and

    q.    the U.S. Fire XS Policies exclude coverage for bodily injury or property damage arising from pollution.

## **PRAYER FOR RELIEF**

WHEREFORE, U.S. Fire prays as follows:

1. That the Court determine and declare the parties' respective rights and duties under the U.S. Fire XS Policies and declare that U.S. Fire has no obligation to defend or indemnify Shaw for the Underlying Actions; and

2. For such other and further relief that this Court deems just and proper.

                                      Respectfully Submitted,

Date: February 08, 2024                */s/ Lane Finch*
                                      F. Lane Finch, Jr. (ASB-0027-I58F)
                                      Brandon J. Clapp (ASB-3990-D82W)
                                      Attorneys for U.S. Fire Insurance Company

**OF COUNSEL:**
**Swift, Currie, McGhee & Hiers, LLP**
1901 Sixth Ave. North, Suite 1100
Birmingham, AL 35203
T: (205) 314-2401
lane.finch@swiftcurrie.com
brandon.clapp@swiftcurrie.com

17

## CERTIFICATE OF SERVICE

I hereby certify that on February 08, 2024, the foregoing was served on the attorneys of record by one or more the following means in accordance with the Federal Rules of Civil Procedure:

[✓]    PACER/CM/ECF
[ ]    Email
[ ]    U.S. Mail
[ ]    Facsimile
[ ]    Hand Delivery

                                                  /s/ Lane Finch
                                                  OF COUNSEL

4865-0550-0835, v. 1